IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 5:09-bk-76195 |
| NATIONAL HOME CENTERS, INC., | § § | (CHAPTER 11) |
| DEBTOR. | § § § | |

### ORDER APPROVING BID AND SALES PROCEDURES, SETTING AUCTION DATE, SALE HEARING DATE, AND OBJECTION DEADLINE TO SALES MOTION

On February 10, 2010, the Motion (the "Motion")[Docket No. 208] to Approve Bid and Sales Procedures for the Sale of Substantially All of the Debtor's Assets, Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, and Assumption and Assignment of Executory Contracts and Non-Residential Real Property Leases, and Notice of Hearing and Opportunity to Object filed by National Home Centers, Inc., as debtor and debtor in possession (the "Debtor"), the Objection and Amended Objection of ProBuild Company LLC (the "ProBuild Objection") [Docket Nos. 300 and 304], the Limited Concurrence of the Official Committee of Unsecured Creditors (the "Limited Concurrence") and the Response of JPMorgan Chase Bank, N.A. as Agent (the "Response") came on for hearing before the Court. The Court, having reviewed the Motion, ProBuild Objection, Limited Concurrence, and Response, having heard the arguments of counsel and testimony of witnesses and upon being fully advised and after consideration of all other evidence before the Court, and due deliberation and sufficient cause appearing, the Court finds that the Motion should be granted. Further, given the Court's setting of the hearing on the Sales Motion (as defined below) for April 2, 2010, at 9:00 a.m. Central Time, the parties who are signatories to this Order have agreed to change certain dates and to make certain clarifications as set forth herein to accommodate the sale process, which agreement is approved by this Court. IT IS THEREFORE

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED.

2. The ProBuild Objection and the Limited Concurrence are overruled and denied.

3. Notice of the Motion has been given as set forth in the Motion and such notice is good and sufficient under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and under the circumstances of this case and no further or other notice is required.

4. The solicitation process and bidding procedures (the "Bidding Procedures") set forth in this Order shall be utilized in marketing, negotiating and consummating a sale of all or substantially all of the Debtor's assets (the "NHC Assets"), and assumption and assignment of certain executory contracts and non-residential real property leases, free and clear of all liens, claims, encumbrances, and other interests (the "Transaction"), with all liens, claims, encumbrances and other interests to attach to the sales proceeds and resulting in the full and indefeasible payment in cash of all of the indebtedness owed to JPMorgan Chase Bank, N.A., as administrative agent (the "Agent") for itself and the other lenders under the credit facility (the "Lenders") (the "Agent Payoff").

5. The Sales Motion[1] shall be filed by the Debtor, consistent with the terms and conditions of the Fourth Cash Collateral Order, **by no later than February 25, 2010 at 5 p.m.** Central Time, and all objections to the Sales Motion shall be filed and served by no later than **March 23, 2010 at 5:00 p.m. Central Time** and served upon the following parties (hereinafter, the "Notice Parties"):

---

[1] Terms used in this Order shall have the same meanings assigned in Paragraph 8 of this Order and as set forth in the Motion [Docket No. 208].

Charles T. Coleman
Wright, Lindsey & Jennings, LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201
ccoleman@wlj.com

David Weitman
K&L Gates, LLP
1717 Main Street, Suite 2800
Dallas, TX 75201
*david.weitman@klgates.com*

Michael H. Traison
Miller, Canfield, Paddock & Stone, PLC
225 W. Washington, Suite 2600
Chicago, IL 60606
*traison@millercanfield.com*

In the event that such objection is not timely filed and served as provided above, such objection shall be barred and not considered at the time of the hearing on the Sales Motion.

6. The Auction (as defined below) shall commence on **March 30, 2010 at 9:00 a.m. Central Time** at the offices of Wright, Lindsey & Jennings LLP, 903 North 47th Street, Suite 101, Rogers, Arkansas or at another date, time or place to be determined by the Debtor and noticed to the Qualified Bidders and the Notice Parties.

7. The hearing on the Sales Motion shall be heard on **April 2, 2010, at 9:00 a.m. Central Time** at 35 East Mountain Street, Fourth Floor, Room 416, Fayetteville, Arkansas 72702.

8. The Bidding Procedures shall be as follows

    a. The Debtor or its financial advisor, CRG Partners, L.L.C. ("CRG") shall:

        i. directly contact parties whom the Debtor or its advisors, in their sole discretion (with the input of CRG) deems appropriate (collectively, the "Interested Parties") regarding the Bidding Procedures and a proposed sale of the NHC Assets with respect to the Transaction.

ii. serve the following on the Interested Parties and all parties required to be served with such documents under the United States Bankruptcy Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or any order of the Bankruptcy Court, including, without limitation, the most recent version of the Special Service list approved by the Bankruptcy Court:

  A. the Bidding Procedures with any exhibits thereto;

  B. the order of the Bankruptcy Court approving the Bidding Procedures or other notice relating to these Bidding Procedures;

  C. a cover letter summarizing the Bidding Procedures and the Transaction and providing contact information for the Debtor and CRG to respond to inquiries regarding the Bidding Procedures and the Transaction; and

  D. a summary of the business of NHC and the NHC Assets available for purchase pursuant to the Transaction.

b. Upon execution of a confidentiality agreement in form and substance acceptable to the Debtor, after consultation with CRG, and the sufficient demonstration by the Interested Party to the Debtor, in the Debtor's sole discretion (with the concurrence of CRG), that the Interested Party has the financial strength and ability to be a legitimate Bidder, the Interested Party shall be deemed a "Bidder" and shall be permitted to conduct reasonable due diligence.

c. Any Bidder that wishes to participate in the bidding process and make an offer (an "Offer") on the NHC Assets, pursuant to the terms of the Transaction, shall deliver a Letter of Intent to the Debtor at the following address:

Brent Hanby
Chief Financial Officer
National Home Centers, Inc.
1106 N. Old Missouri Road
P.O. Box 848
Springdale, AR 72765-0848
Email: bhanby@nhci.com

with copies to:

CRG Partners, L.L.C.
c/o Dan Dixon
13355 Noel Road, Suite 1825

Dallas, TX 75240
email: dan.dixon@crgpartners.com

-and-

Charles T. Coleman
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201
email: ccoleman@wlj.com

Each Letter of Intent must be received by the above-listed parties **by no later than 5:00 p.m. (Central Standard Time) on February 5, 2010** (the "Letter of Intent Deadline"). All Bidders who timely submit a Letter of Intent shall be deemed to have read, understood, consented to and agreed to be bound by these Bidding Procedures and the provisions of this Order approving these Bidding Procedures and any other orders relating to the Transaction.

    d.    **On or before February 24, 2010**, the Debtor and CRG will negotiate and finalize a "stalking horse" agreement (the "Stalking Horse Agreement"), with the Bidder who timely submitted to the Debtor the Letter of Intent that the Debtor in its sole discretion (with the concurrence of CRG), and after consultation with the Agent and the Lenders, determines represents the highest and best offer for the NHC Assets, which purchase price provides for the payment in cash at closing to the Debtor and which will result in the full and indefeasible payment in cash of the Agent Payoff to the Agent and the Lenders. The Stalking Horse Agreement will provide for the Section 363 sale of the NHC Assets to the stalking horse buyer (the "Stalking Horse"), free and clear of all liens, claims, encumbrances and interests, subject to higher and better bids as set forth herein, with the cash purchase price to be paid at closing, and the liens, claims, encumbrances and other interests to attach to the sales proceeds and which will result in the full and indefeasible payment in cash of the Agent Payoff to the Agent and the Lenders.

    e.    Within three (3) days after the Debtor and Stalking Horse have executed the Stalking Horse Agreement, the Debtor shall file a motion, on an expedited basis, to approve the Stalking Horse Agreement and the sale of all or substantially all of the NHC Assets, pursuant to §363(b) of the Bankruptcy Code, with the assumption and assignment of certain executory contracts and non-residential real property leases (the "Sales Motion") and serve the Sales Motion together with a Notice of Hearing Date (the "Hearing Date"), and setting forth the Bid Deadline for Competing Offers on all Interested Parties, all parties who previously submitted a Letter of Intent and any other individual or entity who the Debtor believes may be a viable buyer for the NHC Assets. The Sales Motion shall seek a waiver of any stays under the Bankruptcy Code and the Bankruptcy

Rules for "cause." The Sales Motion, together with a Notice of Hearing Date, shall also be served the Official Service List, all parties who have requested notice in this case, or as otherwise ordered by the Court.

f.   Upon the filing of the Sales Motion, any entity may submit a Competing Offer to the Stalking Horse Agreement by **no later than March 26, 2010 at 5:00 p.m. CST (the "Bid Deadline").** The Notice of Hearing Date shall set forth the date of the Bid Deadline.

g.   The Debtor shall provide to the Agent and the Lenders, together with counsel to the Creditors' Committee, regular telephonic reports of all sales efforts, expressions of interest, and offers received, and shall provide such parties with copies of all offers and letters of intent.

h.   In order to make a "Qualified Competing Offer," a Bidder must submit to the Debtor a Competing Offer that, at a minimum, complies with the following requirements, in the Debtor's sole discretion (subject to the concurrence of CRG and after consultation with the Agent and the Lenders) and the Debtor has the right to waive any of following requirements in its sole discretion (subject to the concurrence of CRG and after consultation with the Agent and the Lenders):

   i.   the Competing Offer must be received by the parties identified in subparagraph 8(c) above as of the Bid Deadline;

   ii.  the Competing Offer must be in writing and include all material terms and conditions of the Stalking Horse Agreement;

   iii. the Competing Offer must fully disclose the identity of each entity that will be bidding for the NHC Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

   iv.  the Competing Offer must specify which executory contracts of the Debtor are to be assumed by the Debtor and assigned to such Bidder (any and all payments required to cure such contracts under Section 365 of the Bankruptcy Code shall be paid out of the purchase price proceeds);

   v.   the Bidder must provide written confirmation that it has completed its due diligence by providing a Notice of Completion of Due Diligence in connection with the Bidder's Competing Offer;

   vi.  the Bidder must offer to close on the Transaction **not later than Monday, April 5, 2010**;

    vii. the Competing Offer must not be conditioned on the Bidder's ability to obtain financing or the outcome of any uncompleted or unperformed due diligence;

    viii. the Bidder must provide the Debtor with sufficient and adequate information to demonstrate, to the sole and absolute satisfaction of the Debtor, that such Bidder has a financial commitment and the ability to consummate the Transaction, to operate the business of NHC and meet the requirements under 11 U.S.C. § 365 for the assumption and assignment of those leases and contracts that are included as part of the NHC Assets;

    ix. the Competing Offer provides that all cash and securities that are components of the purchase price are denominated in U.S. dollars only;

    x. if the Bidder proposes to fund the purchase through third party lenders or funding sources, the Bidder must identify those sources and provide details regarding what conditions, if any, remain to be satisfied before such funds will be available to complete the Transaction;

    xi. the Competing Offer must not be subject to the approval of any third party, including without limitation, the Bidder's board of directors or any other internal approval body;

    xii. the Competing Offer must be accompanied by a good faith deposit (the "Good Faith Deposit"), payable to the order of the Debtor, in an amount equal to $500,000. Each Good Faith Deposit shall be sent by wire transfer to the trust account of an escrow agent designated by Debtor (the "Escrow Agent") so that it is received not later than 3:00 p.m. on the day of the Bid Deadline. Bidders should contact the Debtor's counsel or the Escrow Agent for wiring instructions to the Escrow Agent's trust account. If the wire transfer has not been received by 3:00 p.m. the day of the Bid Deadline, the Competing Offer does not meet the requirements for a Qualified Competing Offer. The Good Faith Deposit shall be held by the Escrow Agent in an escrow account (the "Escrow Account"), together with any interest earned thereon;

    xiii. the purchase price in the Competing Offer must exceed the cash purchase price set forth in the Stalking Horse Agreement by an amount equal to the sum of the Break Up Fee of $250,000 and the initial bidding increment of $150,000. The Debtor and CRG, after consultation with the Agent and the Lenders, shall analyze each Competing Offer to calculate the respective value of each Competing Offer to the bankruptcy estate and determine whether each Competing Offer satisfies the minimum consideration requirements;

7

      xiv.    the Competing Offer must remain open and be binding and irrevocable, notwithstanding the Bankruptcy Court's approval of the sale of the NHC Assets to the Stalking Horse or the Successful Bidder, as the case may be, through consummation of the sale, subject to termination in accordance with the terms set forth in the Stalking Horse Agreement; and

      xv.    the Competing Offer must acknowledge that the Bidder has had (i) sufficient and reasonable access to the Debtor's books, records and other information for the purposes of conducting due diligence, and (ii) an opportunity to conduct such due diligence.

    i.    All due diligence must be completed by the close of business on the Bid Deadline. The Debtor, in its sole discretion (with the concurrence of CRG), shall coordinate the efforts of Bidders in conducting their respective due diligence investigations regarding the Debtor and the NHC Assets.

    j.    The Debtor, in its sole discretion (with the concurrence of CRG and after consultation with the Agent and the Lenders) will evaluate any Competing Offers and will announce which, if any, of the Competing Offers constitute Qualified Competing Bids at or before the Auction. The Stalking Horse's bid pursuant to the Stalking Horse Agreement is automatically deemed to be a Qualified Competing Offer.

    k.    The Debtor and CRG shall be entitled to due diligence from any party (the "Qualified Bidder") that is determined by the Debtor to have submitted a Qualified Competing Offer, upon the Debtor's execution of a confidentiality agreement. A Qualified Bidder is expected to comply with all reasonable requests for additional information and due diligence access by the Debtor or CRG. Failure by a Qualified Bidder to fully comply with request for additional information and due diligence access will be a sufficient basis for the Debtor to reject or disqualify for consideration a Qualified Competing Offer.

    l.    If more than one Qualified Competing Offer is received by the Bid Deadline, the Debtor will conduct an auction (the "Auction") with respect to the NHC Assets at a time to be determined by the Debtor and served on the Qualified Bidders. **The Auction shall be conducted on March 30, 2010 at 9:00 a.m. Central Time**, at the offices of Wright, Lindsey & Jennings LLP, 903 North 47th Street, Suite 101, Rogers, Arkansas or at another date, time or place to be determined by the Debtor and noticed to the Qualified Bidders. If no Qualified Competing Offer is received, the Debtor shall have no obligation to conduct an Auction.

    m.    Only the Stalking Horse and the other Qualified Bidders will be entitled to make bids at the Auction.

    n.    Prior to the commencement of the Auction, the Debtor will notify all Qualified Bidders who have submitted Qualified Competing Offers of the general terms of the highest and best Qualified Competing Offer received by the Debtor on or before the Bid Deadline.

    o.    Prior to the commencement of the Auction, the Debtor may adopt rules for the Auction that, in its business judgment (and with the concurrence of CRG and after consultation with the Agent and the Lenders) will better promote the goals of the Auction and that are not inconsistent with any of the provisions of this Order approving these Bidding Procedures nor inconsistent with the obligations of the Debtor set forth in the Fourth Cash Collateral Order and will notify all Qualified Bidders who have submitted Qualified Competing Offers of such rules. All such rules will provide that:

        i.    the procedures must be fair and open, with Qualified Competing Offers of such Qualified Bidders and bids made at the Auction (the "Auction Bids") being treated in substantially the same manner, to the extent reasonably possible;

        ii.    all Auction Bids shall be made and received in one room, on an open basis, and all other Qualified Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each Qualified Bidder shall be fully disclosed to all other Qualified Bidders and that all material terms of each Auction Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction consistent with the terms of the Transaction; and

        iii.    unless otherwise agreed to by the Debtor, no Qualified Bidder will be permitted more than twenty minutes to respond to the previous bid at the Auction.

    p.    During the Auction, bidding shall begin initially with the highest Qualified Competing Offer, as determined solely by the Debtor, and subsequently continue in minimum increments of at least $50,000.00 higher than the previous bid, or such lesser increment as the Debtor, in its sole discretion (with the input of CRG), deems appropriate (the "Minimum Increment"). The Debtor and CRG shall analyze each Auction Bid to calculate its respective value to the bankruptcy estate and determine (with the concurrence of CRG and after consultation with the Agent and the Lenders) whether each Auction Bid satisfies the Minimum Increment requirements.

    q.    The Auction will continue until no other Qualified Bidder wishes to make an Auction Bid in an amount greater than the previous Auction Bid.

r. Immediately prior to the conclusion of the Auction, the Debtor, in its business judgment and in its sole discretion (but subject to the terms set forth below) shall:

i. review each Qualified Competing Offer and or Auction Bid on the basis of its financial and contractual terms and the factors relevant to the sale process and the best interests of the Debtor's estate, including, without limitation, those factors affecting the speed and certainty of consummating the Transaction, resulting in the Agent Payoff;

ii. determine and identify the highest or otherwise best offer in the Auction, consistent with these Bidding Procedures. The highest and best Qualified Competing Offer or Auction Bid as determined by the Debtor in its sole discretion (subject to the input of CRG and the proviso immediately below, and after consultation with the Agent and the Lenders) shall be deemed to be the "Successful Bid" and the holder of the Successful Bid shall be deemed the "Successful Bidder"; provided, however, in the event that the Debtor is not in concurrence with the judgment of CRG as to the highest and best Qualified Competing Offer or Auction Bid, then the Debtor, CRG, the Agent and the Lenders shall immediately caucus among themselves to understand the Debtor's business rationale and the reasons why there is no such consensus, with the Debtor's business judgment governing but the Agent and the Lenders reserving their rights to object to the Debtor's judgment as to the highest and best Qualified Competing Offer or Auction Bid; and

iii. identify the next highest or otherwise best offer after the Successful Bid (the "Next Best Bid"), with the input of CRG (but subject to the proviso immediately below) and after consultation with the Agent and the Lenders; provided, however, in the event that the Debtor is not in concurrence with the judgment of CRG as to the next highest or otherwise best offer after the Successful Bid, then the Debtor, CRG, the Agent and the Lenders shall immediately caucus among themselves to understand the Debtor's business rationale and the reasons why there is no such consensus, with the Debtor's business judgment governing but the Agent and the Lenders reserving their rights to object to the Debtor's judgment as to the next highest or otherwise best offer after the Successful Bid.

s. The Debtor may, in its business judgment and in its sole discretion (with the concurrence of CRG and after consultation with the Agent and the Lenders), reject at any time before entry of an order approving the Successful Bid and the Next Best Bid any bid that in the Debtor's sole discretion (with the concurrence of CRG and after consultation with the Agent and the Lenders) is (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures or the terms and conditions of the Stalking Horse Agreement; or (iii) contrary to the best interests of the Debtor and

its estate. For avoidance of doubt, the Stalking Horse and Debtor shall only be permitted to terminate the Stalking Horse Agreement in accordance with its terms, which shall include the Debtor's ability to terminate the Stalking Horse Agreement in order to consummate a financially superior sale or other transaction to or with a Successful Bidder pursuant to a Qualified Competing Offer, with a purchase price sufficient to provide for the Agent Payoff in cash.

    t.    Immediately prior to the adjournment of the Auction, the Successful Bidder, if it has not already done so, shall complete and sign all agreement(s), contact(s), instruments(s) or other document(s) evidencing and containing the terms and conditions upon which such bid was made.

    u.    The Debtor shall present the results of the Auction to the Bankruptcy Court at a hearing immediately following the close of the Auction, at which time the Debtor will request that the Bankruptcy Court make certain findings regarding the Auction including:

    i.    that the Debtor conducted the Auction and selected the Successful Bid and the Next Best Bid in accordance with these Bidding Procedures;

    ii.    that the Auction was fair in substance and procedure;

    iii.    that the Successful Bid constitutes the highest and best offer for the NHC Assets, resulting in the Agent Payoff to the Agent and the Lenders; and

    iv.    that the Next Best Bid constitutes the next highest and best offer for the NHC Assets, resulting in the Agent Payoff to the Agent and the Lenders.

    v.    If no other Qualified Competing Offer is received, the bid of the Stalking Horse shall be deemed the Successful Bid, and it shall be deemed the Successful Bidder, subject to approval of this Court and the right of the Debtor or Stalking Horse to terminate the Stalking Horse Agreement in accordance with its terms.

    w.    Notwithstanding anything to the contrary in these Bidding Procedures, in the event that the Agent and the Lenders (or any special entity that is an affiliate of the Agent or the Lenders specially formed for the purpose of effecting a credit bid, if any, the "Credit Bidder") opt to submit a credit bid under Section 363(k) of the Bankruptcy Code for the NHC Assets (a "Credit Bid"), such Credit Bid must be higher than the Successful Bidder from the Auction, duly authorized, and received by the Debtor in advance of the Sale Hearing. Notwithstanding this deadline, the Agent and the Lenders are not waiving their rights to credit bid pursuant to Section 363(k) at a later time should this process fail.

x.  At the Sale Hearing, the Debtor shall present the Successful Bidder or the Credit Bid to this Court for approval. The Debtor's presentation for approval of a particular Successful Bid shall not be deemed the Debtor's acceptance of such bid. The Debtor will be deemed to have accepted a Qualified Competing Offer only when such Bid has been approved by this Court at a hearing to approve the sale of NHC Assets (the "Sale Hearing").

y.  Notwithstanding the approval of the Successful Bid and the Next Best Bid, the consummation of the Transaction shall be contingent upon, and made pursuant to an order of this Court approving the transaction pursuant to Sections 105, 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006.

z.  The Orders of this Court granting the Sale Motion (with the assumption and assignment of certain executory contracts and non-residential real property leases) shall provide that if the Successful Bidder fails to consummate the Transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtor shall be authorized, but not required, to close with the Qualified Bidder that submitted the Next Best Bid, without notice to any other party (other than parties to executory contracts and unexpired leases affected by the Next Best Bid) or further Order of this Court.

aa.  All Good Faith Deposits shall be subject to the jurisdiction of the Bankruptcy Court and shall be returned, together with any interest earned thereon, to such party within five (5) business days following the Closing Date, provided that such party has not been chosen as the Successful Bidder. If for any reason the Successful Bidder fails to close the Transaction, the Successful Bidder's Good Faith Deposit shall immediately and irrevocably become property of the Debtor's estate without any further action of this Court, and the Debtor specifically retains the right to seek all additional available damages from and/or remedies against the defaulting Successful Bidder (other than the Stalking Horse which shall only be subject to damages to the extent of its Good Faith Deposit). Likewise, the Debtor may seek such damages and remedies and shall be entitled to the Good Faith Deposit of any Qualified Bidder selected by the Debtor as the Next Best Bid (other than the Stalking Horse which shall only be subject to damages to the extent of its Good Faith Deposit) if such Qualified Bidder fails to close because of a breach or failure to perform by that Qualified Bidder. The Good Faith Deposit of the Successful Bidder, together with any interest earned thereon, shall, in the event the Successful Bidder closes, be applied against the purchase price of the NHC Assets. The Successful Bidder shall not have any claim, cause of action, or any similar right against the Debtor relating to or arising out of the investment of the Successful Bidder's Good Faith Deposit.

bb.  All Good Faith Deposits shall be held, subject to the provisions of this Order, by the Escrow Agent in an escrow account. In the event of a dispute concerning the Debtor's right to retain any Good Faith Deposit of a bidder, the

bidder's sole remedy shall be to seek relief from this Court to compel the return of the Good Faith Deposit; provided, however, that nothing in this Order shall waive, release or restrict any right or remedy of any person arising from the wrongful disbursement or loss of any Good Faith Deposit.

cc. Except as otherwise provided with respect to the Stalking Horse (and solely as part of the Break-Up Fee) or as otherwise ordered by this Court, no Bidder shall be entitled to assert a substantial contribution claim against the Debtor's estate or otherwise seek reimbursement of its costs, expenses or professional fees incurred in connection with the sale and competitive bidding process for the NHC Assets, including formulation and submission of any bid or any due diligence efforts. All Bidders (other than the Stalking Horse), whether or not such Bidders are deemed to have made a Qualified Competing Offer, shall indemnify the Debtor's bankruptcy estate and the Debtor for any claims by a broker or individual asserting a claim for commission or brokerage fees other than the Stalking Horse.

dd. The Debtor shall have the right, in its sole discretion (with the concurrence of CRG and after consultation with the Agent and the Lenders), and so long as not materially inconsistent with the terms, covenants, agreements and deadlines set forth in the Stalking Horse Agreement, Fourth Cash Collateral Order or this Order to (i) impose at or before the Auction such other and additional terms and conditions as may be in the interests of the Debtor's estate and creditors ; (ii) extend the deadlines set forth in this Order, subject to the terms and conditions of the Fourth Cash Collateral Order; (iii) adjourn the Auction at or before the Auction; or (iv) adjourn the Sale Hearing.

ee. In the event that the Debtor, upon approval by this Court, accepts an offer for the NHC Assets from a bidder other than the Stalking Horse and consummates any such transaction, the Debtor shall pay the Stalking Horse a Break-Up Fee, in the amount of $250,000, in accordance with the terms of the Stalking Horse Agreement. Likewise, the Stalking Horse shall be entitled to the return of its Good Faith Deposit on the terms and conditions set out in the Stalking Horse Agreement. The Break-Up Fee shall be paid from the proceeds of the competing transaction and shall be entitled to administrative priority under Sections 503 and 507 of the Bankruptcy Code.

ff. If the Debtor enters into an "stalking horse" agreement (after consultation with CRG, the Agent and the Lenders) and files a Sales Motion under paragraph 8(e), then such agreement shall be deemed the Stalking Horse Agreement and the non-Debtor counterparty shall be deemed the Stalking Horse and afforded all of the protections of this Order; and all conditions to being the Stalking Horse, the Stalking Horse Agreement, a Qualified Competing Offer, or, subject to the Auction, the Successful Bid shall be deemed satisfied or waived.

9. Notwithstanding the possible applicability of FED. R. BANKR. P. 6004 or other local rule or Bankruptcy Rule, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and no automatic stay of execution shall apply to this Order.

**IT IS SO ORDERED.**

*James G. Mixon*

UNITED STATES BANKRUPTCY JUDGE

DATE: 03/01/10

SUBMITTED BY:

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: ccoleman@wlj.com

By _____
Charles T. Coleman (80030)
Judy Simmons Henry (84069)
Kimberly Wood Tucker (83175)
Attorneys for National Home Centers, Inc.

MCAFEE & TAFT A PROFESSIONAL CORPORATION
211 N. Robinson Ave., Tenth Floor
Oklahoma City, Oklahoma 73102
(405) 552-2253
E-MAIL: Louis.Price@mcafeetaft.com

By: /s/ Louis J. Price
Louis J. Price
Attorneys for ProBuild Company LLC


K&L GATES LLP
1717 Main Street, Suite 2800
Dallas, Texas 75201

(214) 939-5427
FAX: 214.939.6100
EMAIL: david.weitman@klgate.com

By: _____
David Weitman
Attorneys for JPMorgan Chase Bank, N.A., as Agent for
Itself and the Lenders


MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
225 W. Washington, Suite 2600
Chicago, IL 60606
(312) 460-4200
E-MAIL: traison@millercanfield.com

By: /s/ Michael H. Traison
Michael H. Traison (P35759)
Attorneys for the Official Committee of Unsecured Creditors