IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 5:09-bk-76195 |
| NATIONAL HOME CENTERS, INC., | § | |
| | § | (CHAPTER 11) |
| DEBTOR. | § | |
| | § | |
| | § | |

**ORDER APPROVING (A) SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR, FREE AND CLEAR OF ALL LIENS, CLAIMS, AND INTERESTS; (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND NON-RESIDENTIAL REAL PROPERTY LEASES; (C) CURE AMOUNTS AND PROCEDURES WITH RESPECT TO SAME; AND (D) GRANTING RELATED RELIEF**

The Motion of National Home Centers, Inc. (the "Debtor") for Approval of (A) Sale of Substantially All Assets of the Debtor To The Stalking Horse Buyer, Free and Clear of All Liens, Claims, Encumbrances, and Interests; (B) Assumption and Assignment of Certain Executory Contracts and Non-Residential Real Property Leases; (C) Cure Amounts and Procedures with Respect to Same; and (D) Granting Related Relief; and Notice of Bid Deadline; Auction Date and Hearing (the "Sale Motion")[1] [Docket No. 398] and the limited objections of Liberty Bank of Arkansas ("LBA"). [Docket No. 437], Banc of America Leasing and Capital, LLC ("BOA") [Docket No.426], and The Newman Family, LLC (the "Newman Family") and Dwain Newman and Glenda Newman (the "Newmans") [Docket No. 481], the objections of Silver Line Building Products LLC ("Silver Line") [Docket No. 489], Brandon Company ("Brandon") [Docket No. 483], Adleta Corporation ("Adleta") [Docket No. 482], Activant Solutions, Inc. ("Activant") [Docket No. 480] and the Official Committee of Unsecured Creditors (the "Committee") [Docket

---

[1] Capitalized terms not defined herein shall have the meanings set forth in the Sale Motion or Stalking Horse Agreement (as defined in the Sale Motion), as the case may be.

1

No. 478] and the conditional objection of JPMorgan Chase Bank, N.A., as Agent [Docket No. 458] (the "JPMorgan Objection") came on for hearing before the Court on April 2, 2010. The Court notes that the objection of the Committee was withdrawn on March 26, 2010 [Docket No. 495]. Appearances were noted on the record.

All objections not previously withdrawn were announced as either settled or withdrawn, with the exception of the JPMorgan Objection.

Based on the Sale Motion, the arguments of counsel, testimony, other evidence and proof before the Court, the Court being fully advised in the premises, and for those reasons stated orally and recorded in open court following the close of evidence:

**THIS COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW DICTATED INTO THE RECORD AT THE CONCLUSION OF THE HEARING SHALL BE INCORPORATED INTO THIS ORDER PURSUANT TO BANKRUPTCY RULE 7052 AND THE COURT FURTHER FINDS AS FOLLOWS:[2]**

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case (the "Chapter 11 Case") in this district is proper pursuant to 28 U.S.C. § 1409(a).

B.    The statutory predicates for the relief sought in the Sale Motion are sections 105(a), 363, and 365 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[2]    Finding of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Bankruptcy Rule 7052.

2

C.    This Order (this "Sale Approval Order") constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Approval Order, and specifically enters this Sale Approval Order *nunc pro tunc* to 12:01 a.m., Monday, April 5, 2010

D.    A hearing  (the "Sale Procedures Hearing") on the Debtor's Motion to Approve Bid and Sales Procedures for the Sale of Substantially All of the Debtor's Assets, Free and Clear of All Liens, Claims, and Other Interests, and Assumption and Assignment of Executory Contracts and Non-Residential Real Property Leases [Docket No. 208] was held by this Court on February 10, 2010.

E.    On March 1, 2010, the Court entered an Order Approving Bid and Sales Procedures, Setting Auction Date, Sale Hearing Date, and Objection Deadline to Sales Motion (the "Bid Procedures Order") [Docket No. 405].  Pursuant to the Bid Procedures Order, the Debtor identified the Stalking Horse Buyer, negotiated a Stalking Horse Agreement and filed and served the Stalking Horse Agreement with the Sale Motion as required by the Bid Procedures Order. The Debtor and the Stalking Horse Buyer have complied with the Bid Procedures Order in all material respects.

F.    Pursuant to the Bid Procedures Order, the Debtor solicited for Qualified Competing Offers, but no Qualified Competing Offers were received by the March 26, 2010, 5:00 p.m. Central Time deadline.  The Auction scheduled and noticed to creditors for March 30, 2010 was cancelled.  The Bid Procedures Order set April 2, 2010 as the date of the hearing (the "Sale Hearing") on the Sale Motion and for entry of the Sale Approval Order.

3

G.    The Debtor served (i) copies of the Sale Motion without exhibits to all creditors and parties in interest, and (ii) copies of the Sale Motion with the Stalking Horse Agreement and the proposed Cure Amounts upon (a) all parties identified on Debtor's current special service list filed in this case; (b) all parties who have expressed in writing an interest to acquire the Debtor's assets; (c) to the United States Trustee; and (d) non-debtor parties to all leases and executory contracts sought to be assumed and assigned in connection with the sale of the Debtor's assets (including the Assigned Contracts and Assigned Leases).  The Debtor submits that notice of the Sale Motion as set forth herein is in compliance with Federal Rules of Bankruptcy Procedure 2002, 6004, and 6006.  As set forth above, creditors and other interested parties have been provided notice of the salient details regarding the Sale Motion and the Sale Hearing. Accordingly, notice is sufficient under § 363 of the Bankruptcy Code and Bankruptcy Rules 2002 and 2006, and no additional or further notice is necessary.

H.    The Sale Motion, requesting authorization to assume and assign the Assigned Contracts and Assigned Leases (including the proposed Cure Amounts with respect thereto), has been served on non-debtor parties to the Assigned Contracts and Assigned Leases.  Accordingly, notice is sufficient under § 365 of the Bankruptcy Code and no additional or further notice is necessary.

I.    As demonstrated by the testimony or other evidence proffered or adduced at the Sale Hearing: (a) the offer from Stock Building Supply Holdings, LLC, a Virginia limited liability company, or its designee,[3] the Stalking Horse Buyer (the "Buyer") constitutes the highest and best offer for the Purchased Assets; (b) the Debtor made an auction process available

---

[3] Stock Building Supply Holdings, LLC's designee to acquire the Purchased Assets is Stock Building Supply of Arkansas, LLC.

4

in accordance with, and have otherwise complied in all material respects with, the Bid Procedures Order; (c) the entire Sale process set forth in the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets; and (d) the entire Sale process was duly noticed as required by the Bid Procedures Order and was conducted in a non-collusive, fair, and good faith manner and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Purchased Assets.

J.     The Debtor, in consultation with its financial advisor, CRG Partners LLC ("CRG"), determined in accordance with the Bid Procedures Order that the Buyer's offer as evidenced by the Stalking Horse Agreement was the highest and best bid and thus was the Successful Bid (as defined in the Bid Procedures Order).

K.     The Stalking Horse Agreement constitutes the highest and best offer for the Purchased Assets, and approval of Stalking Horse Agreement and Sale Motion is in the best interest of the Debtor, the Debtor's creditors and all other interested parties.   The Debtor's determination that the Stalking Horse Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtor's business judgment.

L.     The Stalking Horse Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of this Chapter 11 Case.   No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtor's estate than provided for in the Stalking Horse Agreement of the Buyer.

M.     The purchase price as set forth in the Stalking Horse Agreement (the "Purchase Price") for the Purchased Assets is fair and reasonable, and constitutes fair consideration and reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent

5

Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code) under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. Approval of the Stalking Horse Agreement and the Sale Motion in accordance with this Sale Approval Order and the Stalking Horse Agreement is in the best interests of the Debtor's estate, creditors and other parties in interest. The terms of the Stalking Horse Agreement were negotiated at arm's-length and are fair and reasonable.

N.  The Stalking Horse Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtor nor the Buyer is entering into the transactions contemplated by the Stalking Horse Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

O.  The Debtor has demonstrated compelling circumstances and good, sufficient and sound business purposes for the sale of the Purchased Assets as set forth in the Stalking Horse Agreement pursuant to section 363(b) of the Bankruptcy Code outside of a plan of reorganization including, among other things:

 a. To maximize the value of the Purchased Assets, a sale must be accomplished within the time constraints set forth in the Stalking Horse Agreement, the Bid Procedures Order and the Bidding Procedures because the value of the Purchased Assets may decrease during the time it would otherwise take to propose and confirm a plan of reorganization, and, in any event, a plan may not be necessary or confirmable in this Chapter 11 Case;

 b. Claims against the Debtor's estate will be minimized as a result of the prompt consummation of a sale of the Purchased Assets. The Buyer will be assuming certain Assumed Liabilities. To the extent that the Buyer assumes the Assumed Liabilities, the holders of such Assumed Liabilities will have no further recourse against the Debtor or its estate and the rights of the holders of such claims to pursue the Debtor or its estate for liability arising from such Assumed Liabilities will be extinguished; and

6

   c. The sale does not constitute a de facto plan of reorganization or liquidation or an element of such a plan for the Debtor, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtor; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtor; (iii) circumvent chapter 11 plan safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests, compromise controversies or extend debt maturities.

  P. The Debtor (i) has full corporate or other power to execute, deliver and perform its obligations under the Stalking Horse Agreement and all other documents contemplated thereby or entered into in connection therewith, and (ii) has taken all corporate or other action necessary to authorize and approve the Stalking Horse Agreement and such other documents contemplated thereby and the consummation by them of the transactions contemplated thereby or entered into connection therewith.  No third-party approvals, other than those expressly provided for in the Stalking Horse Agreement, if any, are required by the Debtor to consummate such transactions.

  Q. The Debtor is authorized and directed to sell and transfer the Purchased Assets to the Buyer free and clear of all Liens,[4] Claims (as defined in section 101(5) of the Bankruptcy Code) and Interests[5] because it has satisfied the requirements of section 363(f) of the Bankruptcy Code.

  R. Except for the Assumed Liabilities and Permitted Liens, the transfer of the Purchased Assets to the Buyer, and assumption and assignment to the Buyer of the Assigned Contracts and Assigned Leases, will not subject the Buyer to any Lien, Claim, or Interest whatsoever with respect to the operation of the Debtor's business prior to the Closing Date.

---

[4] "Lien" means any mortgage, pledge, security interest, right of first refusal, option, encumbrance, lien or charge of any kind (including any conditional sale or other title retention agreement or lease in the nature thereof), any filing or agreement to file a financing statement as debtor under the Uniform Commercial Code or any similar statute, or any subordination arrangement in favor of another Person

[5] "Interest" means any right, title, interest, ownership, indicia of title or ownership, right of possession, or other legal, equitable or possessory interest of any kind.

S.    Those holders of Liens, Claims, and Interests against the Debtor, its estate or in respect of any of the Purchased Assets who did not object, or who settled or withdrew their objections, to the Sale or the Sale Motion are deemed to have consented to the sale of the Purchased Assets and the approval of the Sale Motion pursuant to section 363(f)(2) of the Bankruptcy Code. The Debtor has ~~met the requirements, in each instance, of one or more of the standards set forth in section 363(f)(5) of the Bankruptcy Code with respect to all~~ other holders

*including J.P. Morgan Chase Bank, N.A.* *also met the elements under 363(f)(3) and (f)(5) for approval of this* *sale free and clear of liens.* *All*

of Liens, Claims, and Interests, as such holders will have their Liens, Claims, and Interests, if any, in each instance against the Debtor, its estate or in respect of any of the Purchased Assets, attach to the net cash proceeds from the sale of the Purchased Assets in the same order of priority, with the same validity, force and effect that such Liens, Claims, and Interests had prior to the Sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

T.    The Buyer would not have entered into the Stalking Horse Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and its creditors, if the Sale to the Buyer, the assumption of liabilities and obligations as set forth in the Stalking Horse Agreement by the Buyer and the assignment of the Assigned Contracts and Assigned Leases were not free and clear of all Liens, Claims, and Interests, including, but not limited to, successor liability.

U.    The Stalking Horse Agreement was negotiated, proposed and entered into by the parties in good faith, from arm's length bargaining positions and without collusion. The Debtor has followed in good faith the procedures for notice and Sale as set forth in the Bid Procedures Order. The Buyer is not an "insider" or "affiliate" of the Debtor (as each such term is defined in the Bankruptcy Code).  Neither the Debtor nor the Buyer have engaged in any conduct that

8

would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of section 363(n) of the Bankruptcy Code to the Sale and the transactions contemplated by the Stalking Horse Agreement. Specifically, the Buyer has not acted in a collusive manner with any person and the aggregate price paid by the Buyer for the Purchased Assets was not controlled by any agreement among the Buyer and the other potential bidders. The Buyer is entitled to the protections afforded under section 363(m) of the Bankruptcy Code because the Buyer is a good faith purchaser in that, *inter alia*: (a) the Buyer recognized that the Debtor was free to deal with any other party interested in acquiring the Purchased Assets; (b) the Buyer complied with the provisions in the Bid Procedures Order; (c) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bid Procedures Order; (d) the Buyer in no way induced or caused the chapter 11 filing by the Debtor; (e) all payments to be made by the Buyer in connection with the Sale have been disclosed; (f) no common identity of directors or controlling stockholders exists between the Buyer and the Debtor; and (g) the negotiation and execution of the Stalking Horse Agreement was at arm's length and in good faith.

V.    CRG has acted as the Debtor's financial advisor and advised and assisted the Debtor in the negotiation of the Stalking Horse Agreement and the conveyance of the Purchased Assets to the Buyer pursuant hereto. To the extent that CRG or any other person is entitled to any fees in connection with negotiation and consummation of the Sale, the Buyer shall not be liable in any way for such fees. The Debtor and its estate shall be solely liable to CRG or any other person for any such fees.

W.    In the absence of a stay pending appeal, if the Closing occurs at any time after entry of this Sale Approval Order, then, with respect to the Stalking Horse Agreement, the Buyer, as a buyer in good faith of the Purchased Assets, shall be entitled to the protections of section 363(m)

9

of the Bankruptcy Code if this Sale Approval Order or any authorization contained herein is reversed or modified on appeal.

X.    The Debtor is the sole and lawful owner of the Purchased Assets, and has good, valid and marketable title thereto. Effective as of the Closing, the transfer of the Purchased Assets is or will (i) constitute a legal, valid and effective transfer of property of the Debtor's estate to the Buyer, as more particularly set forth in the Stalking Horse Agreement, and (ii) vest the Buyer with all right, title, and interest of the Debtor and the Debtor's estate in and to the Purchased Assets free and clear of all any Liens, Claims, and Interests under sections 363(f) and 105 of the Bankruptcy Code.

Y.    Adequate notice and opportunity to be heard was provided to parties to executory contracts and unexpired leases to be rejected or assumed and assigned pursuant to this Sale Approval Order. Further, parties received adequate notice and an opportunity to object to the amount of any cure owed by the Debtor's estate on account of any executory contract or unexpired lease to be assumed and assigned to the Buyer under the Stalking Horse Agreement.

Z.    The Debtor has demonstrated that it is an exercise of its sound business judgment to assume and assign the Assigned Contracts and Assigned Leases in connection with the consummation of the Sale and Stalking Horse Agreement, and the assumption and assignment of the Assigned Contracts and Assigned Leases is in the best interests of the Debtor, its estate, and its creditors. The Assigned Contracts and Assigned Leases being assigned to the Buyer as set forth in the Stalking Horse Agreement are an integral part of the Debtor's business being purchased by the Buyer and, accordingly, such assumption and assignment of the Assigned Contracts and Assigned Leases is reasonable, enhances the value of the Debtor's estate, and does not constitute unfair discrimination.

AA. The objection of Activant has been settled as set forth on the record. Any objections to the assumption and assignment of any other of the Assigned Contracts and Assigned Leases to the Buyer are hereby overruled. Any objections to the Cure Amounts associated with such Assigned Contracts and Assigned Leases are resolved as set forth herein. To the extent that any counterparty to any of the Assigned Leases and Assigned Contracts failed to timely object to (i) the proposed assumption and assignment of the applicable assigned lease or assigned contract or (ii) the Cure Amount associated with the applicable assigned lease or assigned contract, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignment of its respective assigned lease or assigned contract to the Buyer.

BB. The Buyer has the financial capability to fund the Stalking Horse Agreement and the financial wherewithal to meet all of its future financial obligations pursuant to the terms of the Assigned Contracts and Assigned Leases.

CC. Neither the Buyer nor its Affiliates shall be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets, to: (1) be a successor (or other such similarly situated party) to the Debtor (other than with respect to the Assumed Liabilities as expressly stated in the Stalking Horse Agreement); (2) have, *de facto* or otherwise, merged with or into the Debtor; (3) be a mere continuation of the Debtor or its estate (and there is no continuity of enterprise between the Buyer and the Debtor); or (4) be holding itself out to the public as a continuation of the Debtor. The Buyer is not acquiring or assuming any liability, warranty or other obligation of the Debtor, except as expressly set forth in the Stalking Horse Agreement with respect to the Assumed Liabilities.

11

IT IS HEREBY ORDERED:

### General Provisions

1.      The Sale Motion is hereby granted to the extent provided herein.

2.      All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled, including all reservations of rights included therein, which are not otherwise provided for by this Sale Approval Order, are overruled on the merits. For the reasons stated in open court, the request for adequate protection by J.P. Morgan Chase, as agent, is hereby denied.

3.      Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014.

### Approval of the Stalking Horse Agreement

4.      Each and every term of the Stalking Horse Agreement and all other ancillary documents, including, without limitation, the Temporary License Agreement attached hereto as Exhibit A, is hereby approved.

5.      The Sale to the Buyer pursuant to the Stalking Horse Agreement is hereby authorized under sections 363 and 365 of the Bankruptcy Code and the entry of the Debtor into the Stalking Horse Agreement is hereby approved.

6.      The Debtor, through any corporate officer, is authorized and directed to execute and deliver, and empowered to fully perform under, consummate, implement and close the Stalking Horse Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement such agreements, including taking any actions that otherwise would require further approval by shareholders or the Debtor's board of directors (or any equivalent thereof) (without the need of obtaining such approvals) and to take all further

12

actions as may be reasonably requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession, any or all of the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations of the Debtor under the Stalking Horse Agreement, including effectuating amendments to the Stalking Horse Agreement in furtherance thereof.   All persons necessary to effect the transactions contemplated by the Stalking Horse Agreement are hereby ordered to execute any and all documents necessary to effect such transactions.   If any person fails to comply with the provisions of this paragraph 6 prior to the Closing Date, such person (or persons, as the case may be) shall nonetheless be deemed bound to any and all documents necessary to effect the transactions contemplated under the Stalking Horse Agreement.

7.     The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Stalking Horse Agreement or any other sale-related document.   The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Approval Order.

8.     The Buyer shall have no obligation to proceed with the Closing until all conditions precedent in the Stalking Horse Agreement to its obligation to do so have been met, satisfied or waived in accordance with the terms of the Stalking Horse Agreement.

### Transfer of the Purchased Assets

9.     Pursuant to 11 U.S.C. §§ 105, 363 and 365, the Purchased Assets shall be transferred to the Buyer in accordance with the Stalking Horse Agreement, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Purchased Assets and shall vest the Buyer with title to the Purchased Assets, free and clear of all Liens, Claims, and Interests

13

other than Assumed Liabilities and Permitted Liens. All such Liens, Claims, and Interests released, terminated and discharged as to the Purchased Assets shall attach to the sale proceeds with the same validity, force and effect which they now have as against the Debtor, the estate or the Purchased Assets. The sole and exclusive right and remedy available to holders of any other Liens, Claims, and Interests and other parties in interest shall be a right to assert Liens, Claims, and Interests against the Debtor's estate.

10.     The Buyer is not a successor to the Debtor or any of its Affiliates or the estate by reason of any theory of law or equity. Except for the Assumed Liabilities and Permitted Liens, Buyer is not assuming and shall not assume, and Buyer shall not in any way be responsible for, any liabilities, successor liabilities or obligations of Debtor whatsoever associated with the Purchased Assets, the Business or with any other properties, rights, contracts, or other assets of Debtor, whether presently in existence or arising hereafter, known or unknown, disputed or undisputed, contingent or non-contingent, liquidated or unliquidated, or otherwise. Without limiting the foregoing, except as provided by the Stalking Horse Agreement, Buyer shall not be obligated to assume or to perform or discharge, and does not assume or agree to perform or discharge, any liability: (i) arising before the Closing Date; (ii) for any obligation or expense which under the Stalking Horse Agreement shall be borne by Debtor; (iii) arising out of or related to the administration of the Debtor's Chapter 11 Case; (iv) arising out of or related to any Excluded Contract and Lease; (v) arising out of or related to any third party Claims against the Debtor, pending or threatened, including, without limitation, any warranty Claims, (vi) whether now existing or hereafter arising, under any Environmental Laws and arising out of or related to the Business (including, without limitation, any liability for administrative or civil fines or penalties for violations of Environmental Laws, or remediation or response costs for

14

contamination); (vii) for brokerage fees of the Debtor; (viii) except as otherwise specifically provided in the Stalking Horse Agreement, with respect to the Worker Adjustment and Retraining Notification Act (WARN), any and all comparable state law obligations, or any rules or regulations relating thereto; (ix) with respect to Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act, the Americans with Disabilities Act, the Civil Rights Act of 1991, the Fair Labor Standards Act, the National Labor Relations Act, the Age Discrimination in Employment Act, COBRA or any comparable state law obligation or any rules or regulations relating thereto, (x) related to any current or former employees or executives of Debtor, whether for wages, vacation pay, payroll (including payroll Taxes), severance, retention, employment, change-of-control, pension, retirement, equity or other benefits, and whether or not arising under employment agreements, express or implied; (xi) arising out of or related to any ERISA Plan; (xii) for any Taxes related to any taxable period (or portion thereof) ending on or prior to the Closing Date; and (xiii) the Cure Amounts.

11. All persons and entities (including, but not limited to, the Debtor, the Committee, creditors, equityholders, employees, employees, former employees and shareholders, administrative agencies, governmental departments, secretaries of state, federal, state and local officials) and their respective successors or assigns and any trustees thereof, shall be and are hereby permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Purchased Assets or the Buyer and its successors or assigns as an alleged successor or otherwise with respect to any Liens, Claims, and Interests of any kind and nature with respect to the Purchased Assets or the operations of the Debtor prior to the Closing Date. If the Closing fails to occur for any reason, then Liens, Claims, and Interests shall continue against the Purchased Assets unaffected by this

Sale Approval Order. As of the Closing, the Buyer shall have any and all rights, claims, defenses and offsets held by the Debtor and the estate with respect to Assumed Liabilities and Permitted Liens.

12. Except for Assumed Liabilities and Permitted Liens, the transfer of the Purchased Assets pursuant to this Sale Approval Order shall not subject the Buyer to any liability with respect to any obligations incurred in connection with or in any way related to the Purchased Assets prior to the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability. The sole and exclusive right and remedy available to any person who asserts any Lien, Claim, or Interest in any way related to the Purchased Assets and incurred or otherwise arising prior to the Closing Date or by reason of the Sale shall be a right to assert such Claim or other liability, Lien, Claim, or Interest against the Debtor's estate.

**Assumption and Assignment to Buyer of the Assigned Contracts and Assigned Leases**

13. Pursuant to 11 U.S.C. §§ 105(a) and 365, and subject to and conditioned upon the Closing the Debtor's assumption and assignment to the Buyer, and the Buyer's assumption on the terms set forth in the Stalking Horse Agreement of the Assigned Contracts and Assigned Leases and the requirements of 11 U.S.C. 365(b)(1) and 365(f)(2) with respect thereto are deemed satisfied. Subject to the Buyer's right to modify such list at anytime prior to Closing, attached as Exhibit B is the list of Assigned Contracts and Assigned Leases and the related Cure Amounts.

14. The Debtor is authorized and directed in accordance with 11 U.S.C. §§ 105(a) and 365 to (a) assume and assign to Buyer, effective upon the Closing Date, the Assigned Contracts

16

and Assigned Leases free and clear of all Liens, Claims, and Interests, and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts and Assigned Leases to the Buyer.

15.     With respect to the Assigned Contracts and Assigned Leases (a) the Debtor may assign each of the Assigned Contracts and Assigned Leases in accordance with sections 363 and 365 of the Bankruptcy Code, and any provision in any of the Assigned Contracts and Assigned Leases that prohibits or conditions the assignment of such Assigned Contracts and Assigned Leases and allows the party to such Assigned Contracts and Assigned Leases to terminate, recapture, impose any penalty, condition renewal or extension, or otherwise modify any term or condition contained in such Assigned Contracts and Assigned Leases, upon the assignment of the same, constitutes an unenforceable anti-assignment provision which is void and of no force and effect; (b) upon payment of the Cure Amounts all requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of each of the Assigned Contracts and Assigned Leases have been satisfied; and (c) upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title and interest of each of the Assigned Contracts and Assigned Leases.

16.     Each of the Assigned Contracts and Assigned Leases shall, upon assignment to the Buyer, be deemed to be valid and binding on the Buyer and in full force and effect and enforceable in accordance with its terms, and following such assignment and payment of the Cure Amounts, the Debtor and the estate shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from  any liability for any breach of such Assigned Contracts and Assigned Leases after such assignment.

17

17.     Each non-Debtor party to any of the Assigned Contracts and Assigned Leases is hereby barred and enjoined from asserting against the Buyer, the Debtor or the Debtor's estate (a) any default existing as of the date of the Sale Hearing if such default was not raised or asserted in a timely manner prior to the entry of this Sale Approval Order or (b) any objection to the assumption and assignment of such non-Debtor party's Assigned Contract or Assigned Lease or the Cure Amount, if any, of which the non-Debtor party was given notice prior to the Sale Hearing. The assignment of each of the Assigned Contracts and Assigned Leases to the Buyer will not cause a default or otherwise allow the non-Debtor party thereto to terminate or adversely affect the Buyer's rights thereunder. In no event shall the Buyer be liable for any Cure Amounts or pre-Closing liabilities arising from or related to any of the Assigned Contracts and Assigned Leases.

18.     All defaults or other obligations of the Debtor under the Assigned Contracts and Assigned Leases arising or accruing prior to the satisfaction of the terms and conditions of the Stalking Horse Agreement and the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured in accordance with the Stalking Horse Agreement by the Debtor by payment of the applicable Cure Amounts set forth on Exhibit A, and the Buyer shall have no other liability or obligation with respect to defaults, breaches or other obligations incurred, arising or accruing prior to the Closing Date, except as otherwise expressly provided in the Stalking Horse Agreement. The payment of the applicable Cure Amounts, in accordance with the Stalking Horse Agreement, shall (a) effect a cure of all defaults existing thereunder as of the date that such Assigned Leases and Assigned Contracts are assumed, and (b) compensate for any actual pecuniary loss to such non-Debtor party resulting from such default. To the extent that any

18

counterparty to any of the Assigned Leases and Assigned Contracts did not object timely to the assignment of such Contract and/or to its Cure Amount in accordance with the Bid Procedures Order and Sale Motion, such counterparty is deemed to have consented to such Cure Amount and the assignments of its respective assigned lease or assigned contract to the Buyer.

19.     There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Buyer or the Debtor as a result of the assumption, assignment and/or transfer of any of the Assigned Contracts and Assigned Leases.

20.     The Buyer's or its designated Affiliate's promise pursuant to the terms of the Stalking Horse Agreement to perform the obligations under the Assigned Contracts and Assigned Leases after the Closing shall constitute adequate assurance of its future performance under the Assigned Contracts and Assigned Leases being assigned to it within the meaning of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

21.     Upon assignment of the Assigned Contracts and Assigned Leases to the Buyer at or subsequent to the Closing, no default shall exist under any of the Assigned Contracts and Assigned Leases and no non-Debtor party to any of the Assigned Contracts and Assigned Leases shall be permitted to declare a default by or against the Buyer under such assigned contract or assigned lease or otherwise take action against the Buyer as a result of such assignment or any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under any of the Assigned Contracts and Assigned Leases. Upon entry of this Sale Approval Order and assumption and assignment of the Assigned Contracts and Assigned Leases, the Buyer shall be deemed in compliance with all terms and provisions of the Assigned Contracts and Assigned Leases.

19

22.     Notwithstanding anything to the contrary in this Sale Approval Order, no executory contract or unexpired lease will be assumed and assigned until the Closing.

23.     The failure of the Debtor or Buyer to enforce at any time one or more terms or conditions of any of the Assigned Contracts and Assigned Leases shall not be a waiver of such terms or conditions, or of the Debtor's and the Buyer's rights to enforce every term and condition of the Assigned Contracts and Assigned Leases.

24.     After the Closing and payment of the Cure Amounts, the Debtor shall have no liability related to the Assigned Contracts and Assigned Leases.

Additional Provisions

25.     The transaction contemplated by the Stalking Horse Agreement is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Sale to the Buyer. The Buyer is a purchaser in good faith of the Purchased Assets, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

26.     The consideration provided by the Buyer for the Purchased Assets under the Stalking Horse Agreement (i) shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the other laws of the United States, any state, territory, possession or the District of Columbia and (ii) is fair and reasonable and may not be avoided under section 363(n) or any other provision of the Bankruptcy Code, or otherwise.

27.     Neither the Buyer nor its Affiliates shall be deemed, as a result of any action taken in connection with the purchase of the Purchased Assets, to: (1) be a successor (or other

20

such similarly situated party) to the Debtor (other than with respect to the Assumed Liabilities as expressly stated in the Stalking Horse Agreement), including a "successor employer" for the purposes of the Internal Revenue Code of 1986 or the Employee Retirement Income Security Act of 1974; (2) have, *de facto* or otherwise, merged with or into the Debtor; (3) be a mere continuation of the Debtor or its estate (and there is no continuity of enterprise between the Buyer and the Debtor); or (4) be holding itself out to the public as a continuation of the Debtor.

28.     Each holder of a Lien, Claim, or Interest in, against, or upon the Purchased Assets is hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release such holder's Liens, Claims, and Interests in, against, or upon the Purchased Assets, if any, as such Liens, Claims, and Interests may have been recorded or may otherwise exist.   If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing any purported Liens, Claims, and Interests in, against or upon the Purchased Assets has not executed termination statements, instruments of satisfaction, or releases, in form and substance satisfactory to the Stalking Horse Buyer, of all Liens, Claims, and Interests that such person or entity purports to have with respect to the Purchased Assets, then on the Closing Date, or as soon as possible thereafter, (a) the Debtor is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Purchased Assets and (b) the Buyer is hereby authorized on behalf of each holder of a purported Lien, Claim, or Interest in, against, or upon the Purchased Assets, to file, register, or otherwise record a certified copy of this Sale Approval Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims, and Interests in, against, or upon the Purchased Assets of any kind or nature whatsoever.

21

29.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed to surrender possession of the Purchased Assets to the Buyer on the Closing Date, or as otherwise directed by the Buyer, with the Liens, Claims, and Interests of such entity to be satisfied solely from the proceeds of the Sale.

30.     The group health plans of the Debtor shall be deemed terminated immediately before the Closing Date pursuant to section 365 of the Bankruptcy Code for purposes of Section 4980B of the Internal Revenue Code of 1986, as amended (the "Tax Code") and Part 6, Subtitle B, Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the Debtor shall be deemed to have ceased to provide any group health plan to any employee immediately before the Closing Date.    The Buyer and its Affiliates shall not have, on or after the Closing Date, any obligation or liability (contingent or otherwise) arising under such provisions of law to any current or former employees of the Debtor, and their qualified beneficiaries, including any "M & A Qualified Beneficiaries" (as defined in Treasury Regulation § 54.4980B-9 Q-4/A).

31.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Purchased Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been and hereby are, directed to be transferred to the Buyer as of the Closing Date.

32.     This Sale Approval Order (a) is and shall be effective as a determination that, at Closing, all Liens, Claims, and Interests existing as to the Purchased Assets prior to the Closing Date have been and hereby are unconditionally released, discharged and terminated as to the

22

Purchased Assets, and that the conveyance described in this Sale Approval Order has been effected, (b) is and shall be effective to cause all Liens, Claims, and Interests to attach to and be perfected in the proceeds of the Sale, in the order of their priority, with the same validity, force and effect which they now have as against the Purchased Assets, without the need to file any financing statements or other evidence of perfection, and (c) is and shall be binding upon and govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets; provided, however, at closing, the Debtor shall pay cash to JPMorgan Chase Bank, N.A., as administrative agent (the "Agent") on behalf of itself and CIT Group, as lenders (the "Lenders"), BOA , LBA and CIT Technology Financing Services, Inc. ("CIT Technology") (Agent, Lenders, BOA, LBA and CIT Technology are collectively referred to herein as "Secured Lenders") for application against the indebtedness owed by the Debtor to the Secured Lenders consistent with the terms set forth below.

33. Promptly following the entry of this Sale Approval Order, each Secured Lender shall provide the Debtor with a "Pay-Off Letter," which sets forth the following, each as of the date of the Pay-Off Letter (and which may be updated by the Secured Lender, at any time prior to the initiation of the funding of the payoff to the Secured Lenders as provided below):

    (a)    the principal balance of the Debtor's obligations to the Secured Lender;

    (b)    the aggregate of accrued and unpaid interest owed to the Secured Lender;

23

(c)    the aggregate of accrued and unpaid fees and expenses owed to the Secured Lender by the Debtor (which aggregate shall be broken down by category);

(d)    a per diem interest amount; and

(e)    the aggregate of credits to which the Debtor is entitled (which aggregate shall be broken down by category).

34.    The Pay-Off Letter shall also include instructions for the payment, by wire transfer, of all amounts owed to the Secured Lenders, as reflected in the Pay-Off Letter.

35.    Prior to the Debtor's payment to the Secured Lenders of their proportionate amount of the sales proceeds as set forth in Paragraph 37 below, the Debtor is hereby authorized and directed to disburse at closing to the Agent that portion of the cash collateral, consisting of cash, deposit accounts and other cash equivalents (but not including the Purchase Price paid by the Buyer to the Debtor for the Purchased Assets) held by the Debtor pursuant to the terms and conditions of the Fifth Joint Stipulation and Agreed Interim Order Authorizing the Use of Cash Collateral and Providing for Adequate Protection (the "Fifth Cash Collateral Order"), entered by the Court on February 26, 2010, as may be necessary to satisfy in full in cash at closing the Agent Indebtedness, consistent with the terms of the Agent Pay-Off Letter (as defined below), which amounts are fully allowed pursuant to the terms hereof subject to the right of the Debtor to object to the reasonableness of the hourly rates charged by Agent's and Lender's counsel. The payment to the Agent of the Agent Indebtedness in accordance with the Agent Pay-Off Letter shall be deemed final and indefeasible, and the Agent and the Lenders shall have no further obligation to fund any disbursements of any kind from their collateral or otherwise to any third parties, as may have been provided for under prior Cash Collateral Orders entered in this case.

24

36.     Notwithstanding anything to the contrary in this Sale Approval Order or in the Stalking Horse Agreement with respect thereto, the Debtor, together with each officer of the Debtor, is hereby authorized and directed as follows:

(A) to execute and deliver to the Agent a Pay-Off Letter (the "Agent Pay-Off Letter") including (1) a reasonably detailed calculation of the indebtedness owed by the Debtor to the Agent and the Lenders, the "Agent Indebtedness") as of the date of such Agent Pay-Off Letter (together with per diem amounts for periods thereafter), and (2) instructions for the payment by wire transfer of the Agent Indebtedness in accordance with Paragraphs 35 and 37 of this Sale Approval Order; and

37.     Promptly upon Closing of the sale transaction herein approved, Debtor shall disburse and pay on a pro-rata basis to the Secured Lenders an amount equal to the Purchase Price paid by Buyer to the Debtor at Closing *less* the Purchase Price Escrow (as defined in Section 6.7 of the Stalking Horse Agreement) and other closing and wind down costs identified by Debtor in the Availability Closing Proceeds Analysis accepted by the Court (the "Available Closing Proceeds Analysis"), (said amount referred to herein as "Available Closing Proceeds"), and such schedule of Available Closing Proceeds is set forth on Exhibit "C" attached hereto and incorporated herein. The pro-rata amount to be paid to each Secured Lender shall be determined by multiplying the Available Closing Proceeds by a fraction, which has as its numerator the Pay-Off Amount owed to that Secured Lender (in each instance as set forth in the applicable Pay-Off Letter submitted by such Secured Lender) and has as its denominator the sum of all such Pay-Off Amounts owed to  the Secured Lenders. In the event the Available Closing Proceeds (together with amounts paid in respect of the Agent Indebtedness pursuant to Paragraph 35 of this Sale Approval Order in the case of Agent and the Lenders) are insufficient to pay in full any portion

25

of the indebtedness owing to the Secured Lenders (including per diem and other amounts in respect of periods after the date of their respective Pay-Off Letters), at such time as the Purchase Price Escrow is released to the Debtor pursuant to the Stalking Horse Agreement, the Debtor shall pay to the Secured Lenders the balance of the Pay-Off Amount owed to each Secured Lender on the same pro rata basis set forth in this paragraph (excluding any Secured Lenders who have been indefeasibly paid in full prior to such time) until the Pay-Off Amount has been paid in cash, in full to each of the Secured Lenders (inclusive of the amount of the Secured Lenders' Escrow due each of the Secured Lenders). The payment to each of the Secured Lenders shall be deemed final and indefeasible, subject to the right of the Debtor to object to the reasonableness of the hourly rates charged by Agent's and Lenders' counsel.

38.    Until the Agent and the Lenders have received full payment of their claims in accordance with the terms and conditions of the Agent Pay-Off Letter, the Agent and the Lenders shall be entitled to all of their liens, rights, protections, and benefits of the prior Cash Collateral Orders entered in this case to the extent consistent with this Sale Approval Order. Further, until the Secured Lenders have received full payment of their claims in accordance with the terms and conditions of each Pay-Off Letter, each of the Secured Lenders, including the Agent and the Lenders, shall be granted by the terms of this Sale Approval Order a first-priority adequate protection lien on and security interest in the Debtor's interest in the Purchase Price Escrow (payable to the Debtor, consistent with the terms and conditions of the Stalking Horse Agreement), proportionate to the balances owed by each of the Secured Lenders.

39.    Upon the receipt by each of the Secured Lenders of the proceeds of the wire transfer of all amounts owed to each such Secured Lender in accordance with their respective Pay-Off Letters, any lien of the Secured Lender on any asset of the Debtor owned by the Debtor

26

after the Closing shall be terminated and of no force or effect whatsoever, except for liens of the Secured Lenders on the Secured Lenders' Escrow, which shall remain in full force and effect until released by the applicable Secured Lender(s) or otherwise paid in accordance with the terms of the respective Pay-Off Letters and the Agent Pay-Off Letter. In the event the Debtor disputes any portion of the amount claimed by a Secured Lender in the Pay-Off Letter (the "Disputed Pay-Off Amount"), an amount equal to the Disputed Pay-Off Amount shall be paid to the Escrow Agent as part of the Secured Lenders' Escrow and held by the Escrow Agent for the benefit of the Debtor and Secured Lender until the dispute is resolved by the Debtor and Secured Lender or until otherwise ordered by the Court, which shall retain jurisdiction to over such disputes. For avoidance of doubt, the Secured Lenders shall not have any Liens, Claims or Interests in the Purchased Assets after the Closing.

40. Except as otherwise provided herein, the Agent and the Lenders shall be entitled to all of the rights, remedies, protections, and benefits afforded to the Agent and the Lenders under the prior Cash Collateral Orders entered in this case.

41. The Debtor or the Buyer and any agent or representative of either of them, are each hereby authorized and empowered to serve upon all filing and recording officers a notice when filing or recording any instruments of transfer (including, without limitation, deeds, leases, and assignments, modifications and terminations of leases) in accordance with this Sale Approval Order and the Stalking Horse Agreement to evidence and implement this Sale Approval Order and the Stalking Horse Agreement. All filing and recording officers are hereby directed to accept, file and record all instruments of transfer including, without limitation, deeds, leases, and assignments, modifications and terminations of leases (if any) to be filed and

27

recorded pursuant to and in accordance with this Sale Approval Order or the Stalking Horse Agreement and the various documents related thereto.

42.     This Court retains exclusive jurisdiction to (i) enforce and implement the terms and provisions of the Stalking Horse Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (ii) compel delivery of the Purchased Assets to the Buyer, (iii) resolve any disputes arising under or related to the Stalking Horse Agreement and related agreements, except as otherwise provided therein, (iv) enjoin and adjudicate the assertion of any Lien, Claim, or Interest against the Buyer or in respect of the Purchased Assets, and (v) interpret, implement and enforce the provisions of this Sale Approval Order.

43.     As of the Closing, all agreements and all orders of this Court entered prior to the date hereof shall be deemed amended or modified solely to the extent required to permit the consummation of the transactions contemplated by this Sale Approval Order and the Stalking Horse Agreement.

44.     Nothing contained (i) in any plan of reorganization (or liquidation) confirmed in the Chapter 11 Case, (ii) the order of confirmation confirming any plan of reorganization (or liquidation), (iii) any order dismissing the Chapter 11 Case or converting it to a chapter 7 case, or (iv) any order appointing an examiner or trustee in the Chapter 11 Case shall conflict with or derogate from the provisions of the Stalking Horse Agreement or the terms of this Sale Approval Order (including the rights, benefits and protections afforded to any Secured Lender hereunder, or their respective obligations under this Sale Approval Order or their respective Pay-Off Letters), and no such plan or order shall discharge the obligations of the Debtor under this Sale Approval

28

Order or the Stalking Horse Agreement or any documents or agreements delivered in connection therewith.

45.     The terms and provisions of the Stalking Horse Agreement, together with the terms and provisions of this Sale Approval Order, shall be binding in all respects upon, and inure to the benefit of, the Buyer, the Debtor, the Debtor's estate, any of Debtor's Affiliates, successors and assigns, the Committee, the Debtor's creditors and equity holders, and other third parties, including, but not limited to persons asserting Liens, Claims, and Interests in respect of the Debtor's estate or any of the Purchased Assets or any persons that are party to any Assigned Contracts and Assigned Leases specified in this Sale Approval Order and their respective successors and assigns.  If a trustee or examiner is subsequently appointed in this Chapter 11 Case, such trustee or examiner shall likewise be bound, in all respects, to the terms and provisions of this Sale Approval Order and Stalking Horse Agreement.  Neither this Sale Approval Order nor the Stalking Horse Agreement or any ancillary documents, including without limitation, the Temporary License Agreement, shall be subject to rejection pursuant to section 365 of the Bankruptcy Code or otherwise.

46.     The Stalking Horse Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement (i) is either not material or is not less favorable to the Debtor; and (ii) to the extent that the Pay-Off Amounts owed to the Secured Lenders have not been indefeasibly paid in full as provided herein, is not material, is not less favorable to the Secured Lenders, or is otherwise approved in writing by the Secured Lenders.  In the event a modification is material and less favorable to the Debtor or the Secured Lenders (under such circumstances

29

noted above), the Debtor shall file and serve a notice of such material modification upon all creditors in this case, including the Secured Lenders. If no party-in-interest files a written objection with the Court within five (5) business days, the modification shall be deemed approved without further order of the Court, but the Court may enter any such further order necessary.

47.     The failure specifically to include any particular provisions of the Stalking Horse Agreement in this Sale Approval Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Stalking Horse Agreement be authorized and approved in its entirety.

48.     The provisions of this Sale Approval Order are non-severable and mutually dependent without written consent of the Buyer.

49.     The provisions of Bankruptcy Rule 6004(h) and 6006(d) staying the effectiveness of this Sale Approval Order are hereby waived, and this Sale Approval Order shall be effective immediately upon entry upon the docket.

50.     To the extent that this Sale Approval Order is inconsistent with any prior Order or pleading with respect to the Sale Motion in this Chapter 11 Case, the terms of this Sale Approval Order shall govern; to the extent that there is a conflict between the terms and conditions of this Sale Approval Order and the terms and conditions of the Stalking Horse Agreement, the terms and conditions of this Sale Approval Order shall govern.

30

51.     This Sale Approval Order is entered *nunc pro tunc* effective as of 12:01 a.m.,

Monday, April 5, 2010.


Date: _____          ~Ben Barry~

      April 5, 2010                           _____
                                              Ben T. Barry
                                              United States Bankruptcy Judge

DA-3099106 v6 1203482-00001/865706