**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

IN RE:

NATIONAL HOME CENTERS, INC.,                    CASE NO.  09-BK-76195

        Debtor.

---

**AMENDED DISCLOSURE STATEMENT WITH RESPECT TO OFFICIAL**
**COMMITTEE OF UNSECURED CREDITORS' PLAN OF LIQUIDATION**

**Miller, Canfield, Paddock and Stone, P.LC.**
**225 W. Washington**
**Suite 2600**
**Chicago, Illinois 60606**
**Michael Traison (IL Bar # 6285518)**
**Marc N. Swanson (MI Bar # 71149)**

**-and-**

**The Nixon Law Firm**
**2340 Green Acres Road, Suite 12**
**Fayetteville, Arkansas 72703**
**Telephone Number: 479-582-0020**
**David Nixon (ABA #88048)**

**Attorneys for the Official Committee of Unsecured Creditors**

---

**PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF CREDITORS, AND IS FAIR AND EQUITABLE, AND URGES YOU TO VOTE TO ACCEPT THE PLAN.**

---

18,555,255.3\144196-00001

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................... 1

    A.      SUMMARY OF THE PLAN................................................................ 3

           1.    *General Information* .................................................................3

           2.    *Creation of Liquidating Trust* .................................................3

           3.    *Summary of Plan Treatment* ...................................................3

    B.      ALTERNATE PLANS OF LIQUIDATION ...................................... 4

    C.      RECOMMENDATION ....................................................................... 5

ARTICLE 1 ............................................................................................................. 5

VOTING ................................................................................................................... 5

    A.      ELIGIBILITY TO VOTE ................................................................. 5

    B.      BALLOTS ............................................................................................ 6

    C.      VOTING PROCEDURE ..................................................................... 6

    D.      VOTING DEADLINE ......................................................................... 7

    E.      IMPORTANCE OF YOUR VOTE .................................................... 7

ARTICLE 2 BACKGROUND ............................................................................... 7

    A.      OVERVIEW OF THE DEBTOR'S BUSINESS AND CIRCUMSTANCES LEADING TO THIS CASE ...................................................................... 7

    B.      CAPITAL STRUCTURE OF THE DEBTOR ................................. 8

           1.    *Debt Instruments*................................................................8

           2.    *Equity* ...............................................................................8

ARTICLE 3 SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE...................... 9

    A.      RETENTION OF PROFESSIONALS BY THE DEBTOR ................... 9

    B.      FORMATION OF THE COMMITTEE AND RETENTION OF PROFESSIONALS BY THE COMMITTEE ................................................. 9

    C.      THE DEBTOR'S SCHEDULES AND THE BAR DATES ................. 10

    D.      ASSET PURCHASE AGREEMENT ................................................. 10

    E.      PLAN EXCLUSIVITY ....................................................................... 12

ARTICLE 4 CLASSIFICATION OF CLAIMS AND INTERESTS ................. 12

    A.      CLASSIFICATION ........................................................................... 12

**B.**   **UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS** ................................................................... 13

    1.   *Administrative Claims* ...................................................................... 13

        a.   **Administrative Claims Other than Professional Fee Claims** .................... 13

        b.   **Professional Fee Administrative Expense Claims** ..................................... 13

        c.   **Administrative Claims and Administrative Expense Request Deadline** ...................................................................................................... 14

    2.   *Priority Tax Claims* .......................................................................... 14

**C.**   **CLASSIFICATION OF CLAIMS AND INTERESTS: CLASSIFICATION, TREATMENT AND VOTING RIGHTS** ...................... 15

    1.   **"Class 1" –** *Priority* **Claims – Not Impaired** ................................. 15

        a.   **Classification** ............................................................................................... 15

        b.   **Treatment** ..................................................................................................... 15

        c.   **Voting** ........................................................................................................... 15

    2.   **"Class 2" –** *Secured* **Claims – Not Impaired** ................................. 15

        a.   **Classification** ............................................................................................... 15

        b.   **Treatment** ..................................................................................................... 15

        c.   **Voting** ........................................................................................................... 15

    3.   **"Class 3" – General Unsecured Claims – Impaired** ................................. 16

        a.   **Classification** ............................................................................................... 16

        b.   **Treatment** ..................................................................................................... 16

        c.   **Voting** ........................................................................................................... 16

**D.**   **"Class 4" – Interests and Interest Related Claims –Impaired** ...................... 16

    1.   **Classification** ................................................................................... 16

        a.   **Treatment** ..................................................................................................... 16

        b.   **Voting** ........................................................................................................... 16

**ARTICLE 5 IMPLEMENTATION OF THE PLAN** ................................................... **16**

**A.**   **IMPLEMENTATION OF PLAN** ......................................................... 16

**B.**   **DISSOLUTION OF NATIONAL HOME CENTERS, INC.** .......................... 17

**C.**   **CAUSES OF ACTION** ........................................................................ 17

**D.**   **FORMATION OF THE LIQUIDATING TRUST** ..................................... 17

**E.**   **APPOINTMENT AND TERM OF THE LIQUIDATING TRUSTEE** .......... 18

**F.**   **DUTIES OF THE LIQUIDATING TRUSTEE** ........................................ 19

**G.**   **NO RECOURSE TO THE LIQUIDATING TRUSTEE** ............................ 21

**H.**   **LIABILITY, INDEMNIFICATION** ...................................................... 21

**I.**   **DISSOLUTION OF THE COMMITTEE** ................................................ 22

**J.**   **TRUST OVERSIGHT COMMITTEE** ................................................... 22

**K.**   **FUNDING OF THE PLAN** .................................................................. 23

| | | |
|---|---|---|
| L. | WIND-DOWN RESERVE ................................................................ | 24 |
| M. | DISTRIBUTION FUND ................................................................... | 24 |
| N. | CORPORATE ACTION ................................................................... | 24 |
| O. | RETENTION OF ACTIONS AND DEFENSES ................................ | 24 |
| P. | SATURDAY, SUNDAY OR LEGAL HOLIDAY ............................. | 25 |
| Q. | PRESERVATION OF ALL AVOIDANCE ACTIONS AND CAUSES OF ACTION ........................................................................ | 25 |

**ARTICLE 6 TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ........................................................................ 26**

| | | |
|---|---|---|
| A. | REJECTION OF REMAINING EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................................ | 26 |
| B. | REJECTION DAMAGES BAR DATE .......................................... | 26 |
| C. | INSURANCE POLICIES ................................................................ | 26 |

**ARTICLE 7 DISTRIBUTIONS ........................................................................ 27**

| | | | |
|---|---|---|---|
| A. | DISBURSING AGENT | ................................................................ | 27 |
| | 1. | Liquidating Trustee as Disbursing Agent .......................... | 27 |
| | 2. | Alternative Disbursing Agent Qualification ...................... | 27 |
| B. | TIME AND MANNER OF DISTRIBUTIONS | ............................ | 27 |
| C. | DELIVERY OF DISTRIBUTIONS | ........................................... | 28 |
| D. | UNDELIVERABLE DISTRIBUTIONS | .................................... | 28 |
| E. | CLAIMS ADMINISTRATION RESPONSIBILITY | ................. | 28 |
| | 1. | Reservation of Rights to Object to Claims ....................... | 28 |
| | 2. | Objections to Claims ......................................................... | 29 |
| | 3. | Filing of Objections ........................................................... | 29 |
| | 4. | Determination of Claims ................................................... | 29 |
| F. | PROCEDURES FOR TREATING AND RESOLVING DISPUTED AND CONTINGENT CLAIMS ..................................... | | 30 |
| | 1. | No Distributions Pending Allowance ................................. | 30 |
| | 2. | Claims Estimation ............................................................. | 30 |
| G. | SETOFF AND RECOUPMENT | ................................................. | 30 |
| H. | ALLOWANCE AND DISALLOWANCE OF CLAIMS SUBJECT TO BANKRUPTCY CODE § 502 ....................................... | | 30 |
| I. | CANCELLATION OF INSTRUMENTS AND AGREEMENTS | ... | 30 |
| J. | NO INTERESTS ON CLAIMS | ................................................... | 31 |

K.      WITHHOLDING TAXES .................................................................. 31

**ARTICLE 8 CONDITIONS PRECEDENT** .......................................................... **31**

A.      EFFECTIVE DATE CONDITIONS ................................................ 31

B.      REVOCATION WITHDRAWAL OR NON-CONSUMMATION OF PLAN .. 32

**ARTICLE 9 FINANCIAL INFORMATION** ......................................................... **32**

A.      STATUS OF CURRENT CASH POSITION AS OF AUGUST 31, 2010 ........... 32

B.      DESCRIPTIONS OF ASSETS AND LITIGATION ......................................... 32

    1.      Remaining Assets ................................................................32

    2.      Estate Litigation ................................................................32

C.      RISKS ASSOCIATED WITH REALIZING ON LITIGATION ................. 33

**ARTICLE 10 CERTAIN FACTORS TO BE CONSIDERED REGARDING THE PLAN** ................................................................................................. **34**

A.      BANKRUPTCY CONSIDERATIONS ........................................... 34

**ARTICLE 11 POST-CONFIRMATION ISSUES** .................................................. **35**

A.      CONVERSION OR DISMISSAL ................................................. 35

B.      PAYMENT OF STATUTORY FEES ............................................ 35

C.      AUTHORITY TO EFFECTUATE PLAN ...................................... 35

D.      BINDING EFFECT OF PLAN .................................................... 35

E.      GOVERNING LAW ................................................................. 35

F.      RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT ..... 36

G.      EXCULPATION ...................................................................... 37

H.      INJUNCTIONS ........................................................................ 37

I.      CANCELLATION OF INSTRUMENTS AND AGREEMENTS ................. 38

J.      SECURITIES LAW ................................................................. 39

**ARTICLE 12 CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN** .......................................................................................... **39**

A.      FEDERAL INCOME TAX CONSEQUENCES ................................... 40

    1.      Federal Income Tax Consequences to Holders of Unsecured Claims ........40

    2.      Federal Income Tax Treatment of Interests ....................................40

    3.      Withholding and Reporting ....................................................41

**ARTICLE 13 ALTERNATIVES** ................................................................... **41**

**A.**   **ACCEPTANCE AND CONFIRMATION OF THE PLAN** ............................ 41

**B.**   **GENERAL CONFIRMATION REQUIREMENTS** ............................ 42

**C.**   **BEST INTEREST TEST** ............................ 42

**D.**   **FINANCIAL FEASIBILITY TEST** ............................ 44

**E.**   **ACCEPTANCE OF IMPAIRED CLASSES AND CRAMDOWN** ............... 44

## INTRODUCTION

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 case of National Home Centers, Inc. ("NHC" or "Debtor") submits the following *Disclosure Statement with respect to the Official Committee of Unsecured Creditors' Plan of Liquidation* (as may be amended, the "Disclosure Statement") pursuant to the provisions of Chapter 11 of the Bankruptcy Code. This Disclosure Statement is to be used in connection with the solicitation of votes on the *Official Committee of Unsecured Creditors' Plan of Liquidation* ("Plan"). Unless otherwise noted, all capitalized terms used herein shall have the meaning ascribed to them in the Plan (*see* Article I of the Plan entitled "Definitions").

This Disclosure Statement is intended to be used in connection with the solicitation of acceptances or rejections of the Plan filed with the United States Bankruptcy Court for the District of Arkansas. A copy of the Plan is attached hereto as **Exhibit A**.

THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 4:00 P.M. PREVAILING CENTRAL TIME JANUARY 12, 2010, UNLESS EXTENDED BY ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF ARKANSAS (THE "BANKRUPTCY COURT").

AFTER NOTICE AND HEARING, THE BANKRUPTCY COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION TO PERMIT THE HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR BEING SOLICITED HEREIN TO MAKE REASONABLY INFORMED DECISIONS IN EXERCISING THEIR RIGHT TO VOTE ON THE PLAN. APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT, HOWEVER, DOES NOT MEAN THAT THE BANKRUPTCY COURT RECOMMENDS ACCEPTANCE OR REJECTION OF THE PLAN.

WHILE THIS DISCLOSURE STATEMENT DESCRIBES FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND EQUITY INTERESTS CERTAIN BACKGROUND MATTERS AND THE MATERIAL TERMS OF THE PLAN, IT IS INTENDED AS A SUMMARY DOCUMENT ONLY AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ATTACHED TO THE PLAN AND THIS DISCLOSURE STATEMENT. YOU SHOULD CAREFULLY READ THE PLAN AND THE EXHIBITS TO OBTAIN A FULL UNDERSTANDING OF THEIR PROVISIONS.

THE STATEMENTS AND INFORMATION CONCERNING THE DEBTOR AND THE LIQUIDATING TRUST SET FORTH IN THIS DISCLOSURE STATEMENT CONSTITUTE THE ONLY STATEMENTS OR INFORMATION CONCERNING SUCH MATTERS THAT HAVE BEEN APPROVED BY THE BANKRUPTCY COURT FOR THE PURPOSE OF SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED

HEREIN. NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE PLAN WILL UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN SINCE THE DATE THIS DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED. THE COMMITTEE ASSUMES NO DUTY TO UPDATE OR SUPPLEMENT THE DISCLOSURES CONTAINED HEREIN AND DOES NOT INTEND TO UPDATE OR SUPPLEMENT THE DISCLOSURES, EXCEPT TO THE EXTENT, IF ANY, NECESSARY AT THE HEARING ON CONFIRMATION OF THE PLAN.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN. CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD-LOOKING AND CONTAINS ESTIMATES, ASSUMPTIONS AND PROJECTIONS THAT MAY PROVE TO BE WRONG OR MATERIALLY DIFFERENT FROM ACTUAL FUTURE RESULTS. THERE CAN BE NO ASSURANCE THAT ANY FORECASTED OR PROJECTED RESULTS CONTAINED HEREIN WILL BE REALIZED, AND ACTUAL RESULTS MAY VARY FROM THOSE SHOWN, POSSIBLY BY MATERIAL AMOUNTS.

NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION HAS APPROVED OR DISAPPROVED THIS DISCLOSURE STATEMENT. PURSUANT TO THE PLAN, ANY SECURITIES OF THE DEBTOR ISSUED TO ANY PARTY UNDER, PURSUANT TO OR IN EFFECTUATING THE PLAN, AND THE OFFERING AND ISSUANCE THEREOF BY ANY PARTY, INCLUDING, WITHOUT LIMITATION, THE DEBTOR, ARE EXEMPT FROM SECTION 5 OF THE SECURITIES ACT OF 1933, IF APPLICABLE, AND FROM ANY STATE OR FEDERAL SECURITIES LAWS REQUIRING REGISTRATION FOR THE OFFER OR SALE OF A SECURITY OR REGISTRATION OR LICENSING OF AN ISSUER OF, UNDERWRITER OF, OR BROKER OR DEALER IN, A SECURITY, AND OTHERWISE ENJOY ALL EXEMPTIONS AVAILABLE FOR DISTRIBUTIONS OF SECURITIES UNDER A PLAN IN ACCORDANCE WITH ALL APPLICABLE LAW, INCLUDING WITHOUT LIMITATION SECTION 1145 OF THE BANKRUPTCY CODE.

THE COMMITTEE RESERVES THE RIGHT TO FILE AN AMENDED DISCLOSURE STATEMENT AND PLAN. ALL CREDITORS ARE HEREBY ADVISED AND ENCOURAGED TO READ THE PLAN AND DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

A.     **SUMMARY OF THE PLAN**

1.     *General Information*

This Section provides a general summary of the structure of the Plan and of the classification and treatment of Claims and Interests under the Plan. The following summary of the Plan is qualified in its entirety by reference to the Plan, which is attached as **Exhibit A** to this Disclosure Statement, as may be amended or modified. Holders of Claims and Interests are, once again, urged to review the Plan in detail as it is the operative legal document with respect to the treatment of Claims and Interests and the rights holders of Claims and Interests. The primary objectives of the Plan proposed by the Committee in this Chapter 11 Case are (i) to wind down and complete the liquidation of all of the Assets of the Debtor in an efficient and effective manner, (ii) to investigate and pursue, if applicable, or continue to pursue, all causes of action available to the Debtor, (iii) to review, analyze and, if applicable, object to any Claims and/or Interests filed against or scheduled by the Debtor, (iv) to make Distributions to holders of Allowed Claims pursuant to the terms of the Plan, (v) to otherwise maximize the value of recoveries to all creditors of the Debtor on a fair and equitable basis, and (vi) to close this Chapter 11 Case.

2.     *Creation of Liquidating Trust*

The Plan provides for the transfer of all of the Estate's Assets into the Liquidating Trust which will be formed pursuant to the Plan for the benefit of the Estate. The Liquidating Trust will, among other things, have the responsibility for liquidating certain assets, pursuing causes of action, reconciling Claims and distributing the Assets of the Estate to the Holders of Allowed Claims in accordance with the Plan. The Liquidating Trust will be under the full control of the Liquidating Trustee as provided in the Plan, subject to the limitations set forth in the Plan and the Liquidating Trust Agreement (including, without limitation, with respect to the rights of the Trust Oversight Committee). Pursuant to the terms of the Plan and the Liquidating Trust, David Jones, Esq. shall be appointed as the Liquidating Trustee of the Liquidating Trust. It is anticipated that legal counsel for the Committee shall serve as legal counsel for the Liquidating Trust. The members of the Trust Oversight Committee shall be designated no later than three (3) days prior to the hearing to confirm the Plan. Neither the Debtor nor any of its present or former officers, directors, shareholders, employees, professionals, agents or affiliates shall have any duties or responsibilities in respect of the Liquidating Trust. The Bankruptcy Court will retain and have exclusive jurisdiction over any and all matters involving the Liquidating Trustee and/or the Liquidating Trust and the Trust Oversight Committee.

3.     *Summary of Plan Treatment*

Under the Plan, the Allowed Claims of the Debtor's Creditors will be paid as follows:

- Secured Claims. Each Holder of an Allowed Secured Claim against the Debtor will, at the option of the Liquidating Trustee, either (i) receive Cash in an amount equal to such Claim, in full and complete satisfaction of such Claim, on the later of the initial distribution date under this Plan and the date such Claim

becomes an Allowed Claim, or as soon thereafter as is practicable; or (ii) receive the collateral securing its Claim in full and complete satisfaction of such Claim on the later of the initial distribution date under this Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable. Each Holder of an Allowed Class 2 Claim shall also have a General Unsecured Claim to the extent its Allowed Class 2 Claim is not fully and completely satisfied through the receipt of cash or collateral as described in the preceding sentence.

- Administrative Expense Claims. Allowed Administrative Claims, including Professional Fee Claims, will be paid in full.

- Priority Tax Claims. Allowed Priority Tax Claims will be paid in full.

- Other Priority Claims. Allowed Priority Claims will be paid in full.

- General Unsecured Claims. After (i) payment of the Priority Claims and (ii) retention of amounts needed to pay or reserve for anticipated amounts of Post-Confirmation Expenses (including, but not limited to, any taxes imposed on the Liquidating Trust or in respect of its Assets), Allowed General Unsecured Claims will receive a Pro Rata share of all Distributable Cash.

- Interests. Holders of the Interests or Interest Related Claims shall receive no distribution or dividend based on account of such interests.

At this time, the Committee estimates the following recoveries for Holders of Claims.

| CLASS | ESTIMATED AMOUNT OF CLAIMS BY CLASS | ESTIMATED PRO RATA RECOVERY |
|---|---|---|
| Class 1: Priority Claims | $672,939 | 100% |
| Class 2: Secured Claims | $0 | N/A |
| Class 3: General Unsecured Claims | $7,500,000 | 1- 5% |
| Class 4: Interest and Interest Related Claims | $0 | $0 |

## B.    ALTERNATE PLANS OF LIQUIDATION

The Debtor has also proposed a plan of liquidation which you may have received by now or should receive shortly. Please note that these are two distinct plans. Thus, the statements made here have no bearing on the Debtor's plan. Likewise, the statements made in the Debtor's disclosure statement do not have any bearing on the Committee's plan. The plans are completely separate, and you are encouraged to review both disclosure statements and plans carefully before voting.

Creditors will be provided with ballots for both plans, since they have the right to vote on both plans.  In theory, creditors could vote against both plans.  They also could approve both, in which case, the court will choose between the competing plans and only confirm one of them. The court must consider the preferences of creditors as it chooses which plan to confirm.

### C.   RECOMMENDATION

**THE COMMITTEE BELIEVES THAT CONFIRMATION OF THE COMMITTEE'S PLAN IS PREFERABLE TO ANY OTHER ALTERNATIVE, INCLUDING THE DEBTOR'S PLAN.  THE COMMITTEE FEELS THAT ITS PLAN IS DESIGNED TO PROVIDE GREATER RECOVERIES THAN THOSE AVAILABLE IN ANY OTHER FORM OF LIQUIDATION.  ALL AVAILABLE ALTERNATIVES WOULD CAUSE SIGNIFICANT DELAY AND UNCERTAINTY, AS WELL AS ADDITIONAL ADMINISTRATIVE COSTS.**

**HAVING REVIEWED THE ALTERNATIVES, THE CREDITORS' COMMITTEE RECOMMENDS THAT YOU <u>VOTE IN FAVOR OF THE COMMITTEE'S PLAN</u> BY NO LATER THAN  4:00 P.M. (PREVAILING CENTRAL TIME), JANUARY 12 , 2010,  WHICH IS THE VOTING DEADLINE SET BY THE BANKRUPTCY COURT.  THE COMMITTEE ALSO RECOMMENDS THAT YOU <u>VOTE AGAINST THE DEBTOR'S PLAN</u> BY THE VOTING DEADLINE SET BY THE BANKRUPTCY COURT WITH RESPECT TO THE DEBTOR'S PLAN.**

**ARTICLE 1**

**<u>VOTING</u>**

### A.   ELIGIBILITY TO VOTE

The Plan divides creditors' Claims against and shareholders' Interests in the Debtor into various Classes and provides separate treatment for each Class. Except as provided below, any holder of a Claim whose claim is impaired under the Plan is entitled to vote if either (i) its Claim has been scheduled by the Debtor and such Claim is not scheduled as disputed, contingent or unliquidated, or (ii) such holder of a Claim has filed a proof of claim or interest on or before the bar date established by the Bankruptcy Court for filing such proofs of claim or interest. A holder of a disputed, contingent or unliquidated Claim, or the holder of a Claim that has been objected to, is not entitled to vote on the Plan unless such Claim has been allowed prior to the balloting deadline by the Bankruptcy Court after notice and hearing, or the Bankruptcy Court estimates such Claim for voting purposes prior to the balloting deadline. In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by a creditor was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims will not be classified for the purposes of voting or receiving distributions under the Plan. Rather, all such Claims will be treated separately as unclassified Claims and will be paid in full. Other Priority Claims will also be paid in full to the extent such Claims become Allowed Claims.

Creditors in these Classes are unimpaired, are conclusively presumed to have accepted the Plan, and are not entitled to vote on the Plan. If and to the extent that any Class identified as being unimpaired is determined to be impaired, such Class shall be entitled to vote to accept or reject the Plan.

The following Classes of Claims and Interests under the Plan are Impaired: Class 3 (General Unsecured Claims).  Holders Interests and Interest Related Claims in Class 4 are conclusively presumed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

The record date for determining any Creditor's eligibility to vote on the Plan is September 3, 2010. Only those Creditors entitled to vote on the Plan will receive a ballot with this Disclosure Statement.

**CREDITORS WHOSE CLAIMS ARE BEING OBJECTED TO ARE NOT ELIGIBLE TO VOTE UNLESS SUCH OBJECTIONS ARE RESOLVED IN THEIR FAVOR OR, AFTER NOTICE AND A HEARING PURSUANT TO BANKRUPTCY RULE 3018(a), THE BANKRUPTCY COURT ALLOWS THE CLAIM TEMPORARILY FOR THE PURPOSE OF VOTING TO ACCEPT OR REJECT THE PLAN. ANY CREDITOR THAT WANTS ITS CLAIM TO BE ALLOWED TEMPORARILY FOR THE PURPOSE OF VOTING MUST TAKE THE STEPS NECESSARY TO ARRANGE AN APPROPRIATE HEARING WITH THE BANKRUPTCY COURT UNDER BANKRUPTCY RULE 3018(a).**

**B.      BALLOTS**

In voting for or against the Plan, please use only the ballot or ballots sent to you with this Disclosure Statement. Votes cast to accept or reject the Plan will be counted by Class. Please read the voting instructions on the reverse side of the ballot for a thorough explanation of voting procedures.

**IF YOU BELIEVE THAT YOU ARE A HOLDER OF A CLAIM IN A VOTING CLASS FOR WHICH YOU DID NOT RECEIVE A BALLOT, IF YOUR BALLOT IS DAMAGED OR LOST, OR IF YOU HAVE QUESTIONS CONCERNING VOTING PROCEDURES, PLEASE CONTACT ROBIN WYSOCKI AT 313-963-6420.  ROBIN WYSOCKI CANNOT PROVIDE YOU WITH LEGAL ADVICE.**

The Committee's acceptance and counting of any vote or any ballot is not and shall not be an admission or acknowledgement of the Claim asserted therein or the appropriate treatment thereof under the Plan, and all rights in this regard are reserved for the benefit of the Liquidating Trust and the Liquidating Trustee.

**C.      VOTING PROCEDURE**

Unless otherwise directed in your solicitation package, mail your completed ballots to:

        Attn: Marc N. Swanson
        Miller, Canfield, Paddock and Stone, PLC
        150 West Jefferson, Suite 2500
        Detroit, Michigan 48226

A ballot that does not indicate an acceptance or rejection of the Plan will not be counted either as a vote to accept or a vote to reject the Plan. If you cast more than one ballot voting the same Claim before 4:00 p.m. prevailing Central Time on the Voting Deadline (as defined below), the last ballot received before the Voting Deadline will be deemed to reflect your intent and thus will supersede any prior ballots. Additionally, you may not split your Claims within a particular Class under the Plan either to accept or reject the Plan. Therefore, a ballot or a group of ballots within a Plan Class received from a single creditor that partially rejects and partially accepts the Plan will not be counted.

Unless the Bankruptcy Court permits you to do so after notice and a hearing to determine whether sufficient cause exists to permit the change, you may not change your vote after it is cast. **DO NOT RETURN ANY STOCK CERTIFICATES, DEBT INSTRUMENTS OR OTHER SECURITIES WITH YOUR BALLOT. FACSIMILE, EMAIL OR ELECTRONICALLY TRANSMITTED BALLOTS WILL NOT BE ACCEPTED.**

**PLEASE PUT YOUR TAXPAYER IDENTIFICATION NUMBER ON YOUR BALLOT; THE DISBURSING AGENT MAY NOT BE ABLE TO MAKE DISTRIBUTIONS TO YOU WITHOUT IT.**

D.      **VOTING DEADLINE**

**IN ORDER TO BE COUNTED, BALLOTS MUST BE RECEIVED BY 4:00 P.M., PREVAILING CENTRAL TIME ON JANUARY 12, 2010 (the "Voting Deadline").**

E.      **IMPORTANCE OF YOUR VOTE**

Your vote is important. The Bankruptcy Code defines acceptance by a Class of Claims as acceptance by Holders of at least two-thirds in amount and a majority in number of Allowed Claims in that Class that have voted. **ONLY THOSE CREDITORS WHO ACTUALLY VOTE ARE COUNTED FOR PURPOSES OF DETERMINING WHETHER A CLASS HAS VOTED TO ACCEPT THE PLAN. FAILURE TO VOTE WILL LEAVE TO OTHERS THE DECISION TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE 2

## BACKGROUND

A.      **OVERVIEW OF THE DEBTOR'S BUSINESS AND CIRCUMSTANCES LEADING TO THIS CASE**

The Debtor was founded in 1972 as a distributor and retailer of homebuilding materials to construction contractors, homebuilders and do-it-yourself consumers primarily in Arkansas,

Oklahoma, Kansas, and Missouri.  The Debtor's product lines included appliances, home décor, dimensional lumber, hardware, doors, a wide variety of other construction and homebuilding materials and furniture.

The Debtor's sales were conducted through building contractors, and although the Debtor maintained a solid reputation among its customer base, the nationwide decline in homebuilding activity adversely affected the Debtor's operations.  The U.S. Department of Housing and Urban Development, estimated that privately-owned building permits indicating future construction projects declined 47% from May 2008 to May 2009 and privately owned housing starts in May 2009 were 45.2% below the May 2008 levels.  These market conditions substantially impacted the Debtor's sales.  During the same period, credit markets providing the Debtor and related industry borrowers, including many of the Debtor's customers, with necessary revolving operating lines of credit significantly tightened and the Debtor's working capital was significantly restricted.

At the same time the Debtor filed for bankruptcy protection, it operated retail home centers in Springdale, Russellville, Little Rock, Bentonville, North Little Rock, Conway, Fort Smith and Clarksville, Arkansas and retail flooring centers in Springdale and Conway.  A retail home center in Herber Springs was closed in June or 2009.

### B.    CAPITAL STRUCTURE OF THE DEBTOR

   1.    *Debt Instruments*

On August 12, 2004, the Debtor and JPMorgan Chase Bank ("JPMorgan") as Administrative Agent on behalf of itself and CIT Group, entered into a secured credit agreement ("Credit Agreement") which provided the Debtor with a revolving credit facility ("Credit Facility").  The Credit Facility was secured by a first-priority security interests in substantially all of the Debtor's assets.  As of the Petition Date, the aggregate amount owed under the Credit Facility was approximately $11,959,192.67, exclusive of additional pre-petition interest, attorneys' fees, costs and expenses.

On August 26, 2008, the Debtor executed a Promissory Note ("Liberty Note") in the original principal amount of $4,500,000 payable to Liberty Bank of Arkansas ("Liberty").  The note is secured by a security interest in all of the Debtor's equipment and various motor vehicles. As of the Petition Date, the amount owed under the Liberty Note was approximately $3,059,218.49.

The Debtor was also a party to various equipment financing agreements with CIT Technology Financing Services, Inc. ("CIT") and Bank of America Leasing & Capital LLC ("BofA", and together with CIT Group, CIT, Liberty and JPMorgan, the "Secured Lenders").  As of the Petition Date, the Debtor's records reflect that CIT was owed $55,179.33, BofA was owed $450,821.91.

   2.    *Equity*

As of the Petition Date, the following entities constituted the equity security holders in the Debtor:

| Equity Security Holder | Percentage Owned |
|---|---|
| Dwain A. Newman Trust | 60.57% |
| Dwain Newman Family Irrevocable Trust No. 1 | 18.16% |
| Glenda Newman Family Irrevocable Trust No. 2 | 19.34% |
| Glenda R Newman Trust | 1.93% |

## ARTICLE 3

## SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

This Section of the Disclosure Statement discusses the significant events during the Debtor's Chapter 11 Case.

### A.      RETENTION OF PROFESSIONALS BY THE DEBTOR

The Debtor retained Wright Lindsey & Jennings LLP as its attorneys and CRG Management, L.L.C. as its financial advisors in the Chapter 11 Case.

### B.      FORMATION OF THE COMMITTEE AND RETENTION OF PROFESSIONALS BY THE COMMITTEE

The Office of the United States Trustee formed the Committee in this Chapter 11 Case on December 22, 2009. The Committee was originally comprised of the following members: (i) Boise Building Solutions Dist. Center; (ii) Bluelinx; (iii) Climatic Home Products; (iv) Universal Furniture International; and (v) Bent River Lumber Company.  On January 6, 2010, the Office of the United States Trustee named Adleta Corporation and Guardian Building Products Dist. as additional members of the Committee.

Also on January 6, 2010, the Committee filed its application to retain Miller, Canfield, Paddock and Stone, PLC ("Miller Canfield") as its counsel and on January 7, 2010, Miller Canfield filed its Affidavit pursuant to Bankruptcy Rule 2014.  On January 13, 2010, the Court entered its order authorizing the Committee to employ Miller Canfield as its counsel *nunc pro tunc* as of December 29, 2009.

Upon the Effective Date of the Plan, the Committee anticipates that David Jones, Esq. will serve as Liquidating Trustee of the Liquidating Trust.  David Jones has been retained at the following rates, which shall apply if David Jones is confirmed as the Liquidating Trustee:

| Name: | Rate Per Hour: |
|---|---|
| David Jones | $200.00 |

The Liquidation Trustee may choose to employ Miller Canfield to assist in fulfilling his duties.  Miller Canfield's rate structure is attached as Exhibit D to this disclosure statement.  It is also possible that the Liquidation Trustee could employ a different law firm.  He may also choose to hire other professionals to assist him, such as accountants and brokers.  The rates that would be charged by such professionals are not known at this time.

18,555,255.3\144196-00001

9

## C.    THE DEBTOR'S SCHEDULES AND THE BAR DATES

The Debtor has filed its Schedules with the Bankruptcy Court. On January 22, 2010, the Debtor filed an expedited motion to set a bar date for administrative claims filed pursuant to 11 U.S.C. § 503(b)(9).  After a hearing, the Court entered an order on February 12, 2010 establishing procedures for handling such claims and setting March 19, 2010 as the bar date for 11 U.S.C. § 503(b)(9) claims.   The Bar Date or last date for filing proofs of Claim (except for Bankruptcy Code § 503(b)(9) claims) was fixed as September 2, 2010, unless a different date was set for a particular Claim.

Pursuant to the Plan, objections to Claims can be made for a period of 180 days after the Effective Date, subject to enlargement of this period. This deadline may be further extended by order of the Bankruptcy Court upon the filing of a motion on notice to the Bankruptcy Rule 2002 service list.

As of August 29, 2010, the Debtor's Schedules reflected the following:

Secured Claims:      $15,437,565.84
Priority Claims:      $ 1,049,456.15
Unsecured Claims:     $ 10,499,337.42

As of the date November 11, 2010, claims have been filed against the Debtor in the aggregate amount of $ 30,817,711.83 The Committee believes that many of these claims that are duplicative of other claims filed in this Chapter 11 Case or claims listed on the Schedules. Objections to Claims may be filed both before and after the Confirmation Date. On and after the Effective Date, only the Liquidating Trust and the Liquidating Trustee shall have legal standing and the sole right to commence and pursue objections to Claims on behalf of the Estate.

Furthermore, with respect to Bankruptcy Code § 503(b)(9) claims, the Committee estimates that the total amount of allowed claims will be approximately equal to $2,531,790.68.

## D.    ASSET PURCHASE AGREEMENT

On January 19, 2010, the Debtor filed its Motion to Approve Bid and Sales Procedures and Notice of Hearing and Opportunity to Object ("Bid Procedures Motion").  Pursuant to the Bid Procedures Motion, the Debtor sought approval of bid and sales procedures for the sale of substantially all of the Debtor's assets, free and clear of all liens, claims, encumbrances, and other interests, and assumption and assignment of executory contracts and non-residential real property leases. On March 1, 2010, the Bankruptcy Court entered an order approving the Bid Procedures Motion.

On February 26, 2010, the Debtor filed the Motion for Approval of (A) Substantially All Assets of the Debtor to the Stalking Horse Buyer, Subject to Higher and Better Offers, Free and Clear of All Liens, Claims, Encumbrances, and Interests; (B) Assumption and Assignment of Certain Executory Contracts and Non-Residential Real Property Leases; (C) Cure Amounts and Procedures with Respect to Same; and (D) Granting Related Relief; and Notice of Bid Deadline;

Auction Date and Hearing ("Sale Motion") which sought approval of the Asset Purchase Agreement ("APA") the Debtor entered into with Stock Building Supply Holdings, LLC ("Purchaser").

On April 5, 2010, the Bankruptcy Court entered an order approving the Sale Motion ("Sale Order"). Pursuant to the Sale Order, any lien of the Secured Lenders on any asset of the Debtor owned by the Debtor after the closing of the APA was terminated and of no force and effect whatsoever, with certain limited exceptions not applicable here. As a result of the sale, the claims of all of the Secured Lenders were paid in full.

Pursuant to the Sale Order, the Debtor retained all of its right, title and interest in and to, each and all of the following assets:

- cash, cash equivalents, certificates of deposit, and other investments in marketable securities of third-party issues;

- Debtor's interest in the insurance policies of the Debtor and proceeds thereof and rights thereunder related to Excluded Assets (as defined in the APA) or covering Excluding Liabilities (as defined in the APA);

- all right, title, and interest in and to Key Man life insurance policies and the cash surrender thereof;

- all accounts and notes receivable of the Debtor for its Affiliates exclusive of the Newman insurance receivable and the related guaranty from Dwain Newman;

- Real Property located at 1003 Interstate Drive, Clarksville, AR 1 and 304 West Main Street, Clarksville, AR and adjoining lot

- all Books and Records related to Excluded Assets

- Debtor's claims, rights and causes of actions arising under or maintainable pursuant to Bankruptcy Code sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b) or 553.

- All of the Debtor's rights, claims or causes of action against third parties related to Excluded Assets (as defined in the APA);

- all ERISA Plans (as defined in the APA) and assets maintained pursuant to or in connection therewith;

- Tax refunds related to any taxable period (or portion thereof) ending on or prior to the Closing Date (as defined in the APA);

- Excluded Contracts and Leases (as defined in the APA); and

- Other assts including cash surrender value of life insurance policies; any refunds or returns of prepayments due under various insurance and employee benefit

plans; post-petition utility deposits; professional fee retains; 1994 Toyota Supra; 2006 SunTracker Pontoon Boat; Crystal Valley Properties, Inc.

Furthermore, pursuant to Section 6.7 of the APA, the Purchaser was to place into an escrow account $2,500,000 less 10% of the Current Assets (as defined in the APA) set forth on the Closing Balance Sheet (as defined in the APA) in excess of $23,500,000 ("Purchase Price Escrow Account"). Pursuant to Section 6.7 of the APA, the Purchase Price Escrow Account is to be held in escrow pending the Final Adjustment (as defined in the APA).

In accordance with Section 6.7 of the APA, the Purchaser placed into the Purchase Price Escrow Acount the amount of $2,423,092. However, these funds have not been released to the Debtor because on April 23, 2010, the Purchaser, pursuant to Section 3.2(ii) of the APA, provided the Debtor with its Notice of Disagreement with respect to the amount of Current Assets on the Closing Balance Sheet.

Section 3.2(iii) of the APA provides that the Debtor and the Purchaser are to hire an independent account to resolve the Notice of Disagreement within twenty days following the delivery of the Notice of Disagreement. The Debtor and the Purchaser have engaged in limited negotiations regarding the Notice of Disagreement but have not yet hired an independent accountant to resolve the dispute.

The Committee has however engaged in significant discussions with the Purchaser and believes that an extremely favorable settlement will occur in the near future which will avoid the costs of hiring and retaining an independent accountant and other related professionals.

### E.   PLAN EXCLUSIVITY

Pursuant to Bankruptcy Code § 1121, the Debtor is afforded periods of 120 and 180 days from the Petition Date during which they have the exclusive rights, respectively, to file and to solicit acceptances of a plan or plans of reorganization. On April 6, 2010, the Bankruptcy Court entered an order extending the 120-day period set forth in Bankruptcy Code § 1121(b) to July 6, 2010 and the 180-day period set forth in Bankruptcy Code § 1121(c)(3) to September 4, 2010. The Debtor has not yet filed a plan and its exclusivity period has lapsed.

ARTICLE 4

CLASSIFICATION OF CLAIMS AND INTERESTS

### A.   CLASSIFICATION

The classification of Claims (except for Administrative Claims and Priority Tax Claims) and Interests listed below is for all purposes, including, without limitation, voting, confirmation and distributions under the Plan and under Bankruptcy Code §§ 1122 and 1123(a)(1). Consistent with section 1122 of the Bankruptcy Code, a Claim or Interest shall be deemed classified by the Plan in a particular Class only to the extent such Claim or Interest satisfies the definition of such Class and shall be deemed classified in a different Class to the extent any remainder or other portion of such Claim or Interest satisfies the definition of such different Class. A Claim is in a particular Class only to the extent such Claim is an Allowed

Claim in such Class and has not been paid or otherwise settled before the Effective Date. The classification of Claims and Interests pursuant to the Plan is as follows:

| CLASS | STATUS | VOTING RIGHTS |
|---|---|---|
| Class 1: Priority Claims | Not Impaired | Not Entitled to Vote |
| Class 2: Secured Claims | Not Impaired | Not Entitled to Vote |
| Class 3: General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4: Interests and Interest Related Claims | Impaired | Not Entitled to Vote |

## B. UNCLASSIFIED CLAIMS: ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

As provided in Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims shall not be classified for the purposes of voting or receiving distributions under the Plan. Rather, all such Claims shall be unclassified and treated separately on the terms set forth in Article 2 of the Plan. The Debtor's current estimate of the aggregate amount of the Administrative and Priority Tax Claims is approximately $3,222,939 excluding Professional Fee Claims and administrative expenses incurred in the ordinary course.

### 1. *Administrative Claims*

#### a. Administrative Claims Other than Professional Fee Claims

The Liquidating Trustee shall pay each Holder of an Allowed Administrative Expense Claim (excluding Professional Fee Claims) the full amount of such Allowed Administrative Expense Claims, without interest, in Cash, as soon as practicable after the Effective Date or within thirty (30) days after such Administrative Expense Claim becomes an Allowed Administrative Expense Claim. Notwithstanding anything herein to the contrary, a Holder of an Allowed Administrative Expense Claim may be paid on such other dates or dates and upon such other terms as may be agreed upon by such Holder and the Liquidating Trustee. Without limiting the foregoing, all outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930 that have not been paid as of the Effective Date shall be paid by the Liquidating Trustee or when due in the ordinary course.

#### b. Professional Fee Administrative Expense Claims

The Liquidating Trustee shall pay Professionals who are entitled to reimbursement or allowance of fees and expenses from the Debtor's Estate pursuant to Bankruptcy Code §§ 503(b)(2) - (b)(6), in Cash, in the amount awarded to such Professionals by Final Order of the Bankruptcy Court, as soon as practicable after the later of the Effective Date and the date upon which any order awarding fees and expenses becomes a Final Order, in accordance with the terms of any order entered by the Bankruptcy Court governing the payment of fees and expenses during the course of the Chapter 11 Cases, and after application of any retainer received by the Professionals.

Any final application for allowance of a Professional Fee Claim for services rendered and costs incurred through the Effective Date must be filed with the Bankruptcy Court and served on counsel for the Liquidating Trust and the Liquidating Trustee at the addresses listed in Article 9.M. Plan and on the Office of the United States Trustee so that it is received no later than forty-five (45) days after the Effective Date, or such Professional Fee Claim shall be forever barred and shall not be enforceable against the Debtor, its Estate, the Liquidating Trust, the Liquidating Trustee and their successors, their assigns or their Assets.

The estimated unpaid Professional Fee Claims forecasted through October 30, 2010 is $70,000.

      **c.**      **Administrative Claims and Administrative Expense Request Deadline**

Each Holder of an Administrative Claim must file an Administrative Expense Request requesting payment of such Administrative Claim with the Bankruptcy Court by the Administrative Expense Request Deadline; <u>provided, however,</u> that any such Administrative Expense Request need not be filed with a hearing date. Nothing in the Plan extends the 503(b)(9) Bar Date established in the 503(b)(9) Bar Date Order or a Bar Date established by the Bar Date Order.  The Liquidating Trustee shall pay each Holder of an Allowed Administrative Claim against the Debtor the full amount of such Allowed Administrative Claim, without interest, in Cash (a) as soon as practicable after the Effective Date, but no later than 20 days after the Effective Date, or (b) within thirty (30) days after such Administrative Claim becomes an Allowed Claim. Notwithstanding anything in the Plan to the contrary, a Holder of an Allowed Administrative Claim against the Debtor may be paid on such other date or dates and upon such other terms as may be agreed upon by such Holder and the Liquidating Trustee, subject to the consent of the Trust Oversight Committee.

      2.      *Priority Tax Claims*

The Liquidating Trustee shall pay, at the Liquidating Trustee's discretion, each Holder of an Allowed Priority Tax Claims either in full in Cash at the later of (a) as soon as practicable on or after the Effective Date or (b) within thirty (30) days after such Priority Tax Claim becomes an Allowed Claim. All Allowed Priority Tax Claims against the Debtor which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof. The Liquidating Trustee can prepay any Allowed Priority Tax Claim at any time after the Effective Date without any penalty or charge.

Holders of Allowed Priority Tax Claims will not be entitled to receive any payment on account of any penalty arising with respect to, or in connection with such Claims. Any Claim for any such penalty, or demand for any such penalty, will be deemed disallowed by confirmation of the Plan.

### C.     CLASSIFICATION OF CLAIMS AND INTERESTS: CLASSIFICATION, TREATMENT AND VOTING RIGHTS

1.     **"Class 1" –** *Priority* **Claims – Not Impaired**

a.     **Classification**

Class 1 consists of Allowed Priority Claims other than Priority Tax Claims.

b.     **Treatment**

The Liquidating Trustee shall pay each Holder of an Allowed Class 1 Claim, in relative order of priority pursuant to Bankruptcy Code § 507, in full, in Cash, without interest on  (i) the Effective Date or as soon as practicable thereafter or (ii) the date on which such Claim becomes an Allowed Claim.  The Committee's current estimate of the aggregate amount of Class 1 Claims, excluding Administrative and Priority Tax Claims, is approximately **$ 672,939.**

c.     **Voting**

Class 1 is not Impaired. Holders of Claims in Class 1 are conclusively deemed to have accepted this Plan pursuant to Bankruptcy Code § 1126(f). Therefore, Holders of Claims in Class 1 are not entitled to vote to accept or reject this Plan.

2.     **"Class 2" –** *Secured* **Claims – Not Impaired**

a.     **Classification**

Class 2 consists of all Secured Claims.

b.     **Treatment**

Each Holder of an Allowed Class 2 Claim shall, at the option of the Liquidating Trustee, subject to the consent of the Trust Oversight Committee, (i) receive Cash in an amount equal to such Claim, in full and complete satisfaction of such Claim, on the later of the initial distribution date under the Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable; or (ii) receive the collateral securing its Claim in full and complete satisfaction of such Claim on the later of the initial distribution date under the Plan and the date such Claim becomes an Allowed Claim, or as soon thereafter as is practicable. Each Holder of an Allowed Class 2 Claim shall also have a General Unsecured Claim to the extent its Allowed Class 2 Claim is not fully and completely satisfied through the receipt of cash or collateral as described in the preceding sentence. The Committee's current estimate of the aggregate amount of Class 2 Claims is approximately **$0.**

c.     **Voting**

Class 2 is not Impaired. Holders of Allowed Class 2 Claims are conclusively deemed to have accepted the Plan pursuant to Bankruptcy Code § 1126(f). Therefore, Holders of Claims in

Class 2 are not entitled to vote to accept or reject the Plan, except to the extent such Holders have a General Unsecured Claim and may vote with respect to Class 3.

      3.    **"Class 3" – General Unsecured Claims – Impaired**

      a.    **Classification**

Class 3 consists of all General Unsecured Claims.

      b.    **Treatment**

The Liquidating Trustee shall distribute to each Holder of an Allowed Class 3 Claim a Pro Rata share of Distributable Cash. The Committee's current estimate of the aggregate amount of Class 3 Claims is between **$7,500,000**

      c.    **Voting**

Class 3 is Impaired. Therefore, Holders of Allowed Class 3 Claims are entitled to vote to accept or reject the Plan.

    **D.**    **"Class 4" – Interests and Interest Related Claims –Impaired**

      1.    **Classification**

Class 4 consists of all Interests and Interest Related Claims.

      a.    **Treatment**

Holders of Interests and Interest Related Claims in Class 4 shall receive no distribution or dividend on account of such Interests. On the Effective Date, all Interests and Interest Related Claims in Class 4 shall be deemed canceled, null and void, and of no force and effect.

      b.    **Voting**

Class 4 is Impaired and will receive no distribution under the Plan. Holders of Interests and Interest Related Claims in Class 4 are conclusively deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g). Therefore, Holders of Interests and Interest Related Claims in Class 4 are not entitled to vote to accept or reject the Plan.

## ARTICLE 5

## IMPLEMENTATION OF THE PLAN

**A.**    **IMPLEMENTATION OF PLAN**

The Committee proposes to implement and consummate the Plan on and after the Effective Date.

### B.      DISSOLUTION OF NATIONAL HOME CENTERS, INC.

On the Effective Date, the Liquidating Trustee shall, in accordance with all applicable law, be issued one share of common stock of National Home Centers, Inc. and thereafter be the sole shareholder, officer and director of National Home Centers, Inc., replacing the existing shareholders, officers and directors of National Home Centers, Inc., and all other shares of any class of stock of the Debtor shall be deemed canceled as of the Effective Date. Within the respective times the Liquidating Trustee may determine, taking into account the pursuit of Causes of Action in the name of the Estate, National Home Centers, Inc. shall be dissolved without any further action by the former shareholders, officers or directors of the Debtor. The Liquidating Trustee may, in his or her discretion, file all necessary certificates of dissolution and take any other actions necessary or appropriate to reflect the dissolutions of the Debtor under Arkansas state law. All applicable regulatory or governmental agencies shall accept any certificates of dissolution or other papers filed by the Liquidating Trustee on behalf of the Debtor and shall take all steps necessary to allow and reflect the prompt dissolution of the Debtor as provided herein, without the payment of any fee, tax, or charge and without need for the filing of reports or certificates, except as the Liquidating Trustee may determine in his or her sole discretion.

### C.      CAUSES OF ACTION

On the Effective Date, all Causes of Action shall be transferred into the Liquidating Trust. All Causes of Action shall be investigated and may be prosecuted, settled in accordance with the Plan or abandoned by the Liquidating Trustee. No Distribution may be made to the Holder of any Claim or Bankruptcy Code § 503(b)(9) claim, including by way of setoff or recoupment by such claimant, if the Debtor, the Committee or the Liquidating Trustee has taken action to recover, or given notice to the applicable party of intent to take such action, on a Cause of Action against the holder of such Claim (or the direct or indirect transferor to, or transferee of, such holder), until such Cause of Action is resolved by Final Order or otherwise in accordance with this section. The Liquidating Trustee will substitute as the party in interest in place of the Debtors or Committee in all Causes of Action pending on the Effective Date.

### D.      FORMATION OF THE LIQUIDATING TRUST

The Liquidating Trust shall be established as an Arkansas common law trust for the sole purpose of liquidating the Estate and making distributions to Holders of Allowed Claims, in accordance with this Plan and Treas. Reg. § 301.7701-4(d). It will not engage in the conduct of a trade or business. Subject to definitive guidance from the IRS, all parties shall treat the Liquidating Trust as a liquidating trust for all federal income tax purposes.

The Liquidating Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances, including, but not limited to, any and all provisions necessary to govern the rights, powers, obligations and appointment and removal of the Liquidating Trustee and to ensure the treatment of the Liquidating Trust as a liquidating trust for federal income tax purposes, all consistent with the Plan.

As set forth herein and in the Plan, the liquidation and winding up of the Liquidating Trust and the Debtor shall become the responsibility of the Liquidating Trustee who shall thereafter have responsibility for the management, control and operation thereof, and who may use, acquire and dispose of property free of any limitations that may otherwise apply under the Bankruptcy Code or the Bankruptcy Rules, subject only to any oversight or approvals of the Trust Oversight Committee required pursuant to the Plan. The Liquidating Trustee shall act as liquidating agent of and for the Liquidating Trust and the Estate from and after the Effective Date.

The Liquidating Trustee, at the direction of the Trust Oversight Committee, shall be permitted to make any investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise. The Liquidating Trustee shall expend the Cash of the Liquidating Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Liquidating Trust during liquidation, (b) to pay Post-Confirmation Expenses (including, but not limited to, any United States Trustee fees, Liquidating Trustee fees, professional fees and taxes imposed on the Liquidating Trust), and (c) to satisfy other respective liabilities incurred by the Liquidating Trust in accordance with the Plan or the Liquidating Trust Agreement.

For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee and Holders of Allowed Claims) shall treat the transfer of Assets and liabilities to the Liquidating Trust, in accordance with the terms of the Plan, as a transfer to Holders of Allowed Claims followed by a transfer by such Holders to the Liquidating Trust, and the beneficiaries of the Liquidating Trust shall be treated as the grantors and owners thereof. The beneficiaries of the Liquidating Trust shall be the Creditors of the Estate.

The Liquidating Trust shall terminate no later than the fifth (5th) anniversary of the Effective Date; provided, however, that within a period of three (3) months prior to such termination date, the Trust Oversight Committee may extend the term of the Liquidating Trust if necessary to facilitate or complete the liquidation of the trust's assets. Multiple extensions can be granted within three (3) months prior to the expiration of each extended term; provided, however, that the aggregate of all such extensions shall not exceed three (3) years, unless the Liquidating Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

### E.   APPOINTMENT AND TERM OF THE LIQUIDATING TRUSTEE

The Committee shall appoint and designate the initial Liquidating Trustee, which is anticipated to be David Jones, Esq. The initial Liquidating Trustee, and each successor Liquidating Trustee, shall serve until the earlier of (i) the later to occur of (a) the entry of the Final Decree, (b) the dissolution of the Liquidating Trust, and (c) the payment of the final distributions to Holders of Allowed General Unsecured Claims, or (ii) such Liquidating Trustee's resignation, death, incapacity, removal or termination by the Trust Oversight Committee pursuant to the Liquidating Trust Agreement or order of the Bankruptcy Court.

Upon creation of the Liquidating Trust, the Liquidating Trustee shall be the trustee of the Liquidating Trust for all purposes and in all respects, with all necessary and appropriate power and authority to act for, on behalf of and in the name of the Liquidating Trust.

### F.    DUTIES OF THE LIQUIDATING TRUSTEE

In addition to the duties set forth elsewhere herein or in the Plan and his or her duties as the trustee of the Liquidating Trust, the Liquidating Trustee, in consultation with the Trust Oversight Committee, shall have the following duties:

1.    to sell, liquidate and/or recover any and all Assets of the Estate and of the Liquidating Trust;

2.    to manage, control and operate the Liquidating Trust;

3.    to investigate and, if necessary and appropriate, to prosecute, enforce (or to not prosecute or enforce), or compromise, release, or settle, any Causes of Action on behalf of the Estate and the Liquidating Trust;

4.    to invest the Cash and other Assets of the Liquidating Trust and the Estate;

5.    to create the Wind-down Reserve and allocate funds to such reserve;

6.    to file any and all reports, pleadings and other documents;

7.    to make any and all distributions required or permitted to be made under the Trust Agreement and the Plan;

8.    to pay out of the Liquidating Trust any and all claims, liabilities, losses, damages, costs and expenses incurred in connection therewith or as a result thereof, including all Post-Confirmation Expenses accruing from and after the Effective Date;

9.    to employ, supervise and compensate any employees of the Liquidating Trust;

10.    to make and file tax returns for any of the Debtor and the Liquidating Trust;

11.    to commence and pursue dissolution or winding up proceedings for the Liquidating Trust;

12.    to request the entry of a Final Decree(s);

13.    to take any and all actions, including any action set forth in Article 4.B. of the Plan, necessary to dissolve and cancel the existence of each of the Debtor in the State of Arkansas, and in any other jurisdiction in which a Debtor is qualified to do business; and

14.     to take any and all other actions necessary or appropriate to implement the Plan and the liquidation and winding up of the Debtor, the Estate and the Liquidating Trust in accordance with applicable law.

In connection with the execution of his or her duties under the Plan, the Liquidating Trustee, in consultation with the Trust Oversight Committee, shall be authorized to:

1.     execute such documents and take such other actions as are necessary to effectuate the Plan and perform his duties as liquidating agent of and for the Estate and the Liquidating Trust, including to execute such documents and take such other action on behalf of the Liquidating Trust or the Debtor;

2.     open, close and manage bank accounts, and enter into business transactions within or without the ordinary course of business;

3.     authorize and benefit from any insurance policies and rights of indemnification;

4.     retain and pay Professional Fee Claims for fees of professionals (including any of the Debtor's or the Committee's professionals) or other Persons to assist the Liquidating Trustee in the liquidation of the Trust Assets and to designate another Person to be the Disbursing Agent;

5.     incur any reasonable and necessary expenses in the performance of his duties as liquidating agent of and for the Estate and the Liquidating Trust;

6.     settle, compromise or otherwise resolve any Claim or Cause of Action; and

7.     employ such other procedures, not inconsistent with the Plan, necessary for the Trustee to perform his duties hereunder.

In the event that the Trust Oversight Committee withholds its approval on a matter for which its authorization or approval is required, the Liquidating Trustee may request an order from the Bankruptcy Court allowing it to proceed with the disputed action. The Liquidating Trustee shall be deemed the Estate's representative in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under sections 704 and 1106 of the Bankruptcy Code (including, without limitation, commencing, prosecuting or settling Causes of Action and asserting claims, defenses, offsets and privileges), to the extent not inconsistent with the Plan or the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes. In discharging the foregoing responsibilities, the Liquidating Trustee shall be entitled to exercise and rely upon his or her business judgment. The Liquidating Trustee shall not be obligated to take any action or to pursue any Causes of Action unless justified in his or her reasonable determination by fact and law, nor shall the Liquidating Trustee be obligated to take any action that could reasonably cause him or her personal liability. Without limiting the

generality of the foregoing, the Liquidating Trustee may consider the interests of Holders of Allowed Claims in receiving prompt distributions and such other factors as may be reasonable in the exercise of his or her business judgment and after consultation with the Trust Oversight Committee. Such authorization and benefits shall also extend to any, each and every successor Liquidating Trustee, without reservation or limitation.

The reasonable and necessary fees and actual and necessary expenses of the Liquidating Trust and the Liquidating Trustee and the professionals or other Persons retained by the Liquidating Trustee and the Trust Oversight Committee on behalf of the Liquidating Trust shall be paid by the Liquidating Trustee from the Wind-down Reserve.

### G.    NO RECOURSE TO THE LIQUIDATING TRUSTEE

Notwithstanding that the allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is allowed in an amount for which there is insufficient Cash in the relevant fund or reserve to provide a recovery equal to that received by other holders of Allowed Claims in the relevant Class, no Claim holder shall have recourse to the Protected Parties, or their successors or assigns, or the holder of any other Claim, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code. THUS, THE BANKRUPTCY COURT'S ENTRY OF AN ESTIMATION ORDER MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

### H.    LIABILITY, INDEMNIFICATION

No Protected Party shall be liable for the act or omission of any other Protected Party. The Liquidating Trustee or any member of the Trust Oversight Committee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as Liquidating Trustee or as a member of the Trust Oversight Committee, as the case may be, other than acts or omissions resulting from the Liquidating Trustee's or Trust Oversight Committee member's willful misconduct, gross negligence or fraud. The Liquidating Trustee and the Trust Oversight Committee may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with their respective attorneys, accountants, financial advisors and agents, and the Liquidating Trustee and the Trust Oversight Committee shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such Persons other than acts or omissions resulting from the willful misconduct, gross negligence or fraud of the Liquidating Trustee or the Trust Oversight Committee, as the case may be. Notwithstanding such authority, the Liquidating Trustee and the Trust Oversight Committee shall not be under any obligation to consult with their respective attorneys, accountants, financial advisors or agents, and any determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the Trust Oversight Committee, as the case may be, and their respective designees, unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust and the Estate shall indemnify and hold harmless the Liquidating Trustee, the Trust Oversight Committee and their respective designees and professionals, and all duly

designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including, but not limited to, attorneys' fees and costs) arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of the duties of the Liquidating Trustee or the Trust Oversight Committee, as the case may be, or the implementation or administration of the Plan; provided, however, that no such indemnification will be available to such Persons for such actions or omissions if a court of competent jurisdiction has determined by final order that the challenged conduct occurred as a result of willful misconduct, gross negligence or fraud.

## I.    DISSOLUTION OF THE COMMITTEE

Upon the Effective Date, the Committee shall dissolve automatically, whereupon its members, Professionals and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to: (i) obligations arising under confidentiality agreements, joint interest agreements and protective orders entered during the Chapter 11 Case, which shall remain in full force and effect according to their terms; (ii) applications for Professional Fee Claims; (iii) requests for compensation and reimbursement of expenses pursuant to Bankruptcy Code § 503(b) for making a substantial contribution in any of the Chapter 11 Cases; and (iv) any pending motions, or any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order. The Professionals retained by the Committee and the respective members thereof shall not be entitled to compensation and reimbursement of expenses for services rendered to the Committee after the Effective Date, except for services rendered in connection with applications for allowance of compensation and reimbursement of expenses pending on the Effective Date or filed after the Effective Date.

## J.    TRUST OVERSIGHT COMMITTEE

On the Effective Date, the Committee shall dissolve and cease to exist.  Prior to its dissolution, and no later than three days prior to the date of hearing to confirm the Plan, the Committee shall elect three of its members to be members of the Trust Oversight Committee. The Trust Oversight Committee shall maximize distributions to Holders of Allowed Claims and in so doing shall have the duties set forth herein.  On the Effective Date, the Trust Oversight Committee shall succeed in all respects to all of the rights, privileges and immunities of the Committee, including, without limitation, the attorney-client privileges and any other evidentiary privileges of the Committee.

The Trust Oversight Committee shall have the duty to take actions in accordance with the provisions of the Plan and shall have the following rights and duties:

1.    to approve any release or indemnity in favor of any third party granted or agreed to by the Liquidating Trustee;

2.    when required to authorize the Liquidating Trustee to commence any Cause of Action or Avoidance Action;

3.    when required to approve the settlement of any Cause of Action;

4.      to approve the allowance of any Disputed Claim;

5.      when required to approve the sale of any Assets by the Liquidating Trustee;

6.      to review all financial information relating to the Liquidating Trust and the Estate, which shall be promptly provided by the Liquidating Trustee upon request by the Trust Oversight Committee;

7.      to review and assert objections to motions filed or claims asserted;

8.      to monitor distributions to creditors; and

9.      to take such other actions as it deems necessary and appropriate with respect to the implementation of the Plan.

The duties and powers of the Trust Oversight Committee shall terminate upon the later to occur of (i) the entry of the Final Decree, (ii) the dissolution of the Liquidating Trust, and (iii) the payment of the final distributions to Holders of Allowed General Unsecured Claims pursuant to the Plan.

The Trust Oversight Committee shall have the right to retain counsel of its choice, and the reasonable and necessary fees and expenses of such counsel as well as the reasonable and necessary expenses of the members of the Trust Oversight Committee shall be paid by the Liquidating Trustee from the Wind-down Reserve.

## K.      FUNDING OF THE PLAN

The funding of the Plan, including the Cash Distributions to be made pursuant to the Plan will be derived from (i) Cash held by the Debtor on the Effective Date; (ii) any funds received by the Debtor; (iii) proceeds received by the Debtor from the liquidation of its Assets as of the Effective Date and other funds then available; (iv) any payments received by the Debtor after the Effective Date with respect to the liquidation of Assets, enforcement of Causes of Action or any other event that occurred prior to the Effective Date; and (v) all funds received by the Liquidating Trustee after the Effective Date.

The Liquidating Trustee, with the consent of the Trust Oversight Committee, shall estimate appropriate reserves of Cash to be set aside in order to pay or reserve for accrued expenses and for the payment of prospective expenses and liabilities of the Estate and the Liquidating Trust after the Effective Date. Without limitation, these reserves shall include funds for the Wind-down Reserve, Administrative Expense Claims, Priority Tax Claims, Priority Claims, Secured Claims and Disputed Claims.

Notwithstanding any contrary provision contained herein, the Liquidating Trustee shall not be obligated to physically segregate and maintain separate accounts for reserves or for the Distribution Fund. Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidating Trustee to determine Distributable Cash, reserves and amounts to be paid to parties in interest.

### L.       WIND-DOWN RESERVE

On the Effective Date, or as soon thereafter as reasonably practicable, the Liquidating Trustee shall create a Wind-down Reserve and shall transfer funds into such reserve from the assets transferred by the Debtor to the Liquidating Trust or received by the Liquidating Trustee after the Effective Date. The Liquidating Trustee shall pay Plan administration costs and costs of holding and liquidating any non-Cash property, including but not limited to taxes and professional fees from the Wind-down Reserve. The funds in the Wind-down Reserve shall be spent in accordance with the Wind-down Reserve Budget; provided, however, that the Wind-down Reserve Budget may be amended from time to time by the Liquidating Trustee in consultation with the Trust Oversight Committee.  The Liquidating Trustee is bound only to the total amount of the Wind-down Reserve Budget and not to the amounts budgeted for each line item. After all costs associated with the Wind-down Reserve have been paid, and/or upon the reasonable determination of the Liquidating Trustee, in consultation with the Trust Oversight Committee, that the funds in the Wind-down Reserve exceed the amounts necessary to pay the expenses for which such fund is established, the remaining or excess funds, as applicable, in the Wind-down Reserve shall be designated Distributable Cash.

### M.       DISTRIBUTION FUND

After all payments have been made or properly reserved for holders of Administrative Expense Claims, Priority Tax Claims, Priority Claims, and Secured Claims, and all costs associated with the Wind-down Reserve have been paid, and/or upon the reasonable determination of the Liquidating Trustee that the funds in the Wind-down Reserve and any other reserves established by the Liquidating Trustee exceed the amounts necessary for such reserves, the remaining Distributable Cash shall be allocated to the Distribution Fund. Distribution of Cash, if any, to Holders of Class 3 General Unsecured Claims (to the extent that such claims are determined to be Allowed General Unsecured Claims) shall be made solely from the Distribution Fund.

### N.       CORPORATE ACTION

On the Effective Date, the matters under the Plan involving or requiring corporate action of the Debtor, including, but not limited to, actions requiring a vote or other approval of the officers, board of directors or shareholders, as applicable, and execution of all documentation incident to the Plan, notwithstanding any otherwise applicable non-bankruptcy law or the Organization Documents of the Debtor, shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers, directors, or shareholders, as applicable, of the Debtor.

### O.       RETENTION OF ACTIONS AND DEFENSES

All claims, rights, defenses, offsets, recoupments, causes of action, actions in equity or otherwise, whether arising under the Bankruptcy Code or federal, state or common law, which constitute property of the Estate within the meaning of section 541 of the Bankruptcy

Code, as well as all claims, rights, defenses, offsets, recoupments and causes of action arising under chapter 5 of the Bankruptcy Code (including, without limitation, the Causes of Action) with respect to the Debtor or its Estate, shall be and hereby are preserved for the benefit of the beneficiaries of the Liquidating Trust, and shall be and hereby are deemed to be part of the assets transferred and assigned to the Liquidating Trust as of the Effective Date. Prosecution and settlement of such claims, rights, defenses, and causes of action shall be the responsibility of the Liquidating Trustee, with the consent of the Trust Oversight Committee, pursuant to the provisions of the Liquidating Trust Agreement, and the Liquidating Trustee shall pursue those claims, rights, defenses and causes of action, as appropriate, in accordance with the Trust Oversight Committee's sole judgment of what is in the best interests, and for the benefit of, the beneficiaries of the Liquidating Trust; provided, however, that nothing in this Plan is intended to or does confer upon the Liquidating Trustee standing to pursue claims or causes of action that do not constitute property of the Estate.

Nothing in this Plan or the Confirmation Order shall limit, impair or otherwise restrict the rights of the Liquidating Trustee to bring any claim or cause of action against any Person (not otherwise released pursuant to this Plan) for any reason whatsoever, including, without limitation, the failure of this Plan to identify and/or describe such potential claim(s) or causes of action(s) with specificity. In addition to the general reservation of rights, the Liquidating Trustee or the Trust Oversight Committee reserve the right to modify the Plan at any time prior to or after substantial consummation of the Plan to include such specificity, if necessary, or otherwise desirable, pursuant to section 1127(b) of the Bankruptcy Code.

## P.    SATURDAY, SUNDAY OR LEGAL HOLIDAY

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

## Q.    PRESERVATION OF ALL AVOIDANCE ACTIONS AND CAUSES OF ACTION

From and after the Effective Date, the Liquidating Trust and the Liquidating Trustee, subject to any approval of the Trust Oversight Committee as may be required pursuant to the Plan, may litigate or settle any avoidance, recovery or subordination actions under Bankruptcy Code §§ 502, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 or 724 or any other Causes of Action or rights to payments or claims that belong to the Debtor that may be pending on the Effective Date or instituted by the Liquidating Trustee after the Effective Date. Pursuant to Bankruptcy Code § 1123(b)(3)(B), no other Person may pursue any such Causes of Action.

# ARTICLE 6

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    REJECTION OF REMAINING EXECUTORY CONTRACTS AND UNEXPIRED LEASES

On the Confirmation Date, except for (i) any Executory Contract that was previously assumed or rejected by an order of the Bankruptcy Court pursuant to Bankruptcy Code § 365 or otherwise assigned and (ii) any Executory Contract that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Bankruptcy Code §§ 365 and 1123, effective as of the Confirmation Date. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejection pursuant to Bankruptcy Code §§ 365 and 1123 as of the Confirmation Date.

All Compensation and Benefits Programs shall be treated as executory contracts under the Plan and deemed rejected and terminated on the Effective Date pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except for:

(a)    Compensation and Benefits Programs assigned to and assumed by any asset purchaser on or before the Effective Date; and

(b)    Compensation and Benefits Programs that have previously been rejected.

Any assumption of Compensation and Benefits Programs pursuant to this shall be deemed effected without regard to the occurrence of the assumption, Effective Date or consummation of any transaction contemplated hereby or during the Chapter 11 Case, without triggering any applicable change of control, immediate vesting, termination, or similar provisions therein.

### B.    REJECTION DAMAGES BAR DATE

Except to the extent another Bar Date applies pursuant to an order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts under the Plan must be filed with the Bankruptcy Court and a copy served on counsel for the Debtor, counsel for the Committee, the Trust Oversight Committee and the Liquidating Trustee, within thirty (30) days from the entry of the Confirmation Order, or such Claim shall be forever barred and shall not be entitled to a Distribution or be enforceable against the Debtor, its Estate, the Liquidating Trust, the Liquidating Trustee, their successors, their assigns or their Assets. Any Claim arising from the rejection of an Executory Contract shall be treated as a Claim in Class 3 (General Unsecured Claims). Nothing in the Plan extends or modifies any previously applicable Bar Date.

### C.    INSURANCE POLICIES

The insurance policies of the Debtor that are in force as of the Effective Date are Executory Contracts and will be assumed on the Effective Date subject to the ability of the right to reject any such policies as outlined below.  The Liquidating Trust shall satisfy the

requirements of 365(b)(1) for all such assumed Executory Contracts. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to each such insurance policy. To the extent the Bankruptcy Court determines otherwise with respect to any insurance policy, the Debtors may, upon written notice to the non-Debtor party, reject such insurance policy. The Plan shall not affect contracts that have been assumed and assigned by order of the Bankruptcy Court prior to the Confirmation Date. For the avoidance of doubt, the insurance policies (including any insurance policies that are not executory contracts, insurance policies that may have expired prior to the Petition Date, insurance policies in existence on the Petition Date and insurance policies entered into by the Debtors after the Petition Date) of the Debtor and all rights thereunder and rights under any other insurance policies under which the Debtor may be a beneficiary (including the rights to make, amend, prosecute and benefit from claims) are retained and will be transferred to the Liquidating Trust pursuant to the Plan.

## ARTICLE 7

## DISTRIBUTIONS

### A.     DISBURSING AGENT

#### 1.     Liquidating Trustee as Disbursing Agent

The Liquidating Trustee shall be the Disbursing Agent and the Disbursing Agent shall make all distributions under the Plan.

#### 2.     Alternative Disbursing Agent Qualification

No Person other than the Liquidating Trustee shall be authorized by the Bankruptcy Court to serve as Disbursing Agent unless and until the Liquidating Trustee and the Trust Oversight Committee consent in writing to that Person serving as Disbursing Agent and that Person (i) executes and files a statement with the Bankruptcy Court agreeing to perform all of the duties of the Disbursing Agent under the Plan, and (ii) consents to the jurisdiction of the Bankruptcy Court in respect to all matters relating to the performance of his or her duties as the Disbursing Agent under the Plan or order of the Bankruptcy Court.

### B.     TIME AND MANNER OF DISTRIBUTIONS

The Liquidating Trustee shall have the power, subject to Trust Oversight Committee consent, to make interim distributions to Holders of Allowed General Unsecured Claims if the Liquidating Trustee determines that such interim distributions are warranted and economical; provided, however, that the Liquidating Trustee shall make interim distributions at least annually to the extent the Liquidating Trustee determines there are sufficient available excess funds in the Distribution Fund. If the Liquidating Trustee determines to make interim distributions to Holders of Allowed General Unsecured Claims, the Liquidating Trustee will determine the amount to be distributed by taking into account such factors as ongoing expenses and costs, taxes, and reserves necessary to provide for the resolution of Disputed Claims. Amounts withheld will be placed in an interest-bearing account which shall fund ongoing expenses and

costs relating to such reserves, including, without limitation, taxes in respect of Disputed Claims, if any.

At the option of the Liquidating Trustee, any distributions under the Plan may be made either in Cash, by check drawn on a domestic bank, by wire transfer or by ACH or, in the case of non-Cash distributions, in such manner approved by the Bankruptcy Court. Notwithstanding any other provisions of the Plan to the contrary, no payment of fractional cents will be made under the Plan. Cash will be issued to Holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent when and as necessary). Any distribution of less than $10.00 will be considered de minimis, and Holders of Allowed Claims that are entitled to any distribution of less than $10.00 will not receive any distribution unless and until the aggregate of such distributions exceeds $10.00. Such funds shall remain with and vest in the Liquidating Trust for distribution to other Holders of Allowed Claims.

## C. DELIVERY OF DISTRIBUTIONS

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made by the Disbursing Agent (i) at the addresses set forth on the Proofs of Claim filed by such Holder (or at the last known addresses of such Holder if no motion requesting payment or Proof of Claim is filed or the Debtor, the Liquidating Trust has been notified in writing of a change of address), (ii) at the addresses set forth in any written notices of address changes delivered to the Liquidating Trustee after the date of any related Proof of Claim, or (iii) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Liquidating Trustee has not received a written notice of a change of address.

## D. UNDELIVERABLE DISTRIBUTIONS

If a distribution to a Holder of a Claim is returned as undeliverable, no further distributions to such Holder of a Claim shall be made unless and until the Liquidating Trustee and the Disbursing Agent is notified of the then-current address of such Holder, at which time (subject to the terms of the last sentence of Article 6.D of the Plan) all missed distributions shall be made to such Holder without interest. Amounts in respect of undeliverable distributions shall be returned to the Liquidating Trustee until such distributions are claimed. All funds or other undeliverable distributions returned to the Liquidating Trustee in respect of any Claim and not claimed within four (4) months of return shall be forfeited and remain with and vest in the Liquidating Trust for distribution to other Holders of Allowed Claims. Any unclaimed funds held by the Liquidating Trust at the time the Final Decree is entered shall be deposited in the Clerk's Registry Fund.

## E. CLAIMS ADMINISTRATION RESPONSIBILITY

### 1. Reservation of Rights to Object to Claims

Unless a Claim is expressly described as an Allowed Claim pursuant to or under the Plan, or otherwise becomes an Allowed Claim prior to or after the Effective Date, the Liquidating Trust and the Liquidating Trustee (on behalf of the Estate) reserve any and all objections to any and all Claims and motions or requests for the payment of Claims, whether administrative expense, priority, secured or unsecured, including, without limitation, any and all objections to the

validity or amount of any and all alleged Administrative Claims, Priority Tax Claims, Priority Claims, Secured Claims, General Unsecured Claims, Interest Related Claims, Interests, Liens and security interests, whether under the Bankruptcy Code, other applicable law. The Liquidating Trust's and/or the Liquidating Trustee's failure to object to any Claim or Interest in the Chapter 11 Case shall be without prejudice to the Liquidating Trust's and the Liquidating Trustee's rights to contest or otherwise defend against such Claim or Interest in the Bankruptcy Court when and if such Claim or Interest is sought to be enforced by the Holder of such Claim or Interest.

2.    <strong>Objections to Claims</strong>

Prior to the Effective Date, the Debtor shall be responsible for pursuing any objection to the allowance of any Claim. All objections commenced by the Debtor which are pending on the Effective Date shall continue with the Liquidating Trustee substituted as the objecting party in place of the Debtor. From and after the Effective Date, the Liquidating Trustee will retain responsibility for administering, disputing, objecting to, compromising or otherwise resolving and making distributions, if any, with respect to all Claims. Unless otherwise provided in this Plan or by order of the Bankruptcy Court, any objections to Claims by the Liquidating Trustee will be filed and served not later than 180 days after the Effective Date, provided that the Liquidating Trust or the Liquidating Trustee may request (and the Bankruptcy Court may grant) an extension of such deadline by filing a motion with the Bankruptcy Court, based upon a reasonable exercise of his or her business judgment. A motion seeking to extend the deadline to object to any Claim shall not be deemed an amendment to the Plan.

3.    <strong>Filing of Objections</strong>

An objection to a Claim or Interest shall be deemed properly served on the Holder of such Claim or Interest if the Liquidating Trust or the Liquidating Trustee affects service in accordance with Bankruptcy Rule 3007.

4.    <strong>Determination of Claims</strong>

Except as otherwise agreed by the Liquidating Trust or the Liquidating Trustee, any Claim as to which a Proof of Claim or motion or request for payment was timely filed in the Chapter 11 Case may be determined and (so long as such determination has not been stayed, reversed or amended and as to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending) liquidated pursuant to (i) an order of the Bankruptcy Court, (ii) applicable bankruptcy law, (iii) agreement of the parties, (iv) applicable non-bankruptcy law or (v) the lack of (a) an objection to such Claim, (b) an application to equitably subordinate such Claim, and (c) an application to otherwise limit recovery with respect to such Claim, filed by the Debtor, the Liquidating Trust or the Liquidating Trustee on or prior to any applicable deadline for filing such objection or application with respect to such Claim. Any such Claim so determined and liquidated shall be deemed to be an Allowed Claim for such liquidated amount and shall be satisfied in accordance with the Plan. Nothing contained in Article 6.E of the Plan shall constitute or be deemed a waiver of any

claim, right or Causes of Action that the Debtor or the Liquidating Trustee may have against any Person in connection with or arising out of any Claim or Claims, including, without limitation, any rights under 28 U.S.C. § 157.

### F.  PROCEDURES FOR TREATING AND RESOLVING DISPUTED AND CONTINGENT CLAIMS

#### 1.  No Distributions Pending Allowance

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim; provided, however, that in the event that only a portion of such Claim is an Allowed Claim, the Liquidating Trustee may make, in his or her discretion, a distribution pursuant to the Plan on account of the portion of such Claim that becomes an Allowed Claim.

#### 2.  Claims Estimation

The Debtor or the Liquidating Trustee may request estimation or liquidation of any Disputed Claim that is contingent or unliquidated pursuant to Bankruptcy Code § 502(c); provided, however, that the Bankruptcy Court shall determine (i) whether such Disputed Claim is subject to estimation pursuant to Bankruptcy Code § 502(c), and (ii) the timing and procedures for such estimation proceedings, if any.

### G.  SETOFF AND RECOUPMENT

The Liquidating Trustee may, pursuant to Bankruptcy Code §§ 553 and 558 or applicable non-bankruptcy law, but shall not be required to, setoff against or recoup from any Claim on which payments are to be made pursuant to the Plan, any claims or Causes of Action of any nature whatsoever the Debtor may have against the Holder of such Claim; provided, however, that neither the failure to effect such offset or recoupment nor the allowance of any Claim shall constitute a waiver or release by the Debtor of any setoff or recoupment the Debtor may have against the Holder of such Claim, nor of any other claim or Cause of Action.

### H.  ALLOWANCE AND DISALLOWANCE OF CLAIMS SUBJECT TO BANKRUPTCY CODE § 502

Allowance and disallowance of Claims, including without limitation claims and requests for payment under Bankruptcy Code § 503(b)(9), shall be in all respects subject to the provisions of Bankruptcy Code § 502, including, without limitation, subsections (b), (d), (e), (g), (h) and (i) thereof.

### I.  CANCELLATION OF INSTRUMENTS AND AGREEMENTS

Upon the occurrence of the Effective Date, except as otherwise provided herein, all promissory notes, shares, certificates, instruments, indentures, stock or agreements evidencing, giving rise to or governing any Claim or Interest shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule; the

obligations of the Debtor under such promissory notes, share certificates, instruments, indentures or agreements shall be discharged and the Holders thereof shall have no rights against the Debtor, the Liquidating Trustee, the Estate or the Liquidating Trust; and such promissory notes, share certificates, instruments, indentures or agreements shall evidence no such rights, except the right to receive the distributions provided for in the Plan.

### J.     NO INTERESTS ON CLAIMS

Unless otherwise specifically provided for in the Plan, the Confirmation Order or a post-petition agreement in writing between the Debtor and a Holder of a Claim and approved by an order of the Bankruptcy Court, post-petition interest shall not accrue or be paid on any Claim, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. In addition, and without limiting the foregoing, interest shall not accrue on or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final distribution is made when and if such Disputed Claim becomes an Allowed Claim.

### K.     WITHHOLDING TAXES

The Liquidating Trustee shall be entitled to deduct any federal, state or local withholding taxes from any payments under the Plan. As a condition to making any distribution under the Plan, the Liquidating Trustee may require that the Holder of an Allowed Claim provide such Holder's taxpayer identification number and such other information and certification as the Liquidating Trustee may deem necessary to comply with applicable tax reporting and withholding laws.

## ARTICLE 8

## CONDITIONS PRECEDENT

### A.     EFFECTIVE DATE CONDITIONS

The Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full in accordance with the provisions specified below:

1.     The Bankruptcy Court shall have approved a disclosure statement with respect to the Plan in form and substance acceptable to the Committee in their sole and absolute discretion;

2.     The Confirmation Order shall be in form and substance acceptable to the Committee in its absolute discretion;

3.     The Confirmation Order shall have been entered by the Bankruptcy Court and shall not be subject to any stay of effectiveness, the Confirmation Date shall have occurred and no request for revocation of the Confirmation Order under Bankruptcy Code § 1144 shall have been made or, if made, shall remain pending;

4.      The appointment of the Liquidating Trustee shall have been confirmed by order of the Bankruptcy Court; and

5.      The Debtor has, or in the reasonable judgment of the Committee will have, sufficient Cash to pay all Allowed Claims that, pursuant to the Bankruptcy Code, must be paid on or as soon as reasonably practicable after the effective date of a plan of liquidation.

## B.      REVOCATION WITHDRAWAL OR NON-CONSUMMATION OF PLAN

If, after the Confirmation Order is entered, each of the conditions precedent to the Effective Date have not been satisfied or duly waived on or by ninety (90) days after the Confirmation Date, then upon motion by the Committee, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions precedent to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. A condition precedent to the Effective Date may only be waived by a writing executed by the Committee. If the Confirmation Order is vacated pursuant to Article 8.B of the Plan, the Plan shall be null and void in all respects, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims against or Interests in the Debtor, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interest in the Debtor, (iii) prejudice in any manner the rights of the Debtor in the Chapter 11 Case, or (iv) constitute a release, indemnification or exculpation by the Debtor, the Estate or any other party pursuant to the Plan.

# ARTICLE 9

## FINANCIAL INFORMATION

### A.      STATUS OF CURRENT CASH POSITION AS OF AUGUST 31, 2010

The Debtor's cash position as of August 31, 2010 is approximately $1,737,158.  The Purchase Price Escrow Account contains $2,425,985 as of August 31, 2010. Attached as **Exhibit B** is a copy of the latest monthly operating report filed by the Debtor.

### B.      DESCRIPTIONS OF ASSETS AND LITIGATION

#### 1.      Remaining Assets

The Debtor's remaining non-Cash assets primarily of real estate located in Arkansas. The Liquidating Trustee intends to liquidate these tangible assets for the highest possible return. The Liquidating Trustee specifically reserves the right to retain any of the non-Cash assets for distribution to Holders of Claims.

#### 2.      Estate Litigation

Except as otherwise provided in the Plan, any and all rights or Causes of Action and Avoidance Actions under any theory of law or fact, including, without limitation, under the

Bankruptcy Code, which may be asserted by the Debtor or which has been asserted by the Debtor shall remain Assets of the Estate and on the Effective Date shall be transferred to and vested in the Liquidating Trust. The Liquidating Trustee will then become the duly appointed representative of the Estate in place of the Debtor. Pursuant to Bankruptcy Code §123(b)(3)(B), only the Liquidating Trust and the Liquidating Trustee, subject to any oversight and approval of the Trust Oversight Committee as may be required under the Plan, shall have the right to pursue or not to pursue, or, subject to the terms of the Plan, compromise or settle any Causes of Action and Avoidance Actions owned or held by the Debtor or its Estate as of the Effective Date.

The Liquidating Trustee may settle without need of Bankruptcy Court approval any Avoidance Actions and may seek an order of the Bankruptcy Court approving the compromise, release or settlement of any such Avoidance Action, subject to any necessary oversight and approval of the Trust Oversight Committee as may be required under the Plan. Subject to the Confirmation Order, the Bankruptcy Court shall retain jurisdiction to adjudicate any and all Causes of Action, Claims and Avoidance Actions whether commenced prior to or after confirmation of the Plan. Except as otherwise provided in the Plan, the Liquidating Trustee shall have no obligation to obtain the approval or authorization of the Bankruptcy Court or file a report to the Bankruptcy Court concerning the sale, transfer, assignment or disposition of Assets; provided that the Liquidating Trustee may seek an order of the Bankruptcy Court approving any sale or disposition of Assets by the Liquidating Trustee to facilitate such transactions.

Except as otherwise provided in the Plan, from and after the Effective Date, the Liquidating Trust and the Liquidating Trustee shall, subject to any necessary oversight and approval of the Trust Oversight Committee as may be required under the Plan, have sole authority to commence, litigate or settle any Avoidance Actions and/or Causes of Action and shall have standing for all purposes. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Avoidance Actions and Causes of Action and approve of any such settlement (if required), whether commenced prior to or after confirmation of the Plan.

The Debtor and the Committee are in the process of analyzing the Avoidance Actions and/or Causes of Action. All Creditors who received payments from the Debtor within 90 days of the Petition Date (or one year if the Creditor was an "Insider," as such term is defined in Bankruptcy Code § 101(31)), are subject to being sued for recovery of preferences under Bankruptcy Code § 547.

## C.     RISKS ASSOCIATED WITH REALIZING ON LITIGATION

A portion of the property to be distributed to the creditors pursuant to the Plan includes litigation claims. In addition to the risks described above, in general, the outcome of such litigation is impossible to predict. It is possible that the Estate may recover nothing at all on account of such litigation. The risks in such litigation include, but are not limited to, those associated with defenses and counter-claims of opposing parties to the litigation; the delay and expense associated with discovery and trial of factually intensive and complex disputes; the additional delay and expense inherent in appellate review; difficulties in pursuing claims pertaining to the Debtor it is no longer an operating entity; the diminishing availability of

former employees to serve as witnesses because they have moved from the geographic area or have otherwise become unavailable; the impossibility of predicting judicial outcomes; and the difficulty collecting favorable judgments.

**NEITHER THE DEBTOR NOR THE COMMITTEE MAKE ANY REPRESENTATION CONCERNING THE ACCURACY OF THE PROJECTED FINANCIAL INFORMATION OR THE ABILITY TO ACHIEVE THE PROJECTED RESULTS. MANY OF THE ASSUMPTIONS ON WHICH THESE PROJECTIONS ARE BASED ARE SUBJECT TO SIGNIFICANT ECONOMIC UNCERTAINTIES. IT IS LIKELY THAT SOME ASSUMPTIONS WILL NOT MATERIALIZE BECAUSE OF UNANTICIPATED EVENTS AND CIRCUMSTANCES. ACCORDINGLY, THE ACTUAL RESULTS ACHIEVED THROUGHOUT THE PROJECTION PERIOD ARE LIKELY TO VARY FROM THE PROJECTED RESULTS. THE VARIATIONS MAY BE MATERIAL AND ADVERSE OR POSITIVE.**

**THE COMMITTEE DOES NOT ANTICIPATE AT THIS TIME THAT IT WILL UPDATE THESE PROJECTIONS AT THE HEARING ON CONFIRMATION OF THE PLAN OR OTHERWISE MAKE SUCH PROJECTIONS PUBLIC.**

**ARTICLE 10**

**<u>CERTAIN FACTORS TO BE CONSIDERED REGARDING THE PLAN</u>**

Holders of Claims against the Debtor should read and consider carefully the factors set forth below, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference), prior to voting to accept or reject the Plan. These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation.

### A.    BANKRUPTCY CONSIDERATIONS

An objection to confirmation of the Plan could prevent confirmation or delay confirmation for a significant period of time. In such case, the Effective Date may not occur and payments to creditors may not commence for several months. In addition, if the Plan is not confirmed, the Chapter 11 Cases may be converted to cases under chapter 7, in which event the Committee believes that Creditor recoveries will be substantially diminished.

THE COMMITTEE BELIEVES THAT THE EFFECTIVE DATE WILL OCCUR THE FIRST BUSINESS DAY AFTER THE CONFIRMATION ORDER BECOMES FINAL, ALTHOUGH THERE CAN BE NO ASSURANCE THAT EACH OF THE CONDITIONS TO THE EFFECTIVE DATE WILL BE SATISFIED BY SUCH DATE.

## ARTICLE 11

## POST-CONFIRMATION ISSUES

### A.        CONVERSION OR DISMISSAL

The Plan provides that if the Confirmation Order is vacated, the Plan will be null and void in all respects and nothing contained therein will (i) constitute a waiver of any Claims against or Interests in any of the Debtor, (ii) prejudice in any manner the rights of the Holder of any Claim against or Interests in any of the Debtor, or (iii) prejudice in any manner the rights of any of the Debtor in the Chapter 11 Case.

### B.        PAYMENT OF STATUTORY FEES

All fees payable through the Effective Date pursuant to 28 U.S.C. § 1930 will be paid by the Debtor on the Effective Date. All fees payable after the Effective Date pursuant to 28 U.S.C. § 1930 will be paid by the Liquidating Trustee out of the Wind-down Reserve.

### C.        AUTHORITY TO EFFECTUATE PLAN

Upon the Confirmation Order becoming a Final Order, all matters provided under the Plan shall be deemed to be authorized and approved without the requirement of further approval from the Bankruptcy Court and the Debtor.

### D.        BINDING EFFECT OF PLAN

Except as otherwise expressly provided in the Plan, on and after the Effective Date, the Plan shall bind all Holders of Claims and Interests, whether or not such Holders voted to accept or reject the Plan. Except as expressly set forth in the Plan, on and after the Confirmation Date, subject to the occurrence of the Effective Date, every Holder of a Claim or Interest shall be precluded and permanently enjoined from asserting against the Debtor, the Debtor's Estate, the Liquidating Trust, the Liquidating Trustee and their respective Assets and properties and the Committee and its members (solely in their capacity as members of the Committee) and their respective advisors and attorneys, any claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the Petition Date or between the Petition Date and the Effective Date, in connection with, related to, effecting or arising out of the Debtor, the Debtor's operations, the bankruptcy filing, the Chapter 11 Case, the negotiation, approval, implementation and administration of the Plan, any sale or liquidation of the Debtor's Assets, or the property to be distributed under the Plan by the Liquidating Trustee, except by reason of their gross negligence or willful misconduct, and in all respects, each shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

### E.        GOVERNING LAW

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated, the rights, duties and obligations arising under the Plan, any agreements, documents and instruments executed in

connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and, with respect to the Debtor incorporated in Arkansas and the Liquidating Trust, corporate matters shall be governed by, and construed and enforced in accordance with the laws of the State of Arkansas, without giving effect to conflicts of law principles.

### F.    RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT

1.    all matters relating to the assumption or rejection or the assumption and assignment of executory contracts or unexpired leases, or Claims or disputes relating thereto;

2.    all matters relating to the ownership of a Claim or Interest;

3.    all disputes relating to the distribution to holders of Allowed Claims and to the determination of Claims;

4.    any and all matters involving the Liquidating Trustee and/or the Liquidating Trust and the Trust Oversight Committee;

5.    all matters relating to or arising in connection with the allowance or estimation of Claims filed, both before and after the Confirmation Date, including any objections to the classification of any Claim;

6.    to enter and implement such orders as may be appropriate if the Confirmation Order is for any reason stayed, revoked, modified and/or vacated;

7.    all matters relating to the construction and implementation of this Plan and the provisions thereof, and to hear and determine all requests for orders in aid of execution, implementation or consummation of this Plan;

8.    all matters relating to disputes arising in connection with the interpretation, implementation or enforcement of this Plan or the Confirmation Order, including disputes arising under agreements, documents or instruments executed in connection with this Plan;

9.    to consider any modifications of this Plan, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

10.    all applications for allowance of compensation and reimbursement of Professional Fee Claims under this Plan or under Bankruptcy Code §§ 328, 330, 331, 503(b), 1103 and 1129(a)(4);

11.    to hear and determine all motions requesting allowance of an Administrative Claim;

12.     to determine requests for the payment of Claims entitled to priority under Bankruptcy Code § 507(a)(2), including compensation and reimbursement of expenses of parties entitled thereto;

13.     all Causes of Action, Avoidance Actions and other suits and adversary proceedings to recover assets of the Liquidating Trust  as successor-in-interest to any of the Debtor and property of the Estate, wherever located, and to adjudicate any and all other Causes of Action, Avoidance Actions, suits, adversary proceedings, motions, applications and contested matters that may be commenced or maintained pursuant to the Chapter 11 Cases or this Plan, proceedings to adjudicate the allowance of Disputed Claims, and all controversies and issues arising from or relating to any of the foregoing;

14.     all matters concerning state, local and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146;

15.     any other matter not inconsistent with the Bankruptcy Code;

16.     all disputes involving the existence, nature or scope of the Debtor's discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

17.     to enter the Final Decree closing the Chapter 11 Case; and

18.     to enforce all orders previously entered by the Bankruptcy Court.

## G.     EXCULPATION

**None of the Protected Parties shall have or incur any liability for, and each Protected Party is hereby released from, any claim, cause of action or liability to any other Protected Party, to any Holder of a Claim or an Interest in their capacity as such, for any act or omission taken in connection with, arising from or relating to the Chapter 11 Case, the formulation, negotiation and/or pursuit of confirmation of the Plan, the consummation of the Plan, and/or the administration of the Plan and/or the property to be distributed under the Plan, except for claims, causes of action or liabilities arising from the gross negligence, willful misconduct or fraud of any Protected Party, in each case subject to determination of such by final order of a court of competent jurisdiction and provided that any Protected Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under the Plan and such reasonable reliance shall form an absolute defense to any such claim, cause of action or liability. Without limiting the generality of the foregoing, each Protected Party shall be entitled to and granted the protections and benefits of Bankruptcy Code § 1125(e).**

## H.     INJUNCTIONS

**Except as otherwise expressly provided in the Plan or in the Confirmation Order, and except in connection with the enforcement of the terms of the Plan or any documents**

**provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtor or the Estate that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against any Protected Party (other than the Liquidating Trustee, the Liquidating Trust and the Trust Oversight Committee) or any property of any Protected Party (other than the Liquidating Trustee, the Liquidating Trust and the Trust Oversight Committee) with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree or order against any Protected Party (other than the Liquidating Trustee, the Liquidating Trust and the Trust Oversight Committee) or any property of any Protected Party (other than the Liquidating Trustee, the Liquidating Trust and the Trust Oversight Committee) with respect to any such Claim or Interest; (c) creating, perfecting or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Protected Party (other than the Liquidating Trustee, the Liquidating Trust and the Trust Oversight Committee) or any property of any Protected Party (other than the Liquidating Trustee, the Liquidating Trust and the Trust Oversight Committee) with respect to any such Claim or Interest; (d) effecting, directly or indirectly, any setoff or recoupment of any kind against any obligation due to any Protected Party (other than the Liquidating Trustee, the Liquidating Trust and the Trust Oversight Committee) or any property of any Protected Party (other than the Liquidating Trustee, the Liquidating Trust and the Trust Oversight Committee) with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in Article 7.A of the Plan shall prohibit the Holder of a Claim or Interest with respect to which a Proof of Claim was timely filed from litigating its right to seek to have such Claim or Interest declared an Allowed Claim or Interest and paid in accordance with the distribution provisions of the Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Interest of any of the obligations of the Debtor, the Liquidating Trustee or the Liquidating Trust under the Plan. The Confirmation Order shall also constitute an injunction enjoining any Person from enforcing or attempting to enforce any Causes of Action against any Protected Party or any property of any Protected Party based on, arising from or related to any failure to pay, or make provision for payment of, any amount payable with respect to any Priority Tax Claim on which the payments due under Article 6.K of the Plan have been made or are not yet due under Article 6.K of the Plan.**

I.      **CANCELLATION OF INSTRUMENTS AND AGREEMENTS**

Upon the occurrence of the Effective Date, except as otherwise provided in the Plan, all promissory notes, shares, certificates, instruments, indentures or stock, or agreements evidencing, giving rise to or governing any Claim or Interest, shall be deemed canceled and annulled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtor under such promissory notes, share certificates, instruments, indentures or agreements (including any applicable Organization Documents) shall be discharged.

### J.     SECURITIES LAW

Under Bankruptcy Code § 1145, the issuance of the equity interest in the Liquidating Trust to the Liquidating Trustee under the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.

## ARTICLE 12

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

Circular 230 Disclaimer: To ensure compliance with requirements imposed by the Internal Revenue Service (the "IRS"), we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code of 1986, as amended (the "IRC"), or (ii) promoting, marketing or recommending to another party any transaction or tax matter(s) addressed herein.

The following discussion summarizes certain federal income tax consequences of the Plan to the Debtor and to Holders of General Unsecured Claims and Interests. This summary does not address the federal income tax consequences to Holders whose Claims are paid in full, in Cash, or which are otherwise not Impaired under the Plan (i.e., Allowed Administrative Claims, Priority Claims, Priority Tax Claims and Secured Claims).

This summary is based on the IRC, the Treasury Regulations promulgated and proposed thereunder, judicial decisions and published administrative rulings and pronouncements of the IRS currently in effect. These authorities are all subject to change, possibly with retroactive effect, and any such change could alter or modify the federal income tax consequences described below.

This summary does not address foreign, state or local income tax consequences, or any estate or gift tax consequences of the Plan, nor does it purport to address the federal income tax consequences of the Plan to special classes of taxpayers (such as foreign companies, nonresident alien individuals, S corporations, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, investors in pass-through entities, broker-dealers and tax-exempt organizations). Accordingly, this summary should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular Holder of a Claim or Interest.

Due to the possibility of changes in law, differences in the nature of various Claims, differences in individual Claim or Interest Holders' methods of accounting, and the potential for disputes as to legal and factual matters, the federal income tax consequences described herein are subject to significant uncertainties. No ruling has been applied for or obtained from the IRS, and no opinion of counsel has been requested or obtained by the Committee or the Debtor with respect to any of the tax aspects of the Plan.

**THE TAX CONSEQUENCES TO HOLDERS OF CLAIMS OR INTERESTS MAY VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH SUCH**

**HOLDER. THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE IRS WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST MUST CONSULT WITH HIS, HER OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.**

### A.    FEDERAL INCOME TAX CONSEQUENCES

#### 1.    Federal Income Tax Consequences to Holders of Unsecured Claims

In accordance with the Plan, each Holder of a General Unsecured Claim shall be entitled to receive his, her or its Pro Rata share of the proceeds of the Debtor's Assets. Each Holder of an Allowed Unsecured Claim will recognize gain or loss upon receipt of such Pro Rata share equal to the difference between the "amount realized" by such Creditor and such Creditor's adjusted tax basis in his, her or its Claim. The amount realized is equal to the value of such Creditor's Pro Rata share of the proceeds of the Debtor's Assets. Any gain or loss realized by an Unsecured Creditor should constitute ordinary income or loss to such creditor unless such Claim is a capital asset in the hands of such Unsecured Creditor. If a Claim is a capital asset and it has been held for more than one year, such creditor will realize long-term capital gain or loss.

The federal income tax consequences to Unsecured Creditors will differ and will depend on factors specific to each such Creditor, including, but not limited to: (i) whether the Unsecured Creditor's Claim (or a portion thereof) constitutes a Claim for principal or interest, (ii) the origin of the Unsecured Creditor's Claim, (iii) the type of consideration received by the Unsecured Creditor in exchange for the Claim, (iv) whether the Unsecured Creditor is a United States person or a foreign person for United States federal income tax purposes, (v) whether the Unsecured Creditor reports income on the accrual or cash basis method, and (vi) whether the Unsecured Creditor has taken a bad debt deduction or otherwise recognized a loss with respect to the Claim.

**THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCES TO EACH UNSECURED CREDITOR. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND IN SOME CASES UNCERTAIN. THEREFORE, CREDITOR MUST OBTAIN HIS, HER OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN.**

#### 2.    Federal Income Tax Treatment of Interests

In accordance with the Plan, Holders of Interests will not receive anything on account of such Interest and will recognize loss in an amount equal to such Holder's adjusted tax basis in the Interest. The character of any recognized loss will depend upon several factors, including, but not limited to, the status of the Holder, the nature of the Interest of Holdings in the Holder's hands, the purpose and circumstances of its acquisition, the Holder's holding period, and the

extent to which the Holder had previously claimed a deduction for the worthlessness of all or a portion of the Interest.

**THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCES TO EACH HOLDER OF AN INTEREST OF THE DEBTOR. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND IN SOME CASES UNCERTAIN. THEREFORE EACH HOLDER OF AN INTEREST OF THE DEBTOR MUST OBTAIN HIS, HER OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH HOLDER OF AN INTEREST OF THE DEBTOR AS A RESULT OF THE PLAN.**

3. **Withholding and Reporting**

Payments of interest, dividends and certain other payments are generally subject to backup withholding at the rate of 28% unless the payee of such payment furnishes such payee's correct taxpayer identification number (social security number or employer identification number) to the payor. The Liquidating Trustee may be required to withhold the applicable percentage of any payments made to a Holder who does not provide his, her or its taxpayer identification number. Backup withholding is not an additional tax, but an advance payment that may be refunded to the taxpayer by the IRS to the extent that the backup withholding results in an overpayment of tax by such taxpayer in such taxable year.

THE FOREGOING IS INTENDED TO BE ONLY A SUMMARY OF CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND IN SOME CASES UNCERTAIN. SUCH CONSEQUENCES MAY ALSO VARY BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS, HER OR ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE AND LOCAL INCOME AND OTHER TAX CONSEQUENCES UNDER THE PLAN.

**ARTICLE 13**

**ALTERNATIVES**

The Committee believes that the Plan provides a recovery to creditors that is greater than or equal to the probable recoveries by creditors if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

**A.     ACCEPTANCE AND CONFIRMATION OF THE PLAN**

The Committee believes that the Plan satisfies all the requirements for confirmation.

### B.      GENERAL CONFIRMATION REQUIREMENTS

Bankruptcy Code § 1129(a) contains several requirements for confirmation of a plan. Among those requirements are that a plan be proposed in good faith, that certain information be disclosed regarding payments made or promised to be made to insiders, and that the plan comply with the applicable provisions of Chapter 11. The Committee believes that the Plan complies with these requirements, including those requirements discussed below.

### C.      BEST INTEREST TEST

Each Holder of a Claim or Interest in an Impaired Class must either (i) accept the Plan or (ii) receive or retain under the Plan Cash or property of a value, as of the Effective Date of the Plan, that is not less than the value such Holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. The Bankruptcy Court will determine whether the Cash and property issued under the Plan to each class equals or exceeds the value that would be allocated to the Holders in a liquidation under chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Committee believes that the Holders of Claims against and Interests in the Debtor will have an equal or greater recovery as a result of the sale of the Debtor's Assets as discussed herein and under the Plan than could be realized in a chapter 7 liquidation for the following reasons.

The Liquidating Trust is liquidating and therefore is not seeking to require Creditors to accept non-cash consideration so that the Estate could pursue going-concern value. Accordingly, the only question is whether the creditors will have recovered more (or at least as much) under the Plan than they would recover through an asset liquidation by a chapter 7 trustee.

To determine the value that a Holder of a Claim or Interest in an Impaired Class would receive if the Debtor was liquidated under chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtor's Assets if the Debtor's Chapter 11 Case had been converted to a chapter 7 liquidation case and the Debtor's Assets were liquidated by a chapter 7 trustee (the "Liquidation Value"). The Liquidation Value would consist of the net proceeds from the disposition of the Debtor's Assets, augmented by Cash held by the Debtor and reduced by certain increased costs and Claims that arise in a chapter 7 liquidation case that do not arise in a chapter 11 reorganization case.

As explained below, the Liquidation Value available for satisfaction of Claims and Interests in the Debtor would be reduced by: (a) the costs, fees and expenses of the liquidation under chapter 7, which would include disposition expenses and the compensation of a trustee and his or her counsel and other professionals retained, (b) the fees of the chapter 7 trustee, and (c) certain other costs arising from conversion of the Chapter 11 Case to chapter 7.

The Committee believes that Creditors have benefited and will continue to clearly benefit from the liquidation by the Debtor. If the Assets are liquidated by a chapter 7 trustee, the Committee projects that the maximum recovery would be substantially less. The Debtor has already reduced the significant majority of its Assets to Cash through auction or private sales approved by the Bankruptcy Court.  Therefore, the Debtor has already established systems

and protocols for the efficient disposition of the Assets of the Estate and is in the process of liquidating its limited remaining Assets.

Moreover, under the Plan the Committee believes that the increased costs and expenses of a chapter 7 liquidation, including the fees payable to a chapter 7 trustee and his or her professionals, can be avoided. Although the Debtor has already incurred many of the expenses associated with generating the proceeds, the Cash to be distributed to Creditors would be reduced by the chapter 7 trustee's statutory fee, which is calculated on a sliding scale from which the maximum compensation is determined based on the total amount of moneys disbursed or turned over by the chapter 7 trustee. Bankruptcy Code § 326(a) permits reasonable compensation not to exceed 3% of the proceeds in excess of $1 million distributable to creditors.[1] The chapter 7 trustee's professionals, including legal counsel and accountants, would add substantial administrative expenses that would be entitled to be paid ahead of Allowed Claims against the Debtor. Moreover, these chapter 7 trustee fees would reduce the Assets available for distribution to the Estate's Creditors from additional recoveries such as preferential payments, expunged administrative claims and the proceeds of successful Estate litigation or settlement.

In contrast, the Liquidating Trustee will be highly familiar with the Debtor's operations and the issues pertaining thereto; therefore, the Estate will avoid the significant administrative burden associated with the familiarization process of a chapter 7 trustee and his or her legal and accounting professionals. Further, under the Plan, all Causes of Action will be pursued by the Liquidating Trustee, subject to any necessary oversight and approval of the Trust Oversight Committee as may be required under the Plan. The Liquidating Trustee is extensively familiar with the facts and legal theories pertaining to the Debtor's Causes of Action. Conversely, a chapter 7 trustee would have no initial familiarity with the Estate's litigation or claims and have less capability to maximize the value of such Causes of Action.

It is also anticipated that a chapter 7 liquidation would result in a significant delay in payments being made to creditors. Bankruptcy Rule 3002(c) provides that conversion of chapter 11 cases to chapter 7 will trigger a new bar date for filing claims against the Estate, and that the new bar date will be 90 days after the first date set for the meeting of creditors called under section 341 of the Bankruptcy Code. Not only would a chapter 7 liquidation delay distribution to creditors, but it is possible that additional claims that were not asserted in the Chapter 11 Case, or were late-filed, could be filed against the Estate. The Debtor has received and is analyzing late-filed claims and may file claims objections in the near future. Reopening the bar date in connection with conversion to chapter 7 would provide these and other claimants an additional opportunity to timely file claims against the Estate.

For the reasons set forth above, the Committee believes that the Plan provides a superior recovery for Holders of Claims, and the Plan meets the requirements of the Best Interest Test.

---

[1] Bankruptcy Code § 326(a) permits a chapter 7 trustee to receive 25% of the first $5,000 distributed to creditors, 10% of additional amounts up to $50,000, 5% of additional distributions up to $1 million and reasonable compensation up to 3% of distributions in excess of $1 million. For example, the tiered fee structure could result in fees (excluding the expenses of the chapter 7 trustee and his or her professionals) of $1,013,250, or 3.166%, on a hypothetical distribution of $33 million.

The Committee has attached its liquidation analysis as **Exhibit C.**  The liquidation analysis is an estimate only and constitutes the Committee's best guess based upon the data currently available.

### D.      FINANCIAL FEASIBILITY TEST

Even if the Plan is accepted by each Class of Claims voting on the Plan, and even if the Bankruptcy Court determines that the Plan satisfies the Best Interest Test, the Bankruptcy Code requires that, in order for the Plan to be confirmed by the Bankruptcy Court, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.

The Committee forecasts that the Cash payments to be made pursuant to the Plan will be funded through the amounts obtained from the sale of substantially all the Assets and from the further liquidation of their limited remaining Assets. Since a form of liquidation is proposed in the Plan and no further financial reorganization of the Debtor is contemplated, the Committee believes that the Plan meets the feasibility requirement.

### E.      ACCEPTANCE OF IMPAIRED CLASSES AND CRAMDOWN

Bankruptcy Code § 1129(b) provides that a plan can be confirmed even if it has not been accepted by all impaired classes as long as at least one impaired class of claims has accepted it. The process by which nonaccepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown." For example, if Class 3 votes not to accept the Plan, the Bankruptcy Court may confirm the Plan at the request of the Debtor notwithstanding the Plan's rejection (or deemed rejection) by impaired classes as long as the Plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired Class that has not accepted it. A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank.

A class of claims under a plan accepts the plan if the plan is accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims in the class that actually vote on the plan. A class of interests accepts the plan if the plan is accepted by holders of interests that hold at least two-thirds in amount of the allowed interests in the class that actually vote on a plan.

A class that is not "impaired" under a plan is conclusively presumed to have accepted the plan. Solicitation of acceptances from such a class is not required. A class is "impaired" unless (i) the legal, equitable and contractual rights to which a claim or interest in the class entitles the holder are not modified, or (ii) the effect of any default is cured and the original terms of the obligation are reinstated.

A plan is fair and equitable as to a class of secured claims that rejects the plan if the plan provides (i)(a) that the holders of claims included in the rejecting class retain the liens securing those claims, whether the property subject to those liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims, and (b) that each holder of a claim of such class receives on account of that claim deferred cash payments totaling at least the allowed amount of that claim, of a value, as of the effective date of the

plan, at least equal to the value of the holder's interest in the estate's interest in such property; (ii) for the sale, subject to Bankruptcy Code § 363(k), of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of the liens, with the liens to attach to the proceeds of the sale, and the treatment of the liens on proceeds under clause (i) or (ii) of this paragraph; or (iii) for the realization of the indubitable equivalent of such claims.

A plan is fair and equitable as to a class of unsecured claims that rejects the plan if the plan provides (i) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (ii) that the holder of any claim or interest that is junior to the claims of such rejecting class will not receive or retain on account of such junior claim or interest any property at all.

A plan is fair and equitable as to a class of equity interests that rejects a plan if the plan provides (i) that each holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (ii) that the holder of any interest that is junior to the interest of such rejecting class will not receive or retain under the plan on account of such junior interest any property at all.

Class 3 (General Unsecured Claims) is Impaired and shall be entitled to vote to accept or reject the Plan. If and to the extent that any Class identified as being not Impaired is Impaired (whether as a result of the terms of the Plan or any modification or amendment thereto), such Class shall be entitled to vote to accept or reject the Plan.

Class 1 (Priority Claims) and Class 2 (Secured Claims) are not Impaired by the Plan. Pursuant to Bankruptcy Code § 1126(f), Classes 1 and 2 are conclusively presumed to have accepted the Plan, and the votes of Holders of Claims in Classes 1 and 2 will therefore not be solicited.

The votes of Class 4 (Interests and Interest Related Claims) are not being solicited because such Holders are not entitled to receive or retain under the Plan any interest in property on account of such Claims and Interests. Class 4 is therefore deemed to have rejected the Plan pursuant to Bankruptcy Code § 1126(g). The Plan provides fair and equitable treatment to these Holders because there are no Classes junior to this class and no Class senior to this Class is being paid more than in full on its Allowed Claims.

If any impaired Class fails to accept the Plan, the Committee intends to request that the Bankruptcy Court confirm the Plan pursuant to Bankruptcy Code § 1129(b) with respect to those Classes.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: December 7, 2010

Respectfully Submitted,

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

By: /s/ Dale Baird
Printed Name: Dale Baird
Title: Member

-and-

MILLER, CANFIELD, PADDOCK & STONE, PLC

By: /s/ Michael H. Traison
Michael H. Traison (IL Bar # 6285518)
Marc N. Swanson (MI Bar # 71149)
225 W. Washington, Suite 2600
Chicago, IL 60606
Phone: 312.860.4230
traison@millercanfield.com
Attorneys for the Committee

-and-

THE NIXON LAW FIRM

By: /s/ David G. Nixon
David G. Nixon (ABA #88048)
2340 Green Acres Road, Suite 12
Fayetteville, Arkansas 72703
Phone: 479.582.0020
david@nixonlaw.com
Attorneys for the Committee