IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE:

NATIONAL HOME CENTERS, INC.,                      CASE NO. 09-BK-76195

       Debtor.
_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITOR'S
OBJECTION TO DEBTOR'S PLAN**

The Official Committee of Unsecured Creditors ("Committee"), by and through its undersigned counsel, objects to the *Debtor's Chapter 11 Plan of Liquidation* ("Plan") on the grounds that it fails, for the following reasons, to meet basic Bankruptcy Code requirements for confirmation.

### I. INTRODUCTION

In an attempted end run around the seminal need to secure an impaired accepting class, the Plan improperly classifies and impairs some claims while providing voting rights to others which have none. The Debtor's classification scheme, solely devised to obtain the acceptance of an impaired class, violates numerous provisions of the Bankruptcy Code. In addition, the Debtor's Plan fails to pay certain administrative claims and all priority claims as required by the Bankruptcy Code. Despite having nearly a year to formulate its plan, the Debtor has failed to propose anything that even resembles a confirmable plan of liquidation. Accordingly, confirmation of the Debtor's Plan must be denied.

### II. BACKGROUND

**A.  Bankruptcy Case**

On December 8, 2009 ("Petition Date"), the Debtor filed a petition under Chapter 11 of the Bankruptcy Code. As of the Petition Date, the Debtor was owned and controlled by Dwain A. Newman and trusts related to him.

18,726,682.1\144196-00001

Approximately two and a half months after the Petition Date, on February 26, 2010, the Debtor filed the Motion for Approval of (A) Substantially All Assets of the Debtor to the Stalking Horse Buyer, Subject to Higher and Better Offers, Free and Clear of All Liens, Claims, Encumbrances, and Interests; (B) Assumption and Assignment of Certain Executory Contracts and Non-Residential Real Property Leases; (C) Cure Amounts and Procedures with Respect to Same; and (D) Granting Related Relief; and Notice of Bid Deadline; Auction Date and Hearing ("Sale Motion") which sought approval of the Asset Purchase Agreement ("APA") the Debtor entered into with Stock Building Supply Holdings, LLC ("Purchaser"). The Sale Motion and APA provided for the sale of substantially all of the Debtor's assets to the Purchaser.

On April 5, 2010, the Bankruptcy Court entered an order approving the Sale Motion ("Sale Order"). As a result of the sale, the Debtor is no longer engaged in business nor does it have any continuing operations.

After six months elapsed following the sale with no action by the Debtor, on October 13, 2010, the Committee filed a plan of liquidation and accompanying disclosure statement. (Doc. No. 862.) Only then, on October 22, 2010, did the Debtor file its Plan and accompanying disclosure statement. (Doc. Nos. 879, 880.)

B.   **The Debtor's Plan**

The Debtor's Plan attempts to create seven different classes of claims:

- **Class 1 Claims are Allowed Secured Claims.** The Plan asserts there are no members of this Class and therefore it cannot be an impaired accepting class.

- **Class 2 Claims are Allowed Priority Employee Claims** arising under Bankruptcy Code §§ 507(a)(4) or 507(a)(5). The Debtor asserts that Class 2 is impaired and allows it to vote on the Plan. The Plan provides that it will go effective regardless of whether there is sufficient cash to pay these claims in full on the Effective Date. If there is insufficient cash to satisfy these claims in full, the Plan provides that these claims will receive their pro rata share of the available cash. Plan § 4.2.

- **Class 3 Claims are Allowed Priority Deposit Claims** arising under Bankruptcy Code § 507(a)(7). The Debtor asserts that Class 3 is impaired and allows it to vote on the Plan. The Plan provides that it will go effective regardless of whether there is sufficient cash to pay these claims in full on the Effective Date. If there is insufficient cash to satisfy these claims in full, the Plan provides that these claims will receive their pro rata share of the available cash. Plan § 4.3.

- **Class 4 Claims are Allowed Priority Tax Claims** arising under Bankruptcy Code § 507(a)(8). The Debtor asserts that Class 4 is impaired and allows it to vote on the Plan. The Plan provides that the Debtor and Mr. Newman may, in their sole discretion, choose to make partial payments on these claims on a pro rata basis. Plan § 4.4.

- **Class 5 Claims are Allowed Unsecured Claims.**

- **Class 6 Claims are Allowed Bankruptcy Code § 503(b)(9) Claims.** The Debtor asserts that Class 6 is impaired and allows it to vote on the Plan. The Plan provides that it will go effective even if there is not sufficient cash to pay these claims in full on the Effective Date.

- **Class 7 Claims are Allowed Interest in the Debtor**.

The Plan further provides that Mr. Newman will act as the Dissolution Agent. Plan ¶ 31. The Dissolution Agent is responsible for liquidating the Debtor's remaining assets, bringing avoidance actions, objecting to claims, and making distributions to claimants. Plan §§ 7.1, 7.4, 7.5 & 8.1. Mr. Newman and entities controlled by him allegedly hold in excess of $2 million in unsecured claims.[1] This constitutes approximately 18% of the total unsecured claims in this case. The Plan ends any effective creditor oversight of the implementation of the Plan by failing to establish a post-confirmation committee and dissolving the current Committee.

### III.  ARGUMENT

The requirements for confirmation of a plan under Chapter 11 are exacting. To confirm the Plan, the Court must find that the Plan and the Debtor are in compliance with each requirement for confirmation under Bankruptcy Code § 1129(a). *See In re Win Trucking, Inc.*,

---

[1] The Committee has objected to these claims for purposes of Plan voting and voting on the Committee plan. A hearing is scheduled on February 2 for this objection.

236 B.R. 774, 778 (Bankr. D. Utah 1999) ("[I]f either the plan does not comply or the plan proponent has not complied with the applicable provision of Title 11, the plan cannot be confirmed."); *In re S. Beach Sec., Inc.*, 376 B.R. 881, 887 (Bankr. N.D. Ill. 2007); *Tenn-Fla Partners v. First Union Nat'l Bank of Fla.*, 229 B.R. 720 (W.D. Tenn. 1999).

Moreover, it is the plan proponent that bears the burden of proving that each requirement under section 1129 has been satisfied. *In re Revco D.S., Inc.*, 131 B.R. 615, 620 (Bankr. N.D. Ohio 1990) ("The proponent of a plan of reorganization has the burden of producing evidence that the plan satisfies section 1129(a)."); *In re Beare Co.*, 177 B.R. 886, 889 (Bankr. W.D. Tenn. 1994) ("The Debtor has the ultimate burden of persuading this Court that [its] plan is capable of confirmation."); *In re Trevarrow Lanes*, 183 B.R. 475, 479 (Bankr. E.D. Mich. 1995) (noting that "Debtors bore the burden of proving by a preponderance of the evidence that their respective plans satisfy the requirements for confirmation."); *see also Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. Ltd. II (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160, 1165 (5th Cir. 1993) (stating that the Bankruptcy Court must find that the debtors have satisfied all provisions of section 1129).

Thus, the Debtor is obliged to present proof and evidence as to how these requirements have been met, and the Committee reserves its right to object to the extent the evidence adduced at the confirmation hearing is insufficient for that purpose.

### A. The Debtor's Plan Improperly Classifies, Impairs, and Provides Voting Rights to Classes 4 and 6.

Bankruptcy Code § 1129(a)(1) requires compliance with §§ 1122 and 1123, which govern, respectively, the classification of claims and interests and the contents of a plan of reorganization. S. Rep. No. 95-989, at 126 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5913 (1978); H.R. Rep. No. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6368

(1977); *see also In re Nutritional Sourcing Corp.*, 398 B.R. 816, 824 (Bankr. D. Del. 2008); *Mabey v. Sw. Elec. Power Co. (In re Cajun Elec. Power Coop., Inc.)*, 150 F.3d 503, 513 n.3; *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2d. Cir. 1988) (finding that § 1129(a)(1) requires compliance with §§ 1122 and 1123 of the Bankruptcy Code).

The plan proponent has the burden of justifying its classification scheme and showing that it is not improper. "[M]anipulation of classes of claims in order to artificially create an accepting class of impaired claims is not permitted." *In re Griswold Bldg.*, 420 B.R. 666, 707 (Bankr. E.D. Mich. 2009). If there is any doubt, the plan proponent "must advance a legitimate reason supported by credible proof," showing that the plan's classification scheme was not designed to gerrymander an affirmative vote of an impaired class. *See id.* (quoting *Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Court (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996)); *see also In re Porcelli*, 319 B.R. 8, 10 (Bankr. M.D. Fla. 2004). Thus, if a plan's classification scheme appears facially improper, and if the proponent does not provide credible proof to show that the scheme is legitimate under the Bankruptcy Code, the plan may not be confirmed.

> **1.    *Section 507(a)(8) Priority Tax Claims Cannot be Classified, Impaired, or Allowed to Vote.***

The Debtor attempts to place claims arising under Bankruptcy Code § 507(a)(8) in Class 4, deeming the class impaired and entitled to vote on the plan. Plan, § 1.4. This is improper because § 507(a)(8) claims cannot (i) be placed into a class pursuant Bankruptcy Code § 1123(a)(1), (ii) be impaired, or (iii) vote on a plan.

> **a.    Section 507(a)(8) claims cannot be classified.**

A plan may not classify tax claims granted priority under 11 U.S.C. § 507(a)(8). Bankruptcy Code § 1123(a)(1) provides:

> (a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall –

> (1) designate, subject to section 1122 of this title, classes of claims, *other than claims* of a kind specified in section 507(a)(2), 507(a)(3), or *507(a)(8)* of this title, and classes of interest.

11 U.S.C. § 1123(a)(1) (emphasis added).

Numerous courts have held that § 507(a)(8) claims may not be placed into a class. *In re Curtis Ctr. Ltd. P'ship*, 195 B.R. 631, 639 (Bankr. E.D. Pa. 1996) (*citing In re Union Meeting Partners,* 165 B.R. 553, 568-69 (Bankr. E.D. Pa. 1994), *aff'd*, 52 F.3d 317 (3d Cir. 1995)); *Travelers Ins. Co. v. Bryson Props., XVIII (In re Bryson Props., XVIII)*, 961 F.2d 496, 501 n.8 (4th Cir. 1992)); *In re Sullivan*, 26 B.R. 677, 678 (Bankr. W.D.N.Y. 1982).

Section 1129(a)(9)(C) explicitly specifies how § 507(a)(8) claims are to be treated. This treatment is mandated irrespective of whether such a putative class might vote to accept or reject a plan's proposed treatment. For this reason, a majority vote by claims holders in such a class would not bind other claims holders to impaired treatment. *E.g.*, *Principal Mut. Life Ins. Co. v. Lakeside Assocs., L.P. (In re DeLuca)*, 194 B.R. 797, 806 (Bankr. E.D. Va. 1996) (quoting *Bryson Props., XVIII*, 961 F.2d at 501 n.7) ("We agree that priority tax claimants, which receive preferential treatment under the Code (see 11 U.S.C. § 1129(a)(9)(C)), are not an impaired class that can accept a plan and bind other truly impaired creditors to a cram down."). As there is no reason to classify tax claims, 11 U.S.C. § 1123(a)(1) disallows their classification. The Plan's classification of § 507(a)(8) claims is thus improper.

      **b.  Section 507(a)(8) claims can neither be impaired nor vote.**

Moreover, since a confirmable plan may not impair claims arising under § 507(a)(8), holders of such claims cannot vote on a plan. Under the Bankruptcy Code, holders of such claims must receive regular installment payments, over a period not longer than five years, of a total value equal to the amount of their claims. 11 U.S.C. § 1129(a)(9)(C). This treatment

renders them unimpaired. *La. Nat'l Bank v. Sandy Ridge Dev. Corp. (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346, 1353 (5th Cir. 1989) ("Regarding the tax claims, we can discern no reason why these claims are impaired other than the plan's bald statement that '[t]his class . . . will be deemed impaired.'"); *In re Polytherm Indus., Inc.*, 33 B.R. 823, 837 (W.D. Wis. 1983) ("[T]he statutorily prescribed treatment [of tax claims] comports with unimpaired status."); *see also Cont'l Sec. Corp. v. Shenandoah Nursing Home P'ship*, 188 B.R. 205, 215 (W.D. Va. 1995) (holding that "a Plan can 'alter' a creditor's legal, contractual, and equitable rights and still leave it 'unimpaired' by providing for payment in full of the creditor's allowed claim."); 7 COLLIER ON BANKRUPTCY ¶ 1129.02[9][c][i] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("[Unsecured tax claims] receive full payment, and thus are not impaired."). As tax claims are unimpaired, a class of such claims, if it could be created, would be deemed conclusively to have accepted the plan. 11 U.S.C. § 1126(f). Even if a plan could somehow impair such claims and still be confirmed, a vote by such a class to accept would not bind other creditors. *Deluca*, 194 B.R. at 806. As such, § 507(a)(8) claims may neither be impaired nor vote.

### 2. Section § 503(b)(9) Administrative Expenses Cannot be Classified, Impaired, or Allowed to Vote.

Similar to its treatment of tax claims, the Debtor attempts to place claims the Court has already allowed under 11 U.S.C. § 503(b)(9) into Class 6, deeming the class impaired and entitled to vote on the Plan.[2] Plan, § 1.6. This is improper because § 503(b)(9) claims are administrative expenses arising under 11 U.S.C. § 507(a)(2). Administrative expenses may neither be placed into a class nor impaired. As such, they may not vote on a plan.

---

[2] In its disclosure statement, the Debtor also describes these as administrative expenses. Doc. No. 879, Part V-B.

### a.    Section 503(b)(9) claims cannot be classified.

Claims filed under 11 U.S.C. § 503(b)(9) and allowed by the Debtor are "administrative expenses allowed under section 503(b) of this title." 11 U.S.C. § 507(a)(2). Pursuant to 1123(a)(1), "a plan shall designate, subject to section 1122 of this title, classes of claims, *other than claims of a kind specified in section 507(a)(2)* . . . ." 11 U.S.C. § 1123(a)(1) (emphasis added).

Further, pursuant to § 1129(a)(9), the holders of administrative claims under § 507(a)(2) must

> be paid "cash equal to the allowed amount of such claim" on the "effective date of the plan," unless the holder of a particular claim agrees to different treatment. With respect to these types of priority claims, paragraph [1129(a)](9) constitutes the only essential confirmation requirement. *Section 1123(a)(1) recognizes this, and does not even allow such claims to be classified in the plan*, since there is no reason to create a class or classes for such claims in light of the fact that a majority of such classes cannot bind a minority to less favorable payment terms than those provided under section 1129(a)(9).

7 COLLIER ON BANKRUPTCY, *supra*, ¶ 1129.02[9][a] (emphasis added); *see also* 11 U.S.C. § 1123(a)(1); *Polytherm Indus.*, 33 B.R. at 837 (noting that administrative claims are not classified, and that even if they could be classified, "they would always be unimpaired and deemed to accept the plan . . . ."). Thus, classification of § 503(b)(9) claims is improper under the Bankruptcy Code.

### b.    Section 503(b)(9) claims can neither be impaired nor vote.

Section 503(b)(9) claims cannot constitute an accepting class for purposes of Bankruptcy Code § 1129(a)(10) because administrative claims "cannot be impaired, much less vote in favor of a plan." *In re Seasons Apartments, Ltd. P'ship*, 215 B.R. 953, 956 (Bankr. W.D. La. 1997); *see also Polytherm Indus.*, 33 B.R. at 837; *Boston Post Rd. Ltd. P'ship v. Fed. Deposit Ins. Corp.*

*(In re Boston Post Rd. Ltd. P'ship)*, 21 F.3d 477, 484 (2d Cir. 1994) (holding that administrative claims holders must be paid in full and thus are not entitled to vote on a plan); *Barakat v. Life Ins. Co. of Va. (In re Barakat)*, 99 F.3d 1520, 1528 (9th Cir. 1996) (holding that holders of administrative claims "are not entitled to vote on a plan of reorganization as they are entitled to be paid in full, pursuant to 11 U.S.C. § 1129(a)(9)(A)").

For this reason, section 1126(a) provides only for voting by holders of claims allowed under 11 U.S.C. § 502, not for voting by holders of claims allowed under 11 U.S.C. § 503. Section 1126 states that "[t]he holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." 11 U.S.C. § 1126(a). Section 502 does not govern allowance of administrative claims, however, as these are allowed under § 503. *In re Plastech Engineered Prods., Inc.*, 394 B.R. 147, 161 (Bankr. E.D. Mich. 2008) (holding that "allowance of claims under § 502 is entirely separate from the allowance of administrative expenses under § 503.") *see also ASM Capital, LP v. Ames Dept. Stores, Inc. (In re Ames Dept. Stores, Inc.)*, 582 F.3d 422, 429 (2d Cir. 2009) ("Section 502, in conjunction with section 501, provides a procedure for allowance of claims that is entirely separate from the procedure for allowance of administrative expenses under section 503.") As the *Plastech Engineered Products* court explained,

> Section 503 says nothing about filing administrative expenses as claims under § 501 nor their allowance under § 502. Section 503 provides . . . the sole method for allowance of an administrative expense. The provisions governing filing, payment and allowance of administrative expenses are self-contained with § 503 and do not depend upon nor are they limited by the filing and allowance provisions for pre-petition claims and those specifically identified post-petition claims under § 501 and § 502.

*Plastech Engineered Prods.*, 394 B.R. at 161. Thus, § 1126(a)'s provision for voting for holders of claims under § 502 claims does not apply to holders of claims under § 503. Section 503(b)(9) claims may neither be impaired nor are entitled to vote on a plan.

### B.     The Plan Improperly Impairs Classes 2 and 3.

For similar reasons, the Debtor's Plan improperly impairs classes 2 and 3. The purported classes contain claims of the kind specified in § 507(a), subparagraphs (4), (5), and (7), the treatment of which is mandated by the Bankruptcy Code. 11 U.S.C. § 1129(a)(9)(B). Such claims must either be paid in full on the Plan's effective date or else receive deferred payments equal to their allowed amount. *Id.* Such treatment does not comport with impaired status. *Barakat*, 99 F.3d at 1527; *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. Ltd. II (In re Briscoe Enters., Ltd. II)*, 138 B.R. 795, 815 (Bankr. N.D. Tex. 1992) (*rev'd on other grounds*). Thus, the Plan's designation of these classes as impaired is improper.

### C.     The Plan's Treatment of Claims in Classes 2, 3, 4, and 6 is Improper.

Even assuming *arguendo* that the Debtor were allowed to classify and impair administrative expenses and tax claims, the Debtor's planned treatment of such claims falls short of the minimum treatment statutorily required under the Bankruptcy Code. Likewise, the treatment of priority deposit and employee claims also violates the Code. The mandated treatment of these claims is specified in 11 U.S.C. § 1129(a)(9):

> Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that--
>
> (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;
>
> (B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive--
>
>> (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

      (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

  (C) with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash--

      (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

      (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and

      (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)) . . . .

11 U.S.C. § 1129(a)(9)(A)-(C). Compliance with this section is an essential confirmation requirement. 7 COLLIER ON BANKRUPTCY, *supra*, ¶ 1129.02[9][a]. The Debtor's Plan does not provide the treatment required by the Bankruptcy Code, however, and thus is unconfirmable.

      **1.** *Class 6 Administrative Claims Must Be Paid in Full Unless Each Claim Holder Agrees to Other Treatment, Yet the Plan Does Not Propose This.*

A confirmable plan must pay claims arising under 11 U.S.C. § 503(b)(9) in full on the plan's effective date unless the claims holder agrees differently. Claims arising under § 503(b) are administrative claims and are paid according to § 507(a)(2). 11 U.S.C. § 507(a)(2). The treatment of such claims is dictated by statute. 11 U.S.C. § 1129(a)(9)(A). Each such claim must be paid in full in cash on the effective date unless a different agreement is reached with the claim holder. *Id.*; *see also, e.g., Polytherm Indus.,* 33 B.R. at 837.

The Plan puts § 503(b)(9) claims in Class 6, proposing to pay them in full and on time—*if* there is sufficient cash, promising only that at least $1 million will be available. Plan, § 2.4. Pursuant to § 1129(a)(9)(a), the Debtor's proposed treatment of these claims violates the Bankruptcy Code. For this reason, the Debtor's Plan cannot be confirmed.

> **2.**   *Priority Employee and Deposit Claims in Classes 2 and 3 Either Must Be Paid in Cash on the Plan's Effective Date or Else They Must Be Paid in Full, with Interest, over Time.*

The Debtor puts priority employee and deposit claims arising under § 507(a)(4), (5), and (7) into Classes 2 and 3.  Plan, §§ 1.2, 1.3.  If classes containing such claims reject the Plan, they must be paid in full in cash on the effective date.  11 U.S.C. § 1129(a)(9)(B).  If they accept the Plan, they either may be paid in full on the effective date or else receive deferred cash payments that have, as of the effective date, a net present value equal to the amount of the claims.  *Id.*

The Debtor's Plan does not follow these mandatory provisions.  The Plan makes no promise that it will pay claims in these classes in full, should these classes reject the Plan.  In fact, it expressly states that there may not be sufficient cash as of the effective date to pay these claims in full.  Plan, §§ 4.2, 4.3.  Even if the classes should accept the Plan, the Plan makes no provision for payment of interest, which would be required to ensure that the net present value of the payment stream is equal to the amount of the claim as of the effective date.  In fact, since no explicit payment stream is provided, there is no way for the Court to ensure that this statutory requirement is met.  For these reasons, the Plan's treatment of these classes does not comply with the Bankruptcy Code and the Plan cannot be confirmed.

> **3.**   *Payments to Class 4 Priority Tax Claimants Must Be Made in Regular Installments.*

Class 4 consists of priority tax claims, each of which either must be (1) paid in full in cash as of the effective date or (2) paid in "regular installments," with interest, over not more than five years, such that the payment stream has a net present value, as of the effective date, equal to the amount of the claim.  11 U.S.C. § 1129(a)(9)(C).  The Debtor's Plan promises that it will pay these claims on the effective date in cash—unless it does not have enough cash, in which case, it will pay the claims in full, with interest, over a period ending not later than five

years after the Petition Date. Plan, § 4.4. Partial payments may be made in the Debtor's and Dissolution Agent's sole discretion. *Id.* While this treatment at least allows for interest, it still falls short of Bankruptcy Code requirements. The Bankruptcy Code calls for "regular installments," not payments whenever the Debtor and Dissolution Agent, in their sole discretion, deem that they have sufficient cash on hand to afford it. The Plan's treatment of these claims does not comply with the Bankruptcy Code and the Plan cannot be confirmed.

### D. The Debtor's Classification Scheme Brings Its Good Faith into Question.

The Debtor's classification scheme raises sufficient questions to call its good faith in proposing the plan into question. For example, since there is no legitimate purpose in classifying tax claims, doing so may indicate that a plan was not proposed in good faith. *Sandy Ridge Dev. Corp.*, 881 F.2d at 1353 ("We also share the bankruptcy court's concern with Sandy Ridge's apparent lack of good faith . . . . [I]t appears that the plan deemed the tax creditors and Richards to be impaired for the sole purpose of having their votes in favor of the plan . . . ."); *see also Griswold Bldg.*, 420 B.R. at 707. Thus, such a classification is more than simply "improper"; it calls the proponent's good faith into question. Similarly, the Debtor's other violations of the Bankruptcy Code, which appear to have been done to create an accepting class to enable confirmation, create cause to question the Debtor's good faith in proposing such a scheme. At the very least, the Debtor is required to prove that there are legitimate reasons behind the classification scheme it has chosen. *Id.*; *Porcelli*, 319 B.R. at 10.

### IV. CONCLUSION

Fearing that its Plan would not receive the requisite creditor support, the Debtor's "hail Mary" attempt to obtain approval of one impaired class proposes classes of claims that cannot be classified, impaired or cast a ballot. The Debtor's Plan does not provide the required statutory treatment for the obligations it improperly treats as impaired claims. All of these actions are also

inconsistent with the submission of a plan in good faith, as the Bankruptcy Code requires. Confirmation of the Plan must be denied.

        Respectfully submitted,

        MILLER, CANFIELD, PADDOCK & STONE, PLC

        By: /s/ Michael H. Traison
            Michael H. Traison (IL Bar # 6285518)
            Marc N. Swanson (MI Bar # 71149)
            225 W. Washington, Suite 2600
            Chicago, IL 60606
            Phone: 312.860.4230
            traison@millercanfield.com

        -and-

        THE NIXON LAW FIRM

        By: /s/ David G. Nixon
            David G. Nixon (ABA #88048)
            2340 Green Acres Road, Suite 12
            Fayetteville, Arkansas 72703
            Phone: 479.582.0020
            david@nixonlaw.com

        Attorneys for the Committee

Dated: January 12, 2011

**IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

IN RE:

NATIONAL HOME CENTERS, INC.,                             CASE NO.  09-BK-76195

    Debtor.
_____

    The undersigned hereby certifies that on January 12, 2011, prior to 4:00 pm Central Time, the foregoing ***OFFICIAL COMMITTEE OF UNSECURED CREDITOR'S OBJECTION TO DEBTOR'S PLAN*** was served upon the following parties via electronic mail:

The Debtor's Counsel:
Wright, Lindsey & Jennings, LLP
Charles T. Coleman at ccoleman@wlj.com

The UST's Counsel:
Richard H. Sforzini at Richard.H.Sforzini@usdoj.gov


Dated:  January 12, 2011


                                      By: /s/ Michael H. Traison
                                          Michael H. Traison (IL Bar # 6285518)
                                          Marc N. Swanson (MI Bar # 71149)
                                          225 W. Washington, Suite 2600
                                          Chicago, IL 60606
                                          Phone: 312.860.4230
                                          traison@millercanfield.com