IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE:  NATIONAL HOME CENTERS, INC.,                   CASE NO. 5:09-bk-76195
           Debtor                                                                    CHAPTER 11

### DEBTOR'S AMENDED CHAPTER 11 PLAN OF LIQUIDATION

National Home Centers, Inc. (the "Debtor" or "NHC") proposes the following

Amended Plan of Liquidation (the "Plan") pursuant to the provisions of Chapter 11 of the

Bankruptcy Code.

## INTRODUCTION

On December 8, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for

relief under Chapter 11 of the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the

Bankruptcy Code, the Debtor is continuing to wind down its businesses and manage its assets

as debtor-in-possession. No trustee or examiner has been appointed in the Debtor's case. A

committee of unsecured creditors has been appointed.

This Plan proposes that all of the Debtor's assets having value be liquidated and that the

cash collected be distributed to creditors pursuant to the Plan and Bankruptcy Code.

## DEFINITIONS

For purposes of this Plan, the following terms shall have the respective meanings set

forth herein (such meanings to be equally applicable to both the singular and plural forms of

such terms defined unless otherwise stated). A term used in the Plan and not defined herein but

that is defined in the Bankruptcy Code has the meaning set forth in the Code.

1.     "§ 503(b)(9) Claim" shall mean any Claim or request for allowance of an

administrative expense arising under 11 U.S.C. § 503(b)(9).

911497-v1

2.     "503(b)(9) Claim Bar Date" shall mean March 19, 2010, the deadline set for filing 503(b)(9) Claims established by Court order dated February 12, 2010.

3.     "Administrative Expense" shall mean any cost or expense of administration in connection with this Chapter 11 Case having priority in accordance with § 330, § 503(b), § 507(a)(2) or § 507(b) of the Code, including, but not limited to, any actual and necessary expenses of operating or liquidating the business of the Debtor as allowed by the Court and all allowances of compensation or reimbursement of expenses to the extent allowed by the Code and the Rules upon Final Order of the Court; provided, however, that § 503(b)(9) Claims are excluded from the definition of "Administrative Expense."

4.     "Administrative Expense Bar Date" shall mean the date that is thirty (30) days after the Effective Date, provided that if this date falls on a weekend or holiday, then the deadline shall be extended to the first business day after the ninetieth day.

5.     "Allowed Administrative Expense" shall mean any Administrative Expense that is timely and properly asserted pursuant to Article II of the Plan and that is not disputed by the Debtor, or that has been Allowed by Final Order of the Court.

6.     "Allowed Claim" or "Allowed" with respect to a Claim shall mean (a) any undisputed, liquidated and non-contingent Claim whose amount was properly listed in the Debtor's Schedules and for which no contrary proof of claim has been filed, and that is not otherwise a Disputed Claim, or (b) any Claim that was timely filed prior to the applicable Bar Date with the Clerk of the Court by the Holder of the Claim and which is not a Disputed Claim and has not been disallowed by the Court, or (c) any Claim that has been allowed by Final Order or Final Judgment of the Court.

7.     "Allowed Interest" shall mean (a) an Interest in the Debtor to the extent that such Interest is listed as such in the Schedules or Statement of Financial Affairs of the Debtor on the Confirmation Date, provided however that a timely filed Proof of Interest shall supersede any such listing and, in either case, not a Disputed Interest, or (b) any Interest that has been allowed by Final Order or Final Judgment of the Court.

8.     "Avoidance Actions" shall mean any and all Cause of Action arising under Chapter 5 of the Bankruptcy Code, including without limitation any and all actions to avoid and recover overpayments, preferential transfers, fraudulent transfers, and any and all turnover actions to recover assets and other credits due to the Debtor, regardless of whether they arise prepetition or after the Petition Date.

9.     "Bankruptcy Code" shall mean Title 11 of the United States Code, 11 U.S.C. § 101 et, seq., and any amendments thereto.

10.     "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

11.     "Bar Date" shall include the meanings set forth herein for "Claims Bar Date," "Rejection Bar Date," "§ 503(b)(9) Claim Bar Date" and "Administrative Expense Bar Date."

12.     "Case" or "Chapter 11 Case" shall mean the above-captioned bankruptcy case filed by the Debtor under Chapter 11 of the Bankruptcy Code.

13.     "Cash" shall mean cash, cash equivalents, money market funds, and other readily marketable securities or instruments, including but not limited to, proceeds, direct obligations of the United States of America, certificates of deposits issued by banks, and commercial paper of any entity.

14.     "Causes of Action" shall mean all rights, claims and causes of action of any kind or nature, whether legal or equitable, of the Debtor's estate for affirmative recovery of

damages, Cash or other property belonging to the estate (whether such causes of action are the subject of presently pending lawsuits, adversary proceedings or appeals, or otherwise) which accrued before the Confirmation Date or may thereafter accrue, whether from matters that occurred prior to or after the Confirmation Date, including, but not limited to, any state law rights or claims and any and all Avoidance Actions.

15.     "Claim" shall mean any claim as defined by § 101(5) of the Code and any other debt or obligation of whatever kind or nature held against the Debtor as of the Petition Date, including without limitation Priority Employee Claims, Priority Deposit Claims, Priority Tax Claims, and § 503(b)(9) Claims.

16.     "Claims Account" shall mean the bank account or accounts in the name of the Debtor into which Cash on hand as of the Confirmation Date of the Plan and received thereafter is deposited and from which Distributions are made.

17.     "Claims Bar Date" shall mean September 2, 2010, established by the court order entered July 26, 2010, the deadline by which all proofs of claim for unscheduled debts or for debts scheduled as disputed, contingent, or unliquidated must be filed with the Clerk of the Bankruptcy Court. Should the Debtor amend its Schedules in the future to add a Creditor or change the amount of any claim or change a claim to disputed, contingent, or unliquidated, "Claims Bar Date" shall also mean, only with respect to those claims affected by the amendment, the date that is 30 days from service of notice of the amendment to the Schedules, provided that if the 30th day falls on a weekend or Court holiday, then the deadline shall be extended to the first business day after the 30th day, and any Holder of an amended Claim shall file a proof of claim with the Clerk of the Court by such date or be forever barred from doing so.

18.    "Claimant" shall mean any Holder of a Claim or Interest that arose on or before the Petition Date or a Claim against the Debtor's estate of a kind specified in § 502(g), § 502(h) or § 502(i) of the Code.

19.    "Clarksville Real Property" shall mean the two parcels of real property located in Clarksville, Arkansas with the address of 1003 Interstate Drive and 304 W. Main Street, Clarksville, Arkansas.

20.    "Class" shall mean a category of Claims or Interests, the Holders of which hold substantially similar Claims or Interests.

21.    "Code" shall mean Title 11 of the United States Code, 11 U.S.C. § 101 et seq., and any amendments thereto.

22.    "Confirmation Date" shall mean the date upon which the Confirmation Order is entered by the Court.

23.    "Confirmation Order" shall mean the Final Order entered by the Court confirming the Plan.

24.    "NHC" has the meaning set forth in the introductory paragraph of the Plan.

25.    "Court" shall mean the United States Bankruptcy Court for the Western District of Arkansas, Fayetteville Division, including any bankruptcy judge thereof, and any court having competent jurisdiction to review orders of, or to hear appeals from the bankruptcy judge(s) thereof.

26.    "Debtor" has the meaning set forth in the introductory paragraph of the Plan.

27.    "Debtor's Assets" shall mean all the property, rights, claims and interests of the Debtor, including, without limitation, all real property, all Personal Property, whether tangible or intangible, and any proceeds thereof, all Causes of Action and Avoidance Actions.

28.    "Deficiency Claim" shall mean a Claim against the Debtor equal to the amount by which the aggregate Claim exceeds the sum of (a) any setoff rights of the Holder against the Debtor, plus (b) the net proceeds realized from the disposition of the collateral securing such Claim or, if such collateral is not liquidated to Cash, the value of the interest of the Holder in Debtor's interest in the collateral securing such Claim; provided, however, that if the Holder of such Claim makes the election provided in § 1111(b) of the Code, or such Claim is a non-recourse claim or obligation, there shall be no Deficiency Claim with respect to such Claim.

29.    "Disclosure Statement" shall mean the Debtor's disclosure statement prepared in connection with the Debtor's Plan pursuant to § 1125 of the Bankruptcy Code, as may be modified or amended from time to time, including all exhibits and attachments thereto.

30.    "Disputed" with regard to a Claim or Interest shall mean a Claim or Interest as to which written objection to the allowance or classification thereof, in whole or in part, has been timely filed by any party in interest or as to which the Dissolution Agent believes in good faith that an objection should be filed prior to any deadline for objecting to Claims or Interests and as to which no Final Order or Final Judgment sustaining such objection or allowing or disallowing such Claim or Interest, in whole or in part, has been entered by the Court.

31.    "Dissolution Agent" shall mean the person designated by the Debtor pursuant to the Plan, who shall be responsible for implementing this Plan for the benefit of all Holders of Allowed Claims and Allowed Interests as provided by this Plan, subject to the continued jurisdiction of the Court, and any properly appointed successor. The initial Dissolution Agent shall be Dwain Newman.

32.    "Distribution Date" shall mean the date or dates on which the Dissolution Agent, in his or her sole discretion, makes a distribution to Claimants under this Plan.

33.     "Effective Date" shall mean the date that is the later of: (i)  30 days after the date on which the Confirmation Order becomes a Final Order or, if an appeal of the Confirmation Order is filed but no stay of the Confirmation Order has been entered, the Debtor may waive the requirement that the Confirmation Order be a Final Order and may, in its sole discretion, file with the Court a notice declaring that this requirement has been waived and establishing the Effective Date as of the date so designated in the notice and (ii) ten days after each of the following conditions shall have been satisfied in full in accordance with provisions specified: (a) The Bankruptcy Court shall have approved a disclosure statement with respect to this Plan; (b) The Confirmation Order shall be in form and substance acceptable to the Debtor in its sole discretion; (c) The Confirmation Order shall have been entered by the bankruptcy court and shall not be subject to any stay of effectiveness; (d) The Debtor has, in the reasonable judgment of the Dissolution Agent, sufficient Cash to pay all Allowed Claims that, pursuant to the Bankruptcy Code and this Plan must be paid on or as soon as reasonably practicable after the Effective Date of a plan of liquidation. The Debtor will file notice of the Effective Date with the Court, but the Plan does not require the Debtor to serve notice of this date.

34.     "Final Distribution" shall mean the final distribution on account of Allowed Claims pursuant to the order of priorities established herein.

35.     "Final Order" or "Final Judgment" shall mean an order or judgment of the Court (a) as to which the time to appeal, petition for certiorari, or seek re-argument or rehearing has expired and as to which no appeal, re-argument, certiorari petition, or rehearing is pending, or (b) if an appeal, re-argument, certiorari or rehearing thereof has been sought, the order of the Court has been affirmed by the highest court to which the order was appealed

or from which the re-argument or rehearing was sought, or certiorari has been denied, or the appeal is dismissed or rendered moot, and the time to take any further appeal or to seek certiorari or further re-argument or rehearing has expired.

36.     "Holder" shall mean the Person holding a Claim or Interest which was listed in the Debtor's Schedules or filed with the Court or the Person to whom such Claim or Interest was last transferred by Final Order or Final Judgment of the Court substituting the transferee for the prior Holder thereof.

37.     "Interest" shall mean the legal, equitable and contractual rights resulting from being a holder of any equity interest in the Debtor, including but not limited to, any shares of stock issued by the Debtor and the certificates, if any, representing such Interests.

38.     "Net Proceeds" shall mean the net amounts of Cash received by the Debtor before the Effective Date and by the Dissolution Agent on or after the Effective Date, from the pursuit of Causes of Action or Avoidance Actions and from the sale, lease, disposition, liquidation or collection of all other of the Debtor's Assets, and from any insurance proceeds there from and any amounts to be received from the sale, lease, disposition, liquidation or collection of said property, less all liabilities, charges, offsets and encumbrances required to be discharged with respect to such assets and in connection with the sale, lease, disposition, liquidation or collection thereof.

39.     "Paid in Full," "Payment in Full," or "Pay in Full" shall mean, with respect to an Allowed Claim or Allowed Administrative Expense, either (a) the payment of the amount required by the Bankruptcy Code or a Final Order of the Court to satisfy the Allowed Claim or Allowed Administrative Expense in full, or (b) the payment of an Allowed Claim or Allowed Administrative Expense in accordance with an agreement entered into between either Debtor

and Holder prior to the Petition Date, or (c) the satisfaction and release of an Allowed Claim or Allowed Administrative Expense by any other means agreed by the Holder or approved by the Court.

40.     "Personal Property" shall mean all Cash; accounts receivable; contract rights (including all insurance policies); claims; Causes of Action and general intangibles; all deposits and prepayments for insurance, utilities, licenses, taxes, rents, and all other deposits and prepayments; leasehold improvements, office equipment, computer equipment, furniture, fixtures, materials, supplies, records, and all other tangible or intangible personal property used for the operation of the Debtor's businesses or owned by the Debtor.

41.     "Person" shall mean an individual, corporation, limited liability company, entity, partnership, joint venture, trust, estate, unincorporated organization or governmental unit, or any agency or political subdivision of a governmental unit.

42.     "Petition Date" shall mean December 8, 2009, the date Debtor filed a petition seeking relief under the Bankruptcy Code and commenced this Chapter 11 Case.

43.     "Plan" shall mean this Plan of Liquidation and any amendment thereto and modification thereof.

44.     "Post-Petition" shall mean the time on or after the Petition Date.

45.     "Post-Effective Date Expenses" shall mean all expenses reasonably incurred subsequent to the Effective Date in implementing this Plan and winding up the Debtor's estate, including but not limited to (a) the amounts identified in the definition of "Net Proceeds" as set forth above to be deducted from the gross proceeds received from the sale, lease, disposition, liquidation and collection of the Debtor's Assets after the Effective Date (b) all expenses incurred in connection with the winding up of the estate; (c) all amounts due to the Dissolution

Agent and the employees and agents retained by him or her; (d) fees and expenses of counsel, accountants and other professionals hired by the Dissolution Agent; and (e) fees and expenses of counsel for the Oversight Committee in an amount not to exceed $60,000 as set forth in paragraph 15.3 herein.

46.     "Pre-Petition" shall mean the time prior to the Petition Date.

47.     "Priority Employee Claim" shall mean an Allowed Claim entitled to priority under §§ 507(a)(4) or (5) of the Bankruptcy Code.

48.     "Priority Deposit Claim" shall mean an Allowed Claim entitled to Priority under § 507(a)(7) of the Bankruptcy Code.

49.     "Priority Tax Claim" shall mean an Allowed Claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

50.     "Pro Rata" shall mean in the same proportion that the amount of an Allowed Claim in any Class of Claims bears to the aggregate amount of all Claims in such Class, including in such aggregate amount both the Allowed Claims and any then unresolved Disputed Claims which may apply to that Class of Claims or Interests as of the date of any distribution payment made pursuant to this Plan.

51.     "Rejection Bar Date" shall mean the deadline by which all parties holding claims arising from, or as a consequence of, rejection of executory contracts or unexpired leases must file proofs of claims, which is the later of (a) 30 days after the date of the order rejecting said contract or lease or (b) the Claims Bar Date, provided that if this date falls on a weekend or holiday, then the deadline shall be extended to the first business day after the thirtieth day. With regard to executory contracts or unexpired leases deemed rejected by the

Plan and unexpired leases rejected as a matter of law pursuant to § 365(d)(4) of the Bankruptcy Code, the Rejection Bar Date shall be 30 days from the Confirmation Date.

52.     "Remaining Assets" shall mean the Clarksville Real Property and any and all Personal Property, Causes of Action and Avoidance Actions, to the extent any of the foregoing remains in the Debtor's estate and is unliquidated as of or after the Effective Date.

53.     "Rules" shall mean all rules applicable to or adopted by the Court, including but not limited to the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the Local Rules of the Court.

54.     "Schedules" shall mean part or all of the schedules of assets and liabilities filed by the Debtor on January 25, 2010, and any subsequently-filed amendments thereof.

55.     "Secured Claim" shall mean an Allowed Claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to a valid right of setoff under § 553 of the Code, to the extent of the value, determined in accordance with § 506(a) and § 506(b) of the Code, of the interest of the Holder of such Allowed Claim in the Debtor's interest in such property, or to the extent of the amount subject to such setoff, as the case may be, and reduced by such further amount or amounts, if any, as may be determined by the Court after notice and a hearing to be the reasonable and necessary costs and expenses of preserving and disposing of such asset pursuant to § 506(c) of the Code.

56.     "Statement of Financial Affairs" shall mean the statement of financial affairs and all attachments thereto filed by the Debtor on January 25, 2010, and any subsequently-filed amendments thereof.

57.    "Unsecured Claim" shall mean any Claim which is not an Allowed Secured Claim, Allowed § 503(b)(9) Claim, Allowed Priority Tax Claim, Allowed Priority Employee Claim or Allowed Priority Deposit Claim, including but not limited to: (a) any Deficiency Claim; (b) Claims under executory contracts and unexpired leases that have been rejected, that are rejected under this Plan or that may be rejected prior to the Confirmation Date; (c) Claims of general trade creditors; (d) Claims for unpaid wages or benefits (including claims for vacation, sick and holiday pay) to the extent not entitled to be Priority Claims as provided herein; and (e) any other obligations, liabilities, damages or any other Claim held against the Debtor of every type and nature whatsoever incurred on or before the Petition Date, including without limitation, (i) all demands, causes of action, debts, obligations, liabilities (including contingent and unliquidated), and all other claims of any nature arising out of the conduct of the Debtor's business prior to the Petition Date, and the pre-petition sale of any other assets of Debtor; (ii) all demands, causes of action, regulatory actions, debts, obligations, liabilities (including contingent and unliquidated) and all other claims of any nature by any person, entity, or governmental authority arising out of circumstances occurring before the Petition Date; and (iii) claims and demands of any kind or nature made in lawsuits filed, or which could have been filed, Pre-Petition against the Debtor, whether or not the parties to such lawsuits have been given relief under § 362 of the Bankruptcy Code.

58.    "Unsecured Creditors Committee" shall mean the committee of unsecured creditors appointed in this Case pursuant to 11 U.S.C. § 1102.

Unless otherwise stated, all other terms shall have the meaning given to them under the Bankruptcy Code or Bankruptcy Rules.

## ARTICLE I

## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims against or Interests in the Debtor shall be bound by the provisions of the Plan and are hereby designated in the following Classes:

   1.1 Class 1 Claims: Class 1 consists of Allowed Secured Claims.  Debtor is not aware that any such claims exist, except to the extent of any rights of set off pursuant to 11 U.S.C. § 553.

   1.2 Class 2 Claims: Class 2 consists of Allowed Priority Employee Claims arising under sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code.

   1.3 Class 3 Claims Class 3 consists of Allowed Priority Deposit Claims arising under section 507(a)(7) of the Bankruptcy Code.

   1.4 Class 4 Claims:  Class 4 consists of Priority Tax Claims.

   1.5 Class 5 Claims: Class 5 consists of Allowed Unsecured Claims. This Class is impaired under the Plan.

   1.6 Class 6 Claims:  Class 6 consists of Claims determined to be Allowed § 503(b)(9) Claims.

   1.7 Class 7 Claims: Class 7 shall consist of all Allowed Interests in the Debtor. This Class is impaired under the Plan.

## ARTICLE II

## ADMINISTRATIVE EXPENSES AND § 503(b)(9) CLAIMS

   2.1 Administrative Expenses: The Debtor or the Dissolution Agent shall have the right to pay Administrative Expenses in the ordinary course of business prior to and for a period of up to the Effective Date. Any person or entity asserting that Debtor owes it an

Administrative Expense for services or product provided to the Debtor from the Petition Date through the Effective Date that has not been paid as of the end of this period must file and serve a motion or application for allowance of such expense in accordance with 11 U.S.C.§ 503(a) no later than the Administrative Expense Bar Date, or that Administrative Expense shall be deemed disallowed. Payment of any such expense without interest shall be made promptly after entry of a Final Order resolving the motion and determining the appropriate amount of the Administrative Expense. Any request for payment of Administrative Expense made by proof of claim rather than by motion or application shall be deemed disallowed, unless Debtor or Dissolution Agent in their sole discretion voluntarily decide to honor the request made by proof of claim.

      2.2      <u>Professional Fees</u>: Fees and expenses incurred prior to the Effective Date of professionals employed pursuant to section 327 of the Bankruptcy Code shall be paid in accordance with the Court's January 21, 2010 Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals.  Final fee applications for fees and expenses incurred before the Effective Date must be filed by no later than the Administrative Expense Bar Date.

      2.3      <u>Post-Effective Date Expenses</u>: The Debtor or the Dissolution Agent shall have the right to pay Post-Effective Date Expenses in the ordinary course of business, without the necessity of any Court approval, including without limitation professional fees. In the event that the Dissolution Agent notifies a Person demanding payment of a Post-Effective Date Expense that the demand is disputed, then the Person seeking payment must file with the Bankruptcy Court and serve a motion or application for allowance of such expense in accordance with 11 U.S.C. § 503(a) within thirty (30) days after the date on which written

notice of the dispute is served by the Dissolution Agent, or that Post-Effective Date Expense shall be deemed disallowed. Payment of any such expense without interest shall be made promptly after a Final Order resolving the motion and determining the appropriate amount of the Post-Effective Date Expense.

       2.4       § 503(b)(9) Claims: After reserving sufficient Cash to Pay in Full Administrative Expenses and Post Effective Date Expenses and subject to the provisions of Section 9.12 of this Plan, Allowed § 503(b)(9) Claims will be Paid in Full without interest (i) on the Effective Date or as soon as soon as reasonably practicable thereafter, but no later than twenty (20) days after the Effective Date, or (ii) within ten (10) days of the entry of a Final Order establishing the Allowed §503(b)(9) Claim if such date is after the Effective Date.

**ARTICLE III**

**TREATMENT OF CLAIMS NOT IMPAIRED UNDER THE PLAN**

       3.1     There are Claims that are not impaired under the Plan and their treatment is set forth in Article IV..

**ARTICLE IV**

**TREATMENT OF CLAIMS AND INTERESTS IMPAIRED AND UNIMPAIRED UNDER THE PLAN**

     The Debtor believes that all impaired Classes are provided treatment by the Plan that is similar to or better than claimants in said Classes would receive in the event of a Chapter 7 liquidation.

       4.1       Class 1 - Secured Claims: With respect to Allowed Secured Claims in Class 1, at the option of the Debtor or Dissolution Agent, each such Allowed Secured Claim shall either be (i) paid in cash the amount of its Allowed Secured Claim on the Effective Date

or, if Disputed, upon obtaining a Final Order determining the amount of its Allowed Secured Claim against Debtor, or at Debtor's option (ii) the collateral in which the Secured Creditor has a perfected security interest shall be surrendered to the Secured Creditor in complete satisfaction of its Allowed Class 1 Claim.

4.2     Class 2 - Priority Employee Claims: After reserving sufficient Cash to Pay in Full Administrative Expenses, § 503(b)(9) Claims and Post Effective Date Expenses, all Allowed Priority Employee Claims in Class 2 shall be Paid in Full without interest on or before Effective Date.  In the event the Dissolution Agent lacks sufficient Cash to pay Allowed Priority Employee Claims in full on that date, the Holders of Allowed Priority Employee Claims shall receive their Pro Rata share of Cash available for distribution until the Allowed Priority Employee Claims are Paid in Full.

4.3     Class 3 Priority Deposit Claims: After reserving sufficient Cash to Pay in Full Administrative Expenses, § 503(b)(9) Claims, Priority Employee Claims and Post Effective Date Expenses, all Allowed Priority Deposit Claims in Class 3 shall be Paid in Full without interest on or before Effective Date.  In the event the Dissolution Agent lacks sufficient Cash to pay Allowed Priority Deposit Claims in full on that date, the Holders of Allowed Priority Deposit Claims shall receive their Pro Rata share of Cash available for distribution until the Allowed Priority Deposit Claims are Paid in Full.

4.4     Class 4 Priority Tax Claims: After reserving sufficient Cash to Pay in Full Administrative Expenses, § 503(b)(9) Claims, Post-Effective Date Expenses, Priority Employee Claims and Priority Deposit Claims, all Allowed Priority Tax Claims will be Paid in Full on the later of the Effective Date, the entry of a Final Order allowing any Disputed Priority Tax Claim, and the date on which the Dissolution Agent determines that he has

sufficient Cash to pay these claims provided however, that all Allowed Priority Tax Claims must be Paid in Full over a period ending not later than five years after Petition Date. Notwithstanding anything herein to the contrary, the term Paid in Full shall include interest from the Confirmation Date at the Federal Post Judgment Rate with respect to Allowed Priority Tax Claims not paid on either the Effective Date or upon entry of a Final Order allowing such claims. Additionally, the Debtor and Dissolution Agent may in their sole discretion choose to make regular installment payments on Allowed Priority Tax Claims on a Pro Rata basis. No payment on account of any penalty related to or arising out of any Priority Tax Claims will be paid and any claim for such penalty shall be deemed waived, denied and disallowed upon Confirmation of this Plan.

      4.5        <u>Class 5 - Unsecured Claims</u>: Each Holder of an Allowed Unsecured Claim in Class 5 will periodically receive its Pro Rata share of the Cash available for distribution to this Class after reserving sufficient Cash to Pay in Full Administrative Expenses, § 503(b)(9) Claims, Post-Effective Date Expenses, Priority Employee Claims, Priority Deposit Claims and Priority Tax Claims. Holders of Class 5 Claims shall be entitled to receive such periodic distributions until Allowed Unsecured Claims in Class 5 are Paid in Full, without interest.

      4.6        <u>Class 6 – § 503(b)(9) Claims</u>: Claims determined to be Allowed § 503(b)(9) Claims shall be Paid in Full without interest within the time and in accordance with the provisions of paragraph 2.4 of this Plan.

      4.7        <u>Class 7 - Interest Holders</u>: Holders of Allowed Interests in the Debtor shall not receive any distribution under the Plan, and their interests in the Debtor shall be cancelled as of the Effective Date.

## ARTICLE V

## VOTING ON THE PLAN

5.1      Voting Classes: Classes 1, 2, 3, 4, 5 and 6 are entitled to vote on the

Plan.

a.      With respect to any Class of Claims which is impaired and

entitled to vote, such Class of Claims shall have accepted the Plan if it is

accepted by at least two-thirds (2/3) in amount and more than one-half (½) in

number of the Allowed Claims of such Class (excluding Insiders) that vote on

the Plan.

b.      If any impaired Class of Claims shall fail to accept the Plan in

accordance with Bankruptcy Code § 1129(a), the Debtor may request that the

Court confirm the Plan in accordance with Bankruptcy Code § 1129(b).

5.2      Non-voting Classes: Class 7 is an insider class and deemed to have

rejected the Plan. Class 7 is not entitled to vote on the Plan.

5.3      Counting Votes: With respect to any ballot that does not clearly

designate the Class to which it relates, the Debtor shall have the right to make that

determination, based on its knowledge of the Claim and the Debtor's business. Any such good

faith decision by the Debtor shall be final and binding.

5.4      Voting Confirmation Requirement: In order to confirm this Plan, in

addition to meeting the other requirements of section 1129 of the Code, at least one impaired

Class of creditors must vote in favor of the Plan.

## ARTICLE VI

## DISSOLUTION AGENT

6.1     Debtor's Officer and Representative: Pursuant to § 1129(a)(5) of the Code, it is hereby disclosed that the Dissolution Agent shall serve as the sole director and officer of the Debtor after the Effective Date. Pursuant to § 1123(b)(3)(B) and (b)(6) of the Code, the Dissolution Agent is appointed as the official representative to retain, enforce, pursue, settle, compromise and collect Debtor's Assets, including each and every right, claim and Cause of Action on behalf of the Debtor's estates. The initial Dissolution Agent shall be Dwain A. Newman, who currently serves as the Debtor's chief executive officer.

6.2     Appointment of Successor: The Dissolution Agent may resign at any time and may appoint successor Dissolution Agents. A notice identifying the successor Dissolution Agent shall be filed with the Court and served on the U.S. Trustee, Unsecured Creditors Committee and all entities on the approved Special Service List. Any creditor or party in interest who objects to the designated successor Distribution Agent must file an objection to the designation within 21 days after filing of the notice, and the Court shall decide, after notice and a hearing, whom shall be the Successor Dissolution Agent.

6.3     Compensation: So long as the Dissolution Agent is Dwain Newman, he will receive no compensation.  In the event another Dissolution Agent is selected, he/she will be compensated at the rate of $75 per hour.  The Dissolution Agent shall be reimbursed any actual, reasonable and necessary expenses.

6.4     Responsibilities and Authority:  The Dissolution Agent shall have the responsibilities and authority provided in this Plan. Generally and without limitation, the Dissolution Agent shall be responsible for implementing this Plan for the benefit of all Holders of Allowed Claims as provided by this Plan and for taking all action reasonably necessary to conclude and close this Chapter 11 Case, subject to the continued jurisdiction of the Court.

The Dissolution Agent is also responsible for making Distributions and for winding down the Debtor's affairs, including, without limitation, filing final tax returns and terminating any benefit plans remaining in existence as of the Confirmation Date. The Dissolution Agent shall have full authority and discretion to investigate, pursue, settle and collect any Causes of Action and Avoidance Actions, without notice or Court approval and notwithstanding Rule 9019.

      6.5    Additional Agents: The Dissolution Agent is authorized on behalf of the Debtor to hire contractors, employees and agents, upon terms acceptable to the Dissolution Agent, to assist with performance of his duties under the Plan.  The Dissolution Agent will retain Robert Storment, the Senior Vice-President of Accounting for the Debtor as a contractor to assist the Dissolution Agent in carrying out his responsibilities.  In enforcing and pursuing rights, Claims and Causes of Action, the Dissolution Agent shall retain counsel or other professionals upon such terms not inconsistent with this Plan as may be agreed upon by such counsel or other professionals and the Dissolution Agent. The Dissolution Agent is authorized to pay Post-Effective Date Expenses, including the fees of any attorneys, accountants, independent contractors, employees, or agents, as such expenses come due without approval of the Court.

      6.6    Indemnification: The Dissolution Agent, including any successors, shall serve during the duration of his or her appointment without a surety bond. Neither the Dissolution Agent nor any of his or her respective employees or agents shall be personally liable for payments to be made to the Holders of Claims under this Plan. Neither the Dissolution Agent nor his contractors, employees or agents shall have any liability to the Debtor, or any Holder any type of claim against the Debtor whether it be an Administrative Expense, Post-Effective Date Expense, Claim or Interest, except due to his or her own gross

negligence or willful misconduct, and the Dissolution Agent shall not be liable for any act or omission of any of his or her respective contractors, employees or agents unless the Dissolution Agent acted with gross negligence or willful misconduct in the selection or retention of such contractor, employee or agent. The Dissolution Agent shall be entitled to indemnification as a Post-Effective Date Expense from the Cash held by him for any claims or actions asserted against him in his role as Dissolution Agent, unless he is found by Final Order to have been guilty of gross negligence or willful misconduct. The Dissolution Agent shall be entitled to a full release as a part of the Final Decree in this Case.

6.7     Covenants of the Dissolution Agent: The Dissolution Agent shall not pledge, encumber, or hypothecate any of the Debtor's Assets or the Cash in the Claims Account without the prior approval of the Court.

6.8     § 1123 Compliance: The Dissolution Agent shall, on or before the Effective Date, cause a provision to be inserted in the Debtor's corporate charter prohibiting it from issuing any non-voting equity securities in compliance with § 1123(a)(6) of the Code.

## ARTICLE VII

## IMPLEMENTATION OF THE PLAN,

## INCLUDING PURSUIT OF CAUSES OF ACTION

7.1     Dissolution Agent: The Dissolution Agent, as described in Article VI, shall be responsible for implementing this Plan for the benefit of all Holders of Allowed Claims and Allowed Interests as provided by this Plan, subject to the continued jurisdiction of the Court. The Dissolution Agent is responsible for taking any action needed in connection with liquidating Debtor's Assets, including Causes of Action and Avoidance Actions.

911497-v1

7.2     Available Cash and Other Collections: The Debtor estimates that it will have Cash available for distribution on the Effective Date, after retention of sufficient Cash to pay anticipated Post-Effective Date expenses, in an amount which will be more than sufficient to pay all amounts due as of that date for Administrative Expenses and to Pay in Full all amounts required to be Paid in Full on the Effective Date. Notwithstanding any provision in this Plan to the contrary, the Dissolution Agent shall when making distributions under this Plan be entitled to retain sufficient Cash to pay Post-Effective Date Expenses anticipated to be incurred in implementing the Plan and fulfilling the Dissolution Agent's responsibilities and duties under the Plan.

7.3     Post-Effective Date Expenses: The Debtor or the Dissolution Agent shall have the right to pay Post-Effective Date Expenses in the ordinary course of business. In the event that the Dissolution Agent notifies a Person demanding payment of a Post-Effective Date Expense that the demand is disputed, then the Person seeking payment must file and serve a motion or application for allowance of such expense in accordance with 11 U.S.C. § 503(a) within thirty (30) days after the date on which written notice of the dispute is provided by the Dissolution Agent, or that contested Post-Effective Date Expense shall be deemed disallowed. Payment of any such expense without interest shall be made promptly after a Final Order resolving the motion and determining the appropriate amount of the Post-Effective Date Expense is entered and becomes a Final Order.

7.4     Causes of Action: The Debtor retains and reserves all Causes of Action, which include Avoidance Actions, for pursuit by the Debtor and Dissolution Agent post-confirmation. The Debtor and the Dissolution Agent have broad discretion to pursue, settle or abandon Causes of Action and Avoidance Actions. However, neither the Debtor nor the

Dissolution Agent shall be required to pursue Causes of Action or Avoidance Actions that they determine in good faith, after consultation with counsel, are unlikely to result in a material net recovery to the Debtor's estate after deducting the estimated costs of prosecuting and collecting any potential recoveries.

After the Effective Date, the Dissolution Agent shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such Causes of Action and Avoidance Actions without the consent or approval of any third party and without any further order of Court. Under the Plan, the Debtor, acting through the Dissolution Agent, shall retain all rights on behalf of the Debtor to commence and pursue, as appropriate, any and all Causes of Action and Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in this Chapter 11 Case. The failure to specifically identify any potential or existing Avoidance Action or Cause of Action is not intended to limit the rights of the Debtor to pursue any Avoidance Action or Cause of Action not listed or specifically identified.

Unless an Avoidance Action or Cause of Action against a Creditor or other Person or entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order, the Debtor expressly reserves such Avoidance Action or Cause of Action for later adjudication (including, without limitation, Avoidance Actions and Causes of Actions not specifically identified or which the Debtor or the Dissolution Agent may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor or the Dissolution Agent at this time or facts or circumstances which may change or be different from those which the Debtor or Dissolution Agent, now believe to exist) and,

therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Avoidance Action or Cause of Action upon or after the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Avoidance Action or Cause of Action has been expressly released in the Plan or other Final Order. In addition, the Debtor and the Dissolution Agent expressly reserve the right pursuant to the Bankruptcy Code to assert or adopt as a defense any claims in any lawsuit in which the Debtor is a defendant or an interested party, irrespective of whether a Cause of Action has been commenced based upon such claim. The Debtor and the Dissolution Agent shall have the widest possible latitude in deciding whether or not to pursue any possible Cause of Action, including without limitation any preference or other Avoidance Action.

      7.5   <u>Remaining Assets</u>: The Dissolution Agent shall expeditiously liquidate the Remaining Assets.  Post-Effective Date sales of the Remaining Assets shall not require Court approval and shall be sold on terms and conditions acceptable to the Dissolution Agent. The Net Proceeds from the sale of the Remaining Assets and from the pursuit of Causes of Action or Avoidance Actions shall be distributed in accordance with the terms set forth in this Plan. The Dissolution Agent, in his sole discretion, has authority to abandon any Remaining Assets that has no market value or that he believes is burdensome to the Debtor's estate.

      7.6   <u>Contracts and Leases</u>: The Debtor reserves the right to assume and assign or reject any leases and executory contracts in accordance with section 365 of the Bankruptcy Code and Article X herein.

7.7    § 1146 Tax Exemption:  Pursuant to § 1146 of the Code, any sale, transfer or other conveyance of real or personal property by the Debtor or the Dissolution Agent, including a sale of the Clarksville Real Property shall be deemed to have been made under and pursuant to this Plan and therefore shall not be subject to any law providing for a document tax or fee, recording tax, stamp tax, conveyance fee, mortgage tax, real estate transfer tax or fee, or any similar tax or fee.  Therefore, the county clerk, recorder, collector or similar county official is ordered to accept and record such deed, instrument or other conveyance without requiring the payment of any taxes or stamps.

7.8    Distributions: The Plan contemplates the distribution of all Cash and Net Proceeds in accordance with the priorities established by the Plan and the procedures in Article IX. All Cash and Net Proceeds realized from further liquidation of assets or recovered from any Causes of Actions, including Avoidance Actions, shall be paid in accordance with the priorities established by this Plan.

## ARTICLE VIII

## CLAIM OBJECTIONS

8.1    Claims Objection Process: The Dissolution Agent or any other party in interest may file with the Court, within 120 days after the Effective Date or such other later time as may be fixed by the Court, a written objection to the allowance or classification of any Claim or Interest in any Class, which objection shall be served upon the Claimant, United States Trustee, Dissolution Agent, and the Special Service List approved by the Court. The failure to object to or to examine any Claim or Interest for the purposes of voting on this Plan shall not be deemed a waiver of such party's right to object to, or re-examine the Claim or Interest in whole or in part within the above-described time period.

## ARTICLE IX

## DISTRIBUTIONS

9.1      Initial Distribution on Allowed Unsecured Claims: The Plan sets no

specific date on which the Dissolution Agent shall make an initial Distribution to the Holders

of Allowed Unsecured Claims in Class 5. The initial distribution will occur promptly upon the

Dissolution Agent determining that the Debtor holds Cash in an amount equal to at least

$250,000 more than the estimated amount of Cash required to Pay in Full all Allowed and

Disputed Administrative Expenses, § 503(b)(9) Claims, Priority Employee Claims, Priority

Deposit Claims, Priority Tax Claims and anticipated Post-Effective Date Expenses.

9.2      Subsequent Distributions: The Dissolution Agent shall make subsequent

Distributions to Allowed Class 5 Claims as often as is consistent with the Plan and deemed

practical in the Dissolution Agent's sole discretion.

9.3      Resolution of Disputed Claim: Upon a Disputed Claim becoming an

Allowed Claim, the Dissolution Agent has the sole discretion to (i) pay the Holder of such

Claim its Pro Rata share of any missed Distributions upon the Disputed Claim becoming an

Allowed Claim or (ii) retain its Pro Rata share of any missed Distributions until the next

scheduled Distribution Date, at which time the Dissolution Agent shall pay the Pro Rata share

of any missed Distributions and the Pro Rata share of that particular Distribution.

9.4      Claims Reserve: Until all Remaining Assets, including Causes of Action

and Avoidance Actions, have been liquidated or abandoned, the Dissolution Agent shall not

make any Pro Rata distribution to any Class of Allowed Claims, excluding the Final

Distribution, without retaining in the Claims Account an amount of Cash sufficient to pay all

timely Administrative Expenses, Post-Effective Date Expenses and all Claims, including

Disputed Claims, as such may reasonably be anticipated in Classes senior in distribution priority to the said Class for which a Pro-Rata distribution is proposed. In determining the amount to be reserved for Disputed Unsecured Claims, the appropriate pro rata calculations required by the Plan will be made as if all Disputed Unsecured Claims were Allowed Unsecured Claims in the full amount claimed by the Holders thereof, or in the amount estimated by the Bankruptcy Court under § 502(c) of the Code or Rule 3018(a) of the Rules, whichever is less, provided that nothing shall preclude the Dissolution Agent, any creditor or party-in-interest from seeking an Order, after notice and a hearing, authorizing the Dissolution Agent to reserve a smaller amount on any Disputed Claim or Claims.

9.5     Final Distribution: The Dissolution Agent shall make the Final Distribution from the Claims Account in accordance with the Plan within 60 days after all of the Debtor's Assets have been liquidated and all Net Proceeds deposited into the Claims Account, no Disputed Claims exist, and all timely-filed Administrative Expenses and Post-Effective Date Expenses have been Paid in Full and any balance remaining in the Claims Account, if any, after payments contemplated by the Plan shall be available for distribution in accordance with this Plan.

9.6     Nominal Distributions: With respect to any distribution prior to the Final Distribution, if the Holder of an Allowed Claim would receive less than $50.00, the Dissolution Agent may choose not to distribute such lesser amount to such Holder, but may instead defer the distribution thereof until the cumulative amount to be distributed to such Holder at any subsequent distribution is $50.00 or more. No interest on any such deferred amount shall be paid to such Holder. If the Final Distribution to the Holder of an Allowed

Claim would be less than $10.00, the Dissolution Agent is not required to make such distribution, and such distribution is deemed waived.

      9.7      Distribution Address: Subject to Bankruptcy Rule 9010, all distributions, notices and requests relating to Claims shall be sent to the Holders at the address set forth on the proof of claim filed by such Holder or at their last-known address if no proof of claim is filed. The Debtor, the Dissolution Agent, or any Holder of a Claim may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt or upon publication of such notice as it is approved by the Bankruptcy Court.

      9.8      Undeliverable Distributions: If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made and such Holder shall be deemed to have forfeited its distribution. Amounts in respect of undeliverable distributions made through the Debtor shall be returned to the Debtor and shall be distributed pro-rata in accordance with the provisions for order of payment in the Plan.

      9.9      Form of Distribution: Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn on a commercial bank, or other financial institution that is approved by the United States Trustee.

      9.10      Void Distributions: Checks issued by the Dissolution Agent in respect of Allowed Claims shall be null and void if not cashed within 60 days after the date of issuance and shall be deemed unclaimed, the Creditor to whom such distribution was sent shall be deemed to have forfeited the distribution and shall not be entitled to any other distribution. Unclaimed funds shall be distributed by the Dissolution Agent on a Pro-Rata basis in accordance with the provisions for order of payment in the Plan.

9.11      <u>Final Accounting</u>: Within 90 days of the Final Distribution, or as soon as possible thereafter, the Dissolution Agent shall file a report accounting that the bankruptcy estate has been fully administered with the Court.

9.12      All Claims including Allowed § 503(b)(9) Claims shall be subject to the provisions of § 502 of the Code, including but not limited to subsections (b), (d), (e), (g), (h) and (i). No distribution shall be made on account of any Claim including § 503(b)(9) Claim if the Debtor or Dissolution Agent has taken or given notice of intent to take action on a Cause of Action against the Holder of such Claim, until such Cause of Action is resolved by Final Order or otherwise.

## ARTICLE X

## REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES

Except with respect to unexpired leases rejected as a matter of law pursuant to §

365(d)(4) of the Bankruptcy Code, executory contracts and unexpired leases previously

assumed or rejected and approved by the Court, all other executory contracts and unexpired

leases entered into prior to the Petition Date which are not expressly assumed by the Debtor

pursuant to a Motion filed on or before the Confirmation Date, shall be deemed to have been

rejected under § 365(a) as of the earlier of (i) the effective date of rejection provided by an

order of the Court approving the rejection of the contract or lease, or (ii) the Effective Date.

Any damages resulting from a rejection shall be treated as a Class 5 Unsecured Claim. Any

Holder of a Claim arising from the rejection of an executory contract or unexpired lease

rejected pursuant to this provision of the Plan must file a proof of claim within 30 days from

the entry of the Effective Date . If a proof of claim is not filed by this date, such claim shall be

forever barred and shall not be an Allowed Claim.

## ARTICLE XI

## CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

11.1     Confirmation: Confirmation of this Plan shall not occur unless each of

the following conditions precedent has occurred: (a) the Court has approved the Disclosure

Statement in form and substance acceptable to the Debtor, and (b) the Confirmation Order has

been approved in form and substance acceptable to the Debtor.

11.2     Effective Date: The Effective Date of this Plan shall not occur unless the

Confirmation Order has become a Final Order or the Debtor has waived the requirement of a

Final Order.

911497-v1

## ARTICLE XII

## EFFECT OF CONFIRMATION AND RETENTION OF JURISDICTION

12.1        Discharge: The Confirmation Order shall discharge the Debtor from all

Claims to the extent allowed pursuant to § 1141 of the Code and shall constitute an injunction

against the pursuit of any Claim or Interest or Administrative Expense except as otherwise

provided in the Plan. Parties asserting entitlement to payment of Administrative Expenses

incurred Prior to the Effective Date and Holders of Claims and Interests shall be permanently

enjoined from asserting any Claim or Interest against the Debtor, Dissolution Agent, or the

Debtor's Assets based upon any act or omission, transaction or other activity that occurred

prior to the Effective Date, except as otherwise provided in the Plan, whether or not a proof of

claim or interest was filed and whether or not such Claim or Interest is allowed under § 502 of

the Bankruptcy Code. The rights afforded under the Plan and the treatment of Administrative

Expenses, Claims and Interests under the Plan shall be in exchange for and in complete

satisfaction, discharge, and release of all Claims and termination of all Interests, unless

otherwise set forth in the Plan.

12.2        Binding effect: The provisions of this Plan as described herein shall be

binding upon and inure to the benefit of all persons, entities, and governmental authorities

described herein and/or claiming an interest in any and all property in which Debtor has an

interest and such persons', entities', and governmental authorities' successors, heirs and

assigns whether or not such persons, entities, and governmental authorities vote to accept the

Plan.  Failure to file a timely objection to the Plan will be deemed to be an agreement to the

terms of the Plan for purposes of § 1129(a)(9).

12.3     <u>Jurisdiction</u>: Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction over this Chapter 11 Case and any of the proceedings related to this Chapter 11 Case pursuant to § 1142 of the Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Code and other applicable law, including, without limitation, such jurisdiction as is necessary to implement the Plan. Without intending to limit the generality of the foregoing, the Court shall have exclusive jurisdiction:

a.     To determine any and all objections to the allowance, extent, priority or nature of any Claims or Interests, the amount and proper classification of the Claim or Interest of any Holder and the determination of such objections as may be filed to any Claims or Interests.

b.     To determine any and all applications for compensation and reimbursement pursuant to § 330 of the Code.

c.     To determine any and all applications for the sale, transfer, disposition or abandonment of any of the Debtor's Assets.

d.     To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any Claims resulting from rejection thereof.

e.     To determine any and all applications, adversary proceedings and contested matters that may be filed in this Court.

f.     To interpret, enter Final Orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan.

g.     To cause the correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Confirmation Order as may be necessary

to carry out the purposes and intent of the Plan.

     h.     To consider the modification of this Plan after the Confirmation Date as allowed pursuant to the Rules and the Code.

     i.     Except as otherwise provided in the Plan, to make any determinations and to issue any Final Orders to enforce, interpret or effectuate the Plan.

     j.     To determine all questions and disputes regarding title to the Debtor's Assets, and determination of all Causes of Action, controversies, disputes, or conflicts, whether or not subject to action pending as of the Confirmation Date, between the Debtor or the Dissolution Agent, and any other Person, including but not limited to, any rights of the Dissolution Agent to recover assets pursuant to the provisions of the Code or applicable state or federal law and the rights, obligations, and liabilities of the respective parties under any asset purchase agreements relating to the sale of the Debtor's Assets.

     k.     To enter a Final Order concluding and terminating this case.

     l.     To determine such other matters as may be provided for in the Plan.

## ARTICLE XIII

## MODIFICATION OF THE PLAN

13.1   <u>Modification</u>: The Debtor may withdraw the Plan or propose written modifications to the Plan any time prior to the Effective Date upon such notice as the Court may require. If the circumstances warrant, after the Effective Date and before substantial consummation of the Plan, the Debtor or Dissolution Agent may modify the Plan provided that (a) the Plan, as modified, meets the requirements of the Code; (b) the Court, after notice and a hearing, confirms the Plan as modified under Bankruptcy Code § 1129; (c) the circumstances warrant such modification; and (d) such modification does not materially and adversely affect

holders of Claims or Interests. Unless within the time fixed by the Court a creditor changes its previous acceptance or rejection of the Plan, such previous election shall be deemed applicable to the amended or modified Plan.

ARTICLE XIV

INJUNCTIONS AND EXCULPATION

**14.1    EXCULPATION: EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR CONFIRMATION ORDER, THE DEBTOR, ITS OFFICERS AND DIRECTORS, ITS PROFESSIONALS, THE DISSOLUTION AGENT, THE UNSECURED CREDITORS COMMITTEE AND ITS MEMBERS (ACTING IN SUCH CAPACITY) AND PROFESSIONALS SHALL NEITHER HAVE NOR INCUR ANY LIABILITY TO ANY PERSON FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN (EXCLUSIVE OF AN ACT CONSTITUTING FRAUD, GROSS NEGLIGENCE OR INTENTIONAL MISCONDUCT) IN CONNECTION WITH OR RELATED TO THIS CHAPTER 11 CASE, INCLUDING WITHOUT LIMITATION ACTIONS RELATED TO THE FORMULATION, PREPARATION, DISSEMINATION, IMPLEMENTATION, ADMINISTRATION, CONFIRMATION OR CONSUMMATION OF THE PLAN, THE DISCLOSURE STATEMENT OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN.**

**NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, NEITHER THIS PLAN NOR THE CONFIRMATION ORDER AFFECTS ANY CLAIMS OR CAUSES OF ACTION AGAINST CURRENT OR FORMER OFFICERS, DIRECTORS,**

SHAREHOLDERS OR EMPLOYEES OF THE DEBTOR ARISING PRIOR TO OR AS OF THE PETITION DATE UNDER 11 U.S.C. §§ 544, 547, 548, 549 OR 550.

14.2   INJUNCTION: EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST, OR REMEDY FOR WHICH ANY PARTY RECEIVES EXCULPATION PURSUANT TO THE PLAN.

## ARTICLE XV

## MISCELLANEOUS PROVISIONS

15.1   Necessary Documents: Upon entry of the Confirmation Order, the Debtor, the Dissolution Agent, or such other Person as the Court may appoint, shall be authorized to execute all documents reasonably required by the Plan to effectuate the Plan, including, but not limited to, all contracts or other agreements reasonably necessary to effectuate the Plan.

15.2   Quarterly Fees.  All fees payable under 28 U.S.C. § 1930, for quarters ending prior to the entry of the Final Decree shall be paid in full from Cash.

15.3   Dissolution of Unsecured Creditors Committee/Post-Effective Date Input by Former Committee Members: On the Effective Date, the Unsecured Creditors Committee shall be dissolved and its members shall be deemed relieved of all of their prior duties and responsibilities and shall be without any further duties, responsibilities and authority in connection with the Chapter 11 Case or the Plan and its implementation. The professionals

retained by the Unsecured Creditors Committee and the members thereof will not be entitled to compensation or reimbursement of expenses for any services rendered after the Effective Date.

If the Unsecured Creditors Committee so elects, it may designate up to three persons who shall be identified as the Oversight Committee (the "Oversight Committee") with whom the Dissolution Agent shall confer on a regular basis regarding the on-going administration of the Debtor's estate after the Effective Date. The Oversight Committee shall have the right to retain counsel and the Debtor or the Dissolution Agent shall reimburse the Oversight Committee for reasonable attorney fees and expenses incurred after the Effective Date in monitoring the on-going administration of the Debtor's estate in an amount equal to not more than $60,000 in the aggregate. The Oversight Committee shall have the right to file any motion on behalf of Class 5 Creditors. The Oversight Committee shall also be entitled to reimbursement of reasonable expenses, including attorney fees in addition to the $60,000 set forth above incurred after the Effective Date as a Post-Effective Date Expense, but only in the event such additional fees and expenses are approved by the Court for cause which must include a material benefit to the estate. Any such additional attorney fees and expenses shall be paid by the Dissolution Agent only after all Allowed Claims in Classes 1, 2, 3, and 4 have been Paid in Full.

The Debtor and the Dissolution Agent will, upon reasonable request by the Oversight Committee continue to make information reasonably available to the Unsecured Creditors Committee, its professionals, the Oversight Committee or the Oversight Committee's professionals. Notwithstanding the foregoing, Debtor and the Dissolution Agent may withhold any privileged information related to on-going or anticipated litigation. The Debtor and

Dissolution Agent will report to the Unsecured Creditors Committee or the Oversight Committee when reasonably requested with regard to winding down the Debtor's operations, liquidating the Debtor's Assets, pursuing Causes of Action and distributing Net Proceeds.

15.4    Final Accounting and Case Closing: The Debtor, through the Dissolution Agent, shall be responsible for preparing and filing any required motion and the final accounting necessary to close the Case. The Dissolution Agent will make every effort to file a final accounting and motion for a final decree within 90 days of making the Final Distribution. This Case may be closed notwithstanding the pendency of any claims objections, other contested motions, Causes of Action or Avoidance Actions, over which the Court shall retain jurisdiction.

15.5    Destruction of Records: After the Effective Date, the Dissolution Agent shall have the right to destroy or cause to be destroyed records of the Debtor that are determined to no longer be needed; provided, that the Dissolution Agent shall give fifteen (15) days notice of such destruction to any persons designated to act by the Unsecured Creditors Committee and provided that the Dissolution Agent shall not knowingly destroy any records relevant to a possible or pending Cause of Action, Avoidance Action or Disputed Claim. Any objection to the destruction of such records must be raised as an objection to confirmation of the Plan or shall be deemed to be waived.

## ARTICLE XVI

## GENERAL PROVISIONS AND INTERPRETATION OF THE PLAN

16.1        Headings: The headings inserted in this Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions or interpretation of the Plan.

16.2     Severability: Should any provisions in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the Plan.

16.3     Notice to Debtor: All notices, requests or demands given to the Debtor or the Dissolution Agent in connection with the Plan shall be made in writing and shall be deemed to have been given when received, or if mailed, five business days from the date of mailing, first class, postage prepaid, to the following address, or to such other address as the Dissolution Agent may establish by filing a notice of change of address with this Court:

> Dwain A. Newman
> Dissolution Agent
> 2491 East Joyce Boulevard
> Fayetteville, AR 72703

A copy of any such notice shall also be given to Debtor's Counsel at the address below.

NATIONAL HOME CENTERS, INC.
  Debtor-In-Possession


By: /s/ Dwain A. Newman

Position: Chief Executive Officer

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201
Telephone:  501-371-0808
Fax:         501-376-9442
Email: ccoleman@wlj.com
       jhenry@wlj.com
       ktucker@wlj.com

By:   /s/ Charles T. Coleman
      Charles T. Coleman (80030)
      Judy Simmons Henry (84069)
      Kimberly Wood Tucker (83175)
      Attorneys for National Home Centers, Inc.